**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KENNETH P. SILVERMAN, ESQ., the Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC and its Affiliated Debtors,<br><br>       Plaintiff,<br><br>   v.<br><br>CITIBANK, N.A.,<br><br>       Defendant. | Case No. 22-cv-05211 (GHW) |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO CITIBANK, N.A.'S**
<u>**MOTION TO DISMISS THE COMPLAINT**</u>

**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700

*Attorneys for Plaintiff Kenneth P.*
*Silverman, Esq., Chapter 7 Trustee*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 4

      A.     Nissen Operated a Ponzi Scheme the Whole Time the Company Banked
             at Citibank ........................................................................................ 4

      B.     Suspicious Banking Activity Commenced and was Flagged by Citibank
             Immediately ..................................................................................... 4

      C.     FIU's Summer 2016 Conclusion to Close the Accounts ....................... 5

      D.     Ponzi Scheme Activity Ensues, While Citibank Records it in Real Time............. 6

      E.     Discovery Ordered by the Bankruptcy Court Remains Incomplete ...................... 8

ARGUMENT ................................................................................................... 9

      A.     General Legal Standards Applicable to the Motion................................. 9

      B.     Courts Do Not Dismiss Complaints that
             Allege Actual Knowledge of Fraud ................................................... 10

            1.     The Complaint Alleges that FIU had Actual Knowledge of
                      Nissen's Fraud ..................................................................... 10

            2.     The Complaint Does Not Merely Allege Suspicious Activity.................. 12

            3.     Plaintiff Need Not Plead Knowledge of Investor Terms or
                      Inducements ...................................................................... 14

            4.     Plaintiff Alleged Crowley and Santana had Actual Knowledge............. 15

      C.     Plaintiff Adequately Pled that Citibank Substantially Assisted Nissen's
             Fraud ............................................................................................. 16

            1.     Citibank Substantially Assisted Nissen by Executing Atypical
                      Transactions ...................................................................... 17

            2.     Citibank Affirmatively Acted in Substantial Assistance to
                      Nissen.................................................................................. 19

            3.     Citibank's Substantial Assistance Proximately Caused the
                      Trustee's Losses.................................................................. 20

D.    The Gueli Declaration Exhibits are Improper and Cannot be Considered ........... 21

E.    *In Pari Delicto* and the *Wagoner* Rule Do Not Bar the First Cause of Action................................................................................................................. 24

F.    Alternatively, the Court Should Allow Plaintiff to Amend the Complaint .......... 25

CONCLUSION.................................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Agape Litig. v. Cosmo*,
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) ....................................................................................13

*Am. Tissue, Inc. v. Arthur Andersen, L.L.P.*,
    2003 U.S. Dist. LEXIS 22137 (S.D.N.Y. Dec. 3, 2003) .......................................................25

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012) .....................................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................................25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................9

*Benson v. JPMorgan Chase Bank, N.A.*,
    2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) .......................................................................17

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)....................................................................................13

*Berman v. Morgan Keegan & Co.*,
    455 F. App'x 92 (2d Cir. 2012) ..............................................................................................15

*Bullen v. Sterling Valuation Grp., Inc.*,
    2020 N.Y. Misc. LEXIS 2540 (Sup. Ct. N.Y. Cty. June 5, 2020)....................................10, 19

*Calcutti v. SBU, Inc.*,
    273 F. Supp. 2d 488 (S.D.N.Y. 2003)....................................................................................23

*Carbon Inv. Partners, LLC v. Bressler*,
    2021 U.S. Dist. LEXIS 166293 (S.D.N.Y. Sept. 1, 2021)................................................10, 20

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................................................22

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)....................................................................................................15

*Cosmas v. Hassett,*
   886 F.2d 8 (2d Cir. 1989), s*uperseded by statute on other grounds as stated in*
   *Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F.
   Supp. 2d 853 (S.D.N.Y. 2011)...........................................................................22

*DaPuzzo v Reznick Fedder & Silverman,*
   14 A.D.3d 302 (1st Dep't 2005) .......................................................................10

*DeLuca v. AccessIT Grp., Inc.,*
   695 F. Supp. 2d 54 (S.D.N.Y. 2010)..................................................................22

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.,*
   323 F. Supp. 3d 393 (S.D.N.Y. 2018)..................................................................6

*Faulkner v. Beer,*
   463 F.3d 130 (2d Cir. 2006)...............................................................................22

*Glob. Network Commc'ns, Inc. v. City of N.Y.,*
   458 F.3d 150 (2d Cir. 2006)....................................................................21, 22, 23

*Goel v. Bunge, Ltd.,*
   820 F.3d 554 (2d Cir. 2016)...............................................................................23

*Goldman v. Belden,*
   754 F.2d 1059 (2d Cir. 1985).............................................................................22

*Grubin v. Rattet (In re Food Mgmt. Grp., LLC),*
   380 B.R. 677 (Bankr. S.D.N.Y. 2008) ...............................................................24

*Heinert v. Bank of Am. N.A.,*
   835 F. App'x 627 (2d Cir. 2020) .......................................................................12

*JP Morgan Chase Bank v. Winnick,*
   406 F. Supp. 2d 247 (S.D.N.Y. 2005)...........................................................17, 20

*Kirschner v. Bennett,*
   648 F. Supp. 2d 525 (S.D.N.Y. 2009).......................................................14, 15, 25

*Krys v. Pigott,*
   749 F.3d 117 (2d Cir. 2014)...............................................................................14

*In re Lehman Bros. Sec. & ERISA Litig.,*
   799 F. Supp. 2d 258 (S.D.N.Y. 2011)................................................................23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
   797 F.3d 160 (2d Cir. 2015)................................................................................9

*Mazzaro de Abru v. Bank of Am. Corp.*,
   2008 WL 3171560 (S.D.N.Y. Aug. 6, 2008) ....................................................................16, 17

*McHale v. Citibank, N.A. (In re 1031 Tax Grp., LLC)*,
   420 B.R. 178 (Bankr. S.D.N.Y. 2009) ..........................................................................24

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) .......................................................................................23

*Oster v. Kirschner*,
   77 A.D.3d 51 (1st Dep't 2010) ....................................................................................10

*Primavera Familienstifung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y. 2001), *abrogated on other grounds by
   Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011) .....................................................17

*In re Refco Inc. Sec. Litig.*,
   2010 WL 11500542 (S.D.N.Y. Oct. 22, 2010), *report and recommendation
   adopted as modified sub nom.*, 2011 WL 6097724 (S.D.N.Y. Dec. 7, 2011) .........................21

*Renner v. Chase Manhattan Bank*,
   2000 WL 781081 (S.D.N.Y. June 16, 2000), *aff'd*, 85 F. App'x 782 (2004) .........................20

*Rosner v. Bank of China*,
   2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637
    (2d Cir. 2009) ...............................................................................................9, 13, 14

*Ryan v. Hunton & Williams*,
   2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000) ..............................................13

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991) ...............................................................................3, 24, 25

*Silvercreek Mgmt. v. Citigroup, Inc.*,
   248 F. Supp. 3d 428 (S.D.N.Y. 2017) .........................................................................9, 12, 16

*Silvercreek Mgmt. v. Citigroup, Inc.*,
   346 F. Supp. 3d 473 (S.D.N.Y. 2018) .....................................................................6, 10, 16, 20

*Surefire Dividend Capture, LP v. Indus. & Commercial Bank of China Fin.
   Servs. LLC*,
   2022 WL 1808798 (Sup. Ct. N.Y. Cty. June 2, 2022) ...............................................18, 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................................12

*Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*,
   2019 U.S. Dist. LEXIS 104562 (S.D.N.Y. June 21, 2019) ...........................................24

*UPS Store, Inc. v. Hagan*,
  99 F. Supp. 3d 426 (S.D.N.Y. 2015).........................................................................................23

*Vasquez v. H.K. & Shanghai Banking Corp. Ltd.*,
  2019 WL 2327810 (S.D.N.Y. May 30, 2019) ................................................................13, 21

*Yao-Yi v. Wilmington Tr. Co.*,
  301 F. Supp. 3d 403 (W.D.N.Y. 2017)......................................................................13, 14

*Zhao v. JPMorgan Chase & Co.*,
  2019 U.S. Dist. LEXIS 40673 (S.D.N.Y. Mar. 13, 2019) .......................................................13

## Other Authorities

Fed. R. Civ. P. 9(b) ...........................................................................................................9

Fed. R. Civ. P. 12(d) ........................................................................................................23

Fed. R. Civ. P. 15(a) ........................................................................................................25

Plaintiff Kenneth P. Silverman, Esq., the chapter 7 trustee ("<u>Plaintiff</u>" or the "<u>Trustee</u>") of the jointly administered bankruptcy estates of National Events Holdings, LLC and its affiliated debtors (the "<u>Company</u>"), respectfully submits this memorandum of law in opposition (the "<u>Opposition</u>") to defendant Citibank, N.A.'s ("<u>Citibank</u>") motion [Docket No 42] (the "<u>Motion</u>")[1] to dismiss Plaintiff's complaint [Docket No. 30] (the "<u>Complaint</u>" or "<u>Cmplt.</u>").[2]

## PRELIMINARY STATEMENT[3]

Citibank's Motion is frivolous because it flies in the face of settled law that allegations in a complaint must be accepted as true on a motion to dismiss. The Complaint clearly alleges that Citibank had actual knowledge that Nissen was operating a Ponzi scheme and provided him with substantial assistance. It alleges that Citibank was ███████████████████████████ █████, conducted forensic analyses of thousands of suspicious transactions and concluded that there was no economic, business or lawful purpose for hundreds of millions of dollars of unusual banking activity it was seeing in the Accounts. It further alleges Citibank concluded that the activity was not consistent with legitimate operations of a ticket brokerage business and Nissen was rapidly moving large amounts of round dollar figures in and out of the Accounts from one investor to another. Thus, Citibank knew that Nissen was "borrowing from Peter to pay Paul." Citibank even confirmed that the debits and credits in the Accounts were reflective of a Ponzi scheme. Nevertheless, Citibank disregarded its own decision to close the Accounts for nearly a year – while Nissen's RM and banker actively stalled closure, during which time Citibank

---

[1]   Citibank's memorandum of law [Docket No. 46] is cited herein as "<u>Memo</u>," and the declaration of John Gueli [Docket No. 45] (the "<u>Gueli Declaration</u>") is cited as "<u>Gueli Decl.</u>"  In further support of this Opposition, Plaintiff submits the declaration of Howard W. Schub (the "<u>Schub Declaration</u>," cited as "<u>Schub Decl.</u>"), filed herewith.

[2]   The Trustee brings his first cause of action on behalf of the Company's bankruptcy estates (the "<u>First Cause of Action</u>"), and his other as assignee of Falcon Strategic Partners IV, LP and FMP Agency Services, LLC (together, "<u>Falcon</u>"), Taly USA Holdings Inc. and SLL USA Holdings, LLC (together, "<u>Taly</u>"), and Hutton Ventures LLC ("<u>Hutton</u>") (the "<u>Second Cause of Action</u>").

[3]   Capitalized terms used in this Preliminary Statement have the meanings assigned to them in this Opposition.

continued to witness and approve the same atypical activity until Nissen confessed.

Citibank makes two main arguments in support of dismissal. Neither has any merit. <u>First</u>, Citibank contends that the Complaint is "conclusory" and does not allege any facts supporting that Citibank actually knew of the fraud. This argument is demonstrably false. The Complaint alleges that Citibank knew from its own several investigations into Nissen's suspicious and atypical banking transactions that he was laundering money. The Complaint further alleges that Citibank flagged the Accounts <u>200 times</u> for potential fraud, concluded that Nissen was engaged in transactions with reputed criminals, there was no lawful purpose for millions of dollars in transactions, and Nissen was moving money in and out of the Accounts to different investors.

Citibank's argument that it did not substantially assist Nissen likewise fails because it is based on a mere claim that the bank provided only "routine" banking services – but the Complaint alleges to the contrary. Plaintiff pled that Citibank approved and executed hundreds of atypical transactions that were necessary to keep Nissen's Ponzi scheme alive, while Crowley and Santana stalled closure of the Accounts for months, including by falsely promising FIU and Citibank compliance officers that Nissen would substantiate the activity when they knew he could not do so. This assistance foreseeably enabled Nissen to defraud creditors out of tens of millions of dollars more through the Accounts, even after the bank determined to close them.

<u>Second</u>, Citibank argues that <u>the evidence</u> shows that Citibank had no knowledge of Nissen's fraud insofar as Nissen was running a legitimate business, Citibank was unable to determine the source of the funds being laundered by Nissen, Citibank did not know Falcon, Taly, and Hutton were investors, and Citibank only made observations about Nissen's Ponzi scheme after Nissen's arrest. This argument is misguided. A motion to dismiss is not the vehicle to litigate the strength of the evidence. To support its story, Citibank submits a dozen Exhibits and asks the

Court to take judicial notice, for the truth of the matter asserted, of isolated factual assertions it has cherry-picked out of various court filings.  But none of this extrinsic evidence can be considered because it was not attached to, incorporated by reference in, or integral to, the Complaint.  Even if it were, the Court cannot consider disputed facts on a motion to dismiss.  Moreover, if the Court were to consider the extrinsic evidence, it would need to convert the Motion to one for summary judgment under Rule 12(d) and defer or deny it as premature under Rule 56(d), as Plaintiff has not yet had the opportunity to take the depositions of any of the multiple Citibank relationship managers, bankers, or officers who interacted with Nissen and investigated his misconduct.[4]

Furthermore, none of this purported evidence proves that Citibank did not have actual knowledge of the underlying fraud.  That Nissen was perhaps running a legitimate business does not mean that he was not using that business to run a Ponzi scheme.  Also, that Citibank supposedly was unable to determine the source of <u>all</u> the funds being laundered by Nissen does not prove that Citibank did not know many funds were being used for the Ponzi scheme.  Rather, it demonstrates that Citibank knew Nissen was engaged in a complex criminal scheme.  Further, the Complaint does allege that Citibank knew Falcon, Taly and Hutton were investors.  And it is irrelevant that Citibank did not make written admissions about the Ponzi scheme until after Nissen's arrest.  Admissions are not required.  Actual knowledge can be proven by circumstantial evidence.

<u>Finally</u>, Citibank's argument to dismiss the First Cause of Action based on *in pari delicto* and the *Wagoner* Rule is defective because the Complaint adequately alleges that Nissen's conduct was adverse to the Company, and that Nissen was the sole actor with respect thereto.

Thus, the Court should deny the Motion, or alternatively, grant Plaintiff leave to replead.

---

[4]     Furthermore, Citibank produced only "parent" FIU memoranda, not all the underlying documents and emails.

## STATEMENT OF FACTS

**A.**      **Nissen Operated a Ponzi Scheme the Whole Time the Company Banked at Citibank**

Although Nissen and one Company entity had each held a Citibank account since mid-2013 and late 2014 respectively, prior to mid-2015, Wells Fargo Bank, N.A. ("Wells Fargo") served as the Company's primary bank. (Cmplt., ¶¶ 65-67.)  During the summer of 2015, however, Nissen and the Company switched to Citibank because Wells Fargo could not accommodate Falcon's desired deposit account control agreement ("DACA").  (*Id.*, ¶ 68.)  Thereafter, commencing in or around July 2015 and continuing until after Nissen's late-May 2017 arrest, Citibank served as Nissen and the Company's primary banking institution.  (*Id.*, ¶ 69.)  During such time, Nissen and the Company maintained approximately a dozen Citibank accounts (the "Accounts").  (*Id.*)  Thus, Citibank served as Nissen and the Company's primary bank for at least the entire period during which Nissen operated his Ponzi scheme.  (*Id.*, ¶¶ 1, 33, 159, 226-29.)

At all relevant times, Jack Crowley served as Nissen and the Company's relationship manager ("RM"), and Joshua Santana was Nissen and the Company's banker or RM.  (*Id.*, ¶ 73.)

**B.**      **Suspicious Banking Activity Commenced and was Flagged by Citibank Immediately**

Contrary to Citibank's suggestion that all was well with the Accounts until July 2016 (Memo at 4-5), by early August 2015 – within a month – Nissen was engaging in suspicious, round-number transactions, including a large debit to a reputed fraudster, which Citibank's branch service support unit flagged by October 2015, and with respect to which the unit demanded more information from Santana.  (Cmplt., ¶¶ 76-78.)  During the summer of 2015, Citibank also

████████████████████████████████████████████████████████████████

████████████████████████████████████████████.  (*Id.*, ¶ 109.)

During December 2015 and January 2016, the Accounts were subject to Citibank's "Know Your Customer" inquiries, including because the source of revenue for the Company's business

was not valid, and Santana and his branch manager were warned that the Accounts would be blocked within thirty days.  (*Id.*, ¶¶ 79-80.)

By May 2016, Citibank's Financial Intelligence Unit ("FIU") had contacted Crowley with concerns about the Company's cash withdrawals in large, round-number amounts during March 2016.  (*Id.*, ¶ 84.)  Claiming Nissen was on vacation, Crowley proffered an explanation 2 ½ weeks after FIU's requested deadline. (*Id.*, ¶¶ 86-87.)

Prior to July 2016, FIU analyst Keith A███ examined Nissen and the Company's transactions, and concluded that Nissen's cash activity was suspicious, despite a bogus explanation from Crowley.  (*Id.*, ¶ 91.)

**C.    FIU's Summer 2016 Conclusion to Close the Accounts**

In July 2016, Citibank was advised by ████████████████████████████ ██████████████████.  (*Id.*, ¶ 90.)  In response, Citibank escalated their FIU case to "Level II" FIU analyst Zachary D███  (*Id.*)  In late July 2016, D███ informed his supervisor, Nicole S███, that he saw <u>hundreds</u> of suspicious transactions among the Accounts and <u>over $270 million</u> in and out of the Accounts.  (*Id.*, ¶ 92.)  D███ also observed that Nissen was transacting with parties involved in corruption scandals.  (*Id.*)  S███ concluded that Nissen's and the Company's transactions constituted structuring – whereby one hides large amounts of cash, by depositing smaller amounts of cash to avoid automatic reporting to the government.  (*Id.*, ¶ 93, n.3.)

On August 10, 2016, D███ issued a memo (the "D███ <u>FIU Memo</u>") identifying no fewer than 29 cases whereby Nissen and the Company had triggered fraud alerts during 2015 and 2016 for structuring, rapid movement of funds, transfers in round amounts and large reportable transactions.  (*Id.*, ¶ 95.)  D███ also detailed large cash deposits conducted at ATMs and tellers, on the same day, aggregating over the currency transaction report ("CTR") threshold, and observed that Nissen was transacting with parties that were the subjects of negative news.  (*Id.*)

Thus, D█████, who knew Nissen's conduct was not lawful, concluded that the Accounts should be closed.  (*Id.*)[5]  By September 2016, FIU recommended the same to Citibank's senior management.  (*Id.*, ¶ 100.)

## D.    Ponzi Scheme Activity Ensues, While Citibank Records it in Real Time

In November 2016, Citibank's branch services support unit contacted Nissen's wealth management RM with inquiries concerning dozens of Nissen's transactions from June through November 2016, concerning: the source of Nissen's cash deposits; why Nissen conducted cash transactions in such a manner; and Nissen's relationship with certain counterparties, including Hutton, who were not in the ticket industry.  (*Id.*, ¶ 101.)

Later in November 2016, FIU emailed Crowley of its decision to close the Accounts.  (*Id.*, ¶ 103.)   On December 16, 2016, Jennifer F█████, an anti-money laundering ("AML") investigator on FIU's "Post Investigations Team," issued a formal closeout memorandum to Crowley (the "Closeout Memo"), copying Crowley's and Santana's managers, FIU employee Stacy M████, and bank compliance officers James C████ and James D███████.  (*Id.*, ¶ 108.)

Citibank did not "solicit[] the views and assistance of" Crowley and Santana "[a]s per its standard account closure process."  (Memo at 5.)  Rather, FIU's closure email informed Crowley that if he wished to dispute closure, he had to notify F█████ by December 15, 2016, in which case the escalation process for account closeouts would be invoked.  (Cmplt., ¶ 104.)  Crowley did

---

[5]    Citibank's proffered two pages of cherry-picked excerpts (Gueli Decl., Ex. 12) from the 168-page transcript of D███'s May 27, 2022 half-day deposition are extrinsic to the Complaint and cannot be considered in deciding the Motion, as discussed *infra*, Argument Section D.  The Complaint only references D███'s deposition to allege that discovery is incomplete, and inasmuch as D████'s findings ████████████████████████████████████████████████████████  (Cmplt., ¶¶ 96, 243.)  *See DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 457 (S.D.N.Y. 2018) (refusing to consider deposition testimony cited in motion to dismiss because testimony was not integral to complaint).  Even putting that aside, Citibank's carefully selected excerpts are not credible and contradict D███'s testimony elsewhere in his deposition. (Schub Decl., ¶ 22.)  *See Silvercreek Mgmt. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 490 (S.D.N.Y. 2018) ("*Silvercreek II*") (finding that defendant bank's proposed alternative meanings of bank employees' statements were for a jury to evaluate, not summary judgment).

so, but F███ responded that without additional information to mitigate Citibank's AML concerns, closure was warranted, and that if Crowley <u>still</u> wished to contest it, he should contact her and C███ by December 23, 2016.  (*Id.*, ¶ 107.)

Despite Citibank's policy requiring resolution of FIU cases within ████, Crowley and Santana stalled closure of the Accounts for nearly <u>six months</u> after FIU's email.  (*Id.*, ¶¶ 103, 228.) They accomplished this by lying to FIU and bank compliance officers, and falsely promising to procure substantiating documentation from Nissen which they knew they could not deliver, because they knew it did not exist, all while continuing to request overdraft payments for Nissen so that he could operate his Ponzi scheme through the Accounts.  (*Id.*, ¶¶ 159-221.)

During the delay, Citibank executed hundreds of additional atypical transactions in furtherance of Nissen's Ponzi scheme, while simultaneously recording them as indicating fraud. (*Id.*, ¶¶ 114-31.)  Indeed, FIU documented many instances of funds entering the Accounts in large, round amounts from entities and individuals not involved in the ticket industry, and being paid back out on the same or consecutive days, to other such counterparties, including in a March 2017 memo (the "B███ FIU Memo").  (*Id.*, ¶¶ 125-29.)  Yet, Citibank continued executing them.

On May 15, 2022 – only <u>after</u> Nissen confessed his Ponzi scheme to Taly and Falcon, and even the Company's CFO was no longer permitted to contact Nissen – Crowley's manager finally agreed to close the Accounts.  (*Id.*, ¶ 222-28.)  Two weeks later, Nissen was arrested.  (*Id.*, ¶ 221.)

In September 2017, FIU observed, in a memo summarizing yet another investigation, the scope of which had commenced in March 2017, that "Nissen appeared to have been conducting a traditional Ponzi scheme," and listed nearly <u>200 fraud alerts</u> that the Accounts had triggered in the past two years.  (*Id.*, ¶ 135.)  Contrary to Citibank's argument (*see* Memo at 6-7), Plaintiff pled that the bank knew long before September 2017 that Taly, Falcon and Hutton had invested in the

7

Company.  (Cmplt., ¶¶ 68, 101-02, 116, 123, 127-28, 173, 179, 193, 200, 203, 215-17.)

Citibank did deem Nissen's large, round-number transactions with Hutton, Taly, Falcon, and others, "suspicious" (Memo at 6-7, 12) – but that was <u>because</u> they were investors not involved in the ticket industry, and FIU saw funds rapidly moving in and out of the Accounts to pay off one with another's investment.  (Cmplt., ¶¶ 116, 123, 125-29.)[6]

## E.  <u>Discovery Ordered by the Bankruptcy Court Remains Incomplete</u>

Citibank makes much of the Trustee's "pre-suit" Bankruptcy Court discovery (Memo at 7), but, as pled, discovery is far from complete.  (*Id.*, ¶ 243.)  Citibank has failed to fully comply with the Bankruptcy Court's order and counsel's attendant subpoenas.  (*Id.*)  Indeed, Citibank has not made Crowley, Santana, F███, S███, B███, or any compliance or credit officer available for deposition, and has not produced all responsive documents.  (*Id.*)

Citibank improperly cites extrinsic documents[7] and asserts that Plaintiff had the benefit of recorded discussions between Taly and Nissen (the "<u>Taly Conversations</u>"), and Nissen's cooperation.  (Memo at 7.)  Both propositions are absurd.  First, inasmuch as the Accounts were still open at the time of the Taly Conversations, and Crowley admitted to stalling FIU even after that (Cmplt., ¶ 222-28), the Court could reasonably infer that Nissen did not implicate Citibank in the Taly Conversations because he hoped to continue procuring its substantial assistance with his fraud.  Second, Plaintiff did not have "the cooperation of Nissen himself" (Memo at 7) with his investigation.[8]  Rather, Citibank's own document (which should not be accepted for the truth of its contents anyway) reveals that Nissen merely cooperated in an analysis of how he used victims'

---

[6]   (*See* Cmplt., ¶ 123 (FIU observed in March 2017 "that Hutton and Falcon were Nissen's counterparties and that funds appeared to have been processed by Falcon as part of its regular business operations, and without suspicious intention on the part of Falcon.  However…the Company's transactions with Falcon appeared indicative of unusual movement of funds.").)

[7]   Initially, none of the Gueli Declaration exhibits should be considered in connection with the Motion, for the reasons set forth *infra*, Argument Section D, and as attested in the Schub Declaration.

[8]   Plaintiff's counsel reached out to Nissen's counsel to discuss but received no response.  (Schub Decl., ¶ 8.)

funds, in exchange for decreasing his jail time.  (Gueli Decl., Ex. 11; Schub Decl., ¶¶ 6-9.)

## ARGUMENT

### A.    General Legal Standards Applicable to the Motion

A Rule 12(b)(6) motion must be denied where the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 583 (2007) (citation omitted); *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.").  Plaintiffs alleging fraud must also "'state with particularity the circumstances constituting fraud… Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'"  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 171 (2d Cir. 2015) (quoting Fed. R. Civ. P. 9(b)).  "As always," courts must "credit all non-conclusory factual allegations in the complaint and draw all reasonable inferences in Plaintiffs' favor."  *Id.* (citation omitted).  Here, the Trustee alleges claims under New York law for aiding and abetting Nissen's fraud.  "A complaint states a claim for aiding and abetting fraud by alleging… (1) a fraud;[9] (2) the defendant's actual knowledge of the fraud; and (3) the defendant's substantial assistance to the fraud." *Silvercreek Mgmt. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 442 (S.D.N.Y. 2017) ("*Silvercreek I*") (citations omitted).  These standards are satisfied.

---

[9]    Plaintiff obviously pled the existence of a fraud, inasmuch as Nissen confessed to running a Ponzi scheme, pled guilty to wire fraud and served jail time therefore.  (Cmplt., ¶¶ 2, 222-39, 249, 262.)  *See Rosner v. Bank of China*, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009) ("Given the clear record that establishes the fraud perpetrated on the [] investors, [plaintiff] has adequately pled the existence of an underlying fraud.").  Citibank does not dispute this.  (*See* Memo at 1, 2, 4.)

**B.**     **Courts Do Not Dismiss Complaints that Allege Actual Knowledge of Fraud**

Courts routinely deny motions to dismiss aiding and abetting fraud claims where, like here, plaintiffs adequately allege the defendant's actual knowledge of underlying fraud.  "New York courts have emphasized that actual knowledge need not be based on an explicit acknowledgement of the fraud but can be inferred from the allegations in a complaint." *Carbon Inv. Partners, LLC v. Bressler*, 2021 U.S. Dist. LEXIS 166293, at *16 (S.D.N.Y. Sept. 1, 2021) (citations omitted) ("At a minimum, [plaintiff's] allegations regarding [defendant's] familiarity and involvement with correspondence and legal documents relating to the Fund give rise to the inference of her actual knowledge of [fraudster's] fraud.").  Indeed, "often 'participants in a fraud do not affirmatively declare to the world that they are engaged in the perpetration of a fraud.'" *Id.* *15-16 (quoting *Oster v. Kirschner*, 77 A.D.3d 51, 55-56 (1st Dep't 2010) (brackets omitted) (finding plaintiff investors stated claim for aiding and abetting Ponzi scheme against law firm and partner, where allegations included defendants' knowledge of client-fraudsters' criminal backgrounds)).  Thus, "circumstantial evidence can be sufficient to support a finding of actual knowledge." *Silvercreek II*, 346 F. Supp. 3d at 487 (citation omitted); *see Bullen v. Sterling Valuation Grp., Inc.*, 2020 N.Y. Misc. LEXIS 2540, at *14 (Sup. Ct. N.Y. Cty. June 5, 2020) (Ostrager, J.) (denying motion to dismiss aiding and abetting fraud claim and finding "plaintiffs need not allege direct evidence of knowledge of the fraud; circumstantial evidence is sufficient.") (quotation omitted); *see also DaPuzzo v Reznick Fedder & Silverman*, 14 A.D.3d 302, 303 (1st Dep't 2005) (finding "reckless disregard or blindness to the true" state of facts sufficient).

**1.**     **The Complaint Alleges that FIU had Actual Knowledge of Nissen's Fraud**

Citibank did everything short of "affirmatively declaring to the world" that it knew Nissen was engaged in fraud – indeed, it declared as much in its own documents.  The Complaint asserts extensive allegations detailing, with specificity, Citibank's actual knowledge of evidence that

Nissen was running a Ponzi scheme, which the bank documented in real time in memos and emails.

By August 2016, Plaintiff alleged, Citibank <u>decided to close the Accounts</u>, because they had generated over two dozen fraud alerts and Citibank had <u>actual knowledge</u>, *inter alia*, that:

- There was no lawful, business, or economic purpose for <u>hundreds</u> of Nissen's and the Company's transactions exceeding <u>hundreds of millions of dollars</u>.  (Cmplt., ¶ 96)
- The Accounts' activity represented an overall rapid movement of funds between the Accounts as well as layering.  (*Id.*, ¶ 97.)
- <u>Nissen was</u> ███████████████████████████████████████████
  ███████████████████████████████████████.  (*Id.*)
- The frequency and amounts of transactions were excessive and unusual.  (*Id.*)
- <u>Nissen</u> ████████████████████████████████████████████████
  ██████████████████████████████████████████████████████████
  █████████████████████████████████.  (*Id.*)

By December 2016, Plaintiff alleged, Citibank had <u>actual knowledge</u>, *inter alia*, that:

- <u>Nissen</u> ██████████████████████████████████████████████████
  ████████████████████████████"  (*Id.*, ¶ 110.)
- Funds entered the Accounts as wires and check deposits from various individuals and entities, and were then distributed between a large number of Accounts as internal transfers, wires, and checks, multiple times a day through many Accounts, "in a fashion indicative of an attempt to disguise the initial source of funds."[10]  (*Id.*)
- Funds left the Accounts as large, frequent cash withdrawals, and ████████ Crowley's June 2016 purported explanation (*id.*, ¶ 87), ████████████████████████████
  ██████████████████████████████████████████████.  (*Id.*, ¶ 110.)
- <u>A Company entity was a</u> ████████████████████████████████████
  ██████████████████████████████████████████.  (*Id.*, ¶ 111.)

In mid-January 2017, C████ emailed Amie W████, a Citibank business practices employee, to apprise her of FIU's closure decision and Crowley's dispute, and to seek her views concerning

---

[10]   Thus, Citibank's inventive argument that its inability to substantiate the funds' sources means it could not have known of fraud (Memo at 8-9, 12), is patently contradicted by its own documents.  (Cmplt., ¶ 110.)  Other documents also admit that "debits and credits in the accounts were reflective of a Ponzi scheme."  (*Id.*, ¶¶ 4, 134-39.)

the derogatory media from a reputational risk perspective. (*Id.*, ¶ 169.) *See Silvercreek I*, 248 F.

Supp. 3d at 445 (aiding and abetting claim survived motion to dismiss where "Complaint describes

emails evincing Merrill Lynch's concern for reputational risk") (quotations omitted).

By March 2017, Plaintiff alleged, Citibank also had <u>actual knowledge</u>, *inter alia*, that:

- Nissen was transacting with more and more reputed criminals and counterparties involved in negative news, including a large Ponzi scheme. (Cmplt., ¶¶ 115, 122.)
- The volume of cash activity was simply inconsistent with a ticket company. (*Id.*, ¶ 117.)
- The Accounts' activity was suspicious and indicative of rapid movement of funds between Nissen's personal and the Company's business Accounts. (*Id.*, ¶ 124.)
- There was a high volume of transactions with no apparent economic purpose. (*Id.*)
- Nissen and the Company frequently made large, round-number deposits received from counterparties not involved in the ticket industry, and paid out the same or similar large, round-number amounts on the same or consecutive days to other entities not in the ticket business; these counterparties included Taly and Hutton. (*Id.*, ¶¶ 117, 124-29.)

By sharp contrast, in Citibank's cited case *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627 (2d Cir.

2020), "the complaint [did] not allege facts indicating that [the bank's] own investigations revealed

any actual evidence of the Ponzi scheme after the…accounts were flagged for suspicious banking

activities." *Id.* at 630. Here, FIU found <u>so</u> much evidence that it concluded by August 2016 that

the bank must <u>close</u> the Accounts. (Cmplt., ¶¶ 95, 97.) The Court can reasonably infer Citibank's

actual knowledge of Nissen's fraud from FIU's decision to close the Accounts (*id.*, ¶ 96) alone.[11]

### 2.   The Complaint Does Not Merely Allege Suspicious Activity

Citibank makes several other attempts to refute its actual knowledge. It devotes substantial

space to arguing that suspicious behavior <u>on its own</u> is not enough. (Memo at 12-16.) However,

under Rule 9(b), courts "view the alleged facts in their totality, not in isolation." *Loreley Fin.

(Jersey) No. 3*, 797 F.3d at 171 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

---

[11]   While Citibank disputes Plaintiff's allegation that the D███ FIU Memo concluded Nissen was engaged in "fraud," it does not (and cannot) contest that D███ and Citibank officers concluded during the summer of 2016 that there was no lawful, business, or economic purpose for hundreds of Nissen and the Company's transactions.

322-23 (2007)).  The Trustee did not merely allege suspicious behavior – he pled with particularity how FIU documented, in great detail, Nissen's atypical banking activity evidencing his fraud.

Citibank cites no case dismissing an aiding and abetting fraud claim for lack of actual knowledge where the defendant's <u>own documents recorded</u> the underlying fraud in real time.  For example, *In re Agape Litig. v. Cosmo*, 773 F. Supp. 2d 298 (E.D.N.Y. 2011), upon which Citibank heavily relies, dismissed an aiding and abetting fraud claim where the defendant bank "never conducted an investigation into…or performed an audit of" its Ponzi scheme company-customer. *Id.* at 311; *cf. Vasquez v. H.K. & Shanghai Banking Corp. Ltd.*, 2019 WL 2327810, at *16-17 (S.D.N.Y. May 30, 2019) (finding actual knowledge adequately pled, where complaint alleged that it appeared from bank's own independent research that customer was conducting a Ponzi scheme). *Ryan v. Hunton & Williams*, 2000 U.S. Dist. LEXIS 13750 (E.D.N.Y. Sept. 20, 2000), cited by Citibank, is also inapposite.  There, a fraudster's cohort opened an account just three months before their Ponzi scheme collapsed.  *Id.* at *3.  The bank immediately suspected fraud and notified the customer after only seven weeks that the account would be closed in a month.  *Id.* at *3-4.  But there were no allegations of actual knowledge; the plaintiff merely alleged the bank had suspected the cohort and company were running an "advance fee scam" a year prior and the bank had closed the fraudster's family account a year before due to a bounced check.  *Id.* at *25.[12]  Further, certain of Citibank's cases actually support Plaintiff's Opposition.  For example, in *Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403 (W.D.N.Y. 2017), the court agreed that "actual knowledge may be

---

[12]    *Cf. also Rosner*, 2008 WL 5416380, at *3 (finding actual knowledge not pled where plaintiff alleged: transactions bank processed were so atypical it was "simply implausible" that bank lacked actual knowledge of underlying scheme; bank knew of other similar schemes; and bank was expected to bend rules for certain customers); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 414 (S.D.N.Y. 2021) ("Plaintiffs' complaint contains no information concerning any specifics of [bank's] investigation; instead, Plaintiffs allege only that [bank's] compliance group conducted an investigation based on internet research"; single alleged transfer implicating bank had occurred <u>before</u> that investigation concluded); *Zhao v. JPMorgan Chase & Co.*, 2019 U.S. Dist. LEXIS 40673, at *6 (S.D.N.Y. Mar. 13, 2019) (plaintiffs merely alleged examples of account activity that "alerted or should have alerted" bank to fraud).

inferred…where there are clear allegations that the aider and abettor has manifestly changed its normal operating procedures to encourage the primary tortfeasor's fraudulent conduct." *Id.* at 421 (citation omitted).  Here, Citibank let Nissen and the Company's FIU cases languish for ███ ████ longer than the ███ its policy permitted, closing the Accounts only after Nissen confessed.  (Cmplt., ¶¶ 163, 222-28.)  Moreover, Crowley told Nissen about FIU's investigation in violation of Citibank's AML policy.  (*Id.*, ¶ 94.)

### 3. <u>Plaintiff Need Not Plead Knowledge of Investor Terms or Inducements</u>

Citibank suggests that Plaintiff must allege actual knowledge of not only Nissen's underlying fraud, but of specific statements or inducements that Nissen made to his investors, and of the terms of investors' agreements.  (Memo at 12, 15.)[13]  None of Citibank's cited cases stand for any such proposition.  *Cf. Krys v. Pigott*, 749 F.3d 117, 131 (2d Cir. 2014) (reasoning that "nowhere does the [] Complaint allege that any [defendant] knew or even had reason to suspect that [Refco holding company] would" use loan proceeds to pay down its receivable on Refco's books, where plaintiff failed to plead "that Refco was insolvent – and the facts relating to its insolvency"); *Rosner*, 349 F. App'x at 639 (bank's suspicion of money laundering did not translate to actual knowledge of fraudulent sales of investments in overseas currency trades); *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 545 (S.D.N.Y. 2009) ("Trustee must offer facts sufficient to demonstrate that the defendants had actual knowledge of wrongful conduct that <u>harmed the FX customers</u>…not actual knowledge of different wrongful conduct that might have harmed others, such as Refco's shareholders.") (emphasis in original).

Here, the Complaint sufficiently alleges that Citibank had actual knowledge of Nissen's fraud, a Ponzi scheme, which obviously would harm his creditors, including Falcon, Taly and

---

[13]   While these allegations might be relevant to pleading an underlying fraud, that factor is undisputed here.

Hutton.  (Cmplt., *passim*.)  Plaintiff alleged that FIU observed – and documented in real time, for nearly a year – multiple specific, telltale indications of a Ponzi scheme.  (*Id.*)  Citibank was also well aware that Taly, Falcon, and Hutton were investors (*id.*, ¶¶ 68, 101-02, 116, 123, 127-28, 173, 179, 193, 200, 203, 215-17),[14] and did have actual knowledge of certain investment terms, including Falcon's DACA requirement and partnership interest, and that Taly and Hutton made event-specific loans.  (*Id.*, ¶¶ 68, 172-73, 179, 188, 193, 200, 203, 217.)

### 4.  Plaintiff Alleged Crowley and Santana had Actual Knowledge

Citibank argues that Plaintiff failed "to plead actual knowledge based on the alleged motives or actions of Crowley and Santana."  (Memo at 17.)  However, Plaintiff did not allege Crowley and Santana's actual knowledge based on their motives or actions – he relied on their correspondence.[15]  On May 8, 2017, after Nissen had confessed his fraud to Taly, and just after receiving an email from F█████ inquiring into the Accounts' closure, which FIU had recommended 5 ½ months before, Crowley emailed Nissen, copying Santana: "I cant [sic] stall them anymore."  (Cmplt., ¶¶ 222-25.)  Bankers "stalling" their FIU, AML and compliance colleagues hardly falls within "ordinary-course client service."  (Memo at 18.)  Rather, Crowley and Santana baselessly disputed the Accounts' closure for as long as they could to maintain Nissen's business, including due to Santana's personal relationship with Nissen, and Crowley's financial and professional incentives.[16]  (Cmplt., ¶¶ 71, 74.)  While "stalling" closure from at least late 2016 through May 2017, Crowley and Santana had actual knowledge that Nissen's proffered

---

[14]   Ironically, Citibank's proffered extrinsic account agreement (Gueli Decl., Ex. 7) actually demonstrates its obvious knowledge that Falcon was the Company's lender and investor.

[15]   Depositions of Crowley and Santana, which Citibank refused to allow during the Trustee's investigation, would surely be pertinent to further establishing their motives and knowledge.

[16]   "A plaintiff can establish a strong inference of fraudulent intent…either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Berman v. Morgan Keegan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996)) (emphasis added).

"records" did not and could not explain FIU's unmitigated AML concerns.  Plaintiff pled:

- To push a January 2017 overdraft, Nissen sent Santana, under the subject "Hutton Payments," invoices from "National Events of America" to "National Event Company." Crowley responded: "This is not an invoice from the company the check is made out to." Nevertheless, he transmitted the inter-Company invoices to credit officer Jason G▬▬, conceding they did not help substantiate Nissen's excessive over-drafting.  G▬▬ agreed that there were too many unanswered questions.  (*Id.*, ¶ 182.)

- In February 2017, Crowley sent Nissen a description of July 2016 wires from Hutton and Taly which were flagged in the Closeout Memo, and told Nissen: "see what you can get." Crowley then listed July 2016 withdrawals and inter-Company transfers and told Nissen to explain if they had to do with Hutton and Taly.  Nissen never explained.  (*Id.*, ¶ 192.)

- In March 2017, Nissen sent Crowley and Santana so-called purchase order reports which he claimed were for the U.S. Open, in which he said Hutton had invested, but they were mere lists not printed on any company's header, annexed to inter-Company purchase orders.  (*Id.*, ¶ 200.)

- In April 2017, Nissen sent Crowley and Santana an Excel listing purported transactions with notes next to each that included: "Supposed to be for Olympics," "Cannot Find This Transaction," and "bank check to replace bounced check [] for same amount."  (*Id.*, ¶ 213.)

- In April 2017, Santana falsely told Taly, in support of a letter Nissen had forged, that Citibank had mistakenly wired funds Taly was owed, to someone else.  (*Id.*, ¶¶ 213-15.)[17]

All of the foregoing occurred <u>after</u> Crowley and Santana reviewed the Closeout Memo.

## C.   <u>Plaintiff Adequately Pled that Citibank Substantially Assisted Nissen's Fraud</u>

"Substantial assistance exists where a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed."  *Silvercreek I*, 248 F. Supp. 3d at 443 (quotations omitted).   It "can take many forms," including "<u>executing transactions</u>."  *Silvercreek II*, 346 F. Supp. 3d at 487 (citation, quotations and brackets omitted) (emphasis added).  For example, in *Mazzaro de Abru v. Bank of America Corp.*, 2008 WL 3171560 (S.D.N.Y. Aug. 6, 2008), the court denied a motion to dismiss where the plaintiffs alleged that a bank had executed transfers to improper destinations, such as art galleries and auction houses,

---

[17]   Even if the Court were to consider Citibank's extrinsic, unauthenticated rough transcripts of the Taly Conversations (Gueli Decl., Ex. 6 at Ex. B) (and it should not), contrary to Citibank's argument (Memo at 19, n.10) Plaintiff never alleged that Citibank helped Nissen forge his April 2017 letter to Taly – only that Santana orally confirmed the contents of Nissen's forged letter, with actual knowledge his statement was false. (Cmplt., ¶¶ 215-17.)

while knowing that such transfers fell outside of the fraudster's supposed business purpose. *See id.* at \*4-6. The court reasoned that "multiple transfers to [fraudster's] personal creditors and family members as well as known black market currency traders cannot be presumed routine or typical banking transactions, especially when viewing the claim in the light most favorable to the Plaintiff." *Id.* at \*4. Indeed, "even ordinary course transactions, can constitute substantial assistance under some circumstances." *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005); *see Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1526394, at \*4 (N.D. Cal. Apr. 15, 2010) (plaintiffs pled substantial assistance under identical California law "by detailing the critical actions taken by the bank to assist the Ponzi participants," which consisted of authorizing banking platforms that prevented oversight, and allowing fraudsters to deposit investor monies, commingle funds, transfer large investment deposits to offshore accounts, and use investor monies to pay personal expenses); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 511 (S.D.N.Y. 2001) (collecting cases where context elevated ordinary transactions to substantial assistance), *abrogated on other grounds by Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011).

### 1. Citibank Substantially Assisted Nissen by Executing Atypical Transactions

Citibank claims to have merely provided "standard banking services." (Memo at 20.) This could not be further from the truth – rather, as pled, Citibank executed <u>hundreds</u> of atypical banking transactions. Commencing immediately upon the Accounts' opening, and continuing on a near-daily basis or multiple times a day for almost two years, Santana (and sometimes others) began requesting that Citibank's overdraft and credit departments force-pay Nissen and the Company's outgoing checks and wires, despite the Accounts' constant low, zero and negative balances. (Cmplt., ¶ 142.) Santana would claim that funds were coming into the Accounts in short order that would cover the overdrafts, and push his colleagues to lift standard, multi-day holds to clear deposits when Nissen needed immediate access to such funds to clear the overdrafts. (*Id.*, ¶ 143.)

17

For around a year and a half, the bank obliged Santana's requests, while acknowledging that the services it was providing Nissen were anything but "standard."  By May 2016, G███ observed that one Account had a negative balance over $1.7 million and had over-drafted 30 times in ten months.  (*Id.*, ¶ 145.)  From that point on, Citibank credit officers issued increasingly frequent and more serious warnings to Santana that his overdraft requests were excessive, abusive and could not continue.  (*Id.*, ¶ 147.)  For example, in late August 2016, a Citibank "OLOD" employee admonished Santana that the Accounts were continually overdrawn, the funds requested were not in the Accounts at the time of the requests, and the incessant requests were becoming an abuse of the system – yet, he still approved Santana's request that day.  (*Id.*, ¶ 148.)  Likewise, in mid-September 2016, in response to another such request, G███ warned Santana that one Account had an excessive overdraft history with 34 overdrafts since it opened less than a year before.  (*Id.*, ¶ 149.)  G███ instructed Santana to educate Nissen that the Accounts needed to be funded to prevent future overdrafts – yet he approved Santana's request that day, too.  (*Id.*)

The Complaint is replete with additional examples (*see id.*, ¶¶ 151-55) until finally, in late January 2017, G███ informed Santana that the bank could not consider further overdraft requests until Nissen covered a six-figure unfunded liability created by the negative balance under his personal Account.  (*Id.*, ¶ 156.)  Despite that, Santana relentlessly continued requesting them, and the bank at least initially authorized one more.  (*Id.*, ¶¶ 175, 180, 195.)  Further – and importantly – hundreds of transactions Citibank executed for Nissen were atypical due not only to excessive over-drafting, but for the reasons discussed *supra* in connection with FIU's actual knowledge. (*See* Argument Section A.1.)  Citibank cannot credibly label <u>any</u> of the foregoing banking services as "standard."  (Memo at 20.)  *See Surefire Dividend Capture, LP v. Indus. & Com. Bank of China Fin. Servs. LLC*, 2022 WL 1808798, at *2 (Sup. Ct. N.Y. Cty. June 2, 2022) (Ostrager, J.) (finding

it "premature to make a determination as to whether defendant's alleged actions did, in fact, constitute routine clearing functions or if the actions went beyond," on a motion to dismiss).

### 2. Citibank Affirmatively Acted in Substantial Assistance to Nissen

Moreover, Citibank confuses, or perhaps purposely flips, Plaintiff's argument that the bank substantially assisted Nissen – Plaintiff does not allege that Citibank failed to act (Memo at 21), but rather, that Citibank affirmatively acted. Citibank did so by means of, *inter alia*, Crowley and Santana actively stalling and lying to FIU, Santana lying to Taly, and by disregarding its own conclusion to close the Accounts and instead executing hundreds of additional atypical transactions while simultaneously documenting them as fraudulent in more FIU memos. *See Bullen*, 2020 N.Y. Misc. LEXIS 2540, at *15 (plaintiffs "pleaded that [defendant] provided substantial assistance by failing to…challenge [fraudster's] improper valuations when required to do so, and that failure…helped enable the fraud to proceed.").

The Complaint alleges with specificity how Crowley and Santana lied to their FIU and compliance colleagues by falsely promising to procure documentation from Nissen to mitigate the bank's AML concerns, when they knew they could not. (Cmplt., ¶¶ 159-225.) As detailed *supra*, they quickly learned in early 2017 that no documentation existed to substantiate any of the transactions in the Closeout Memo, because Nissen was unable to procure any. (Argument Section A.4.) Nevertheless, they scheduled, then canceled, meetings with FIU and compliance officers, and brushed off their colleagues' emails requesting status updates, always promising that evidence was coming soon, and even falsely stated that Nissen had "cleared up at lot of things" during a January 2017 meeting, when that was untrue. (Cmplt., ¶¶ 172-214.) Santana attempted an end-run around the credit officers that cut off Nissen's overdrafts by requesting them from different bank employees. (*Id.*, ¶¶ 184, 218, 221.) Finally, on May 8, 2017, Crowley warned Nissen that he could not stall his colleagues anymore – the obvious inference being that he had been doing so

until then.  (*Id.*, ¶ 225.)  And, *Renner v. Chase Manhattan Bank*, 2000 WL 781081 (S.D.N.Y.  June 16, 2000), *aff'd*, 85 F. App'x 782 (2004), which Citibank cites extensively, is inapposite because there were "no allegations…that [bank manager]…attempted to persuade Chase to reconsider its decision to reject the transaction" at issue.  *Id.* at *9.  Rather, "investigation was prompted once Chase received a complaint against [fraudsters]… Promptly thereafter Chase closed the [fraudster's] account."  *Id.* at *12 (emphasis added).  That could not be further from the truth here.

Plaintiff also pled specific facts demonstrating that despite Citibank's actual knowledge of fraud (*supra*, Argument Section A.1), the bank ignored its own closure decision for months while the same activity – which, as pled, included layering, structuring, constant overdrafts, large reportable transactions, voluminous cash withdrawals, and rapid movement of round-number funds in and out of the Accounts to and from counterparties, including fraudsters, not in the ticket business – continued unabated.  (Cmplt., ¶¶ 114-221.)  This plainly constitutes substantial assistance, inasmuch as the bank executed hundreds of Ponzi scheme transactions during the delay.

### 3.    Citibank's Substantial Assistance Proximately Caused the Trustee's Losses

"An aider and abettor's substantial assistance to a fraud can be considered a proximate cause where a plaintiff's injury was a direct or reasonably foreseeable result of the defendant's conduct."  *Silvercreek II*, 346 F. Supp. 3d at 488 (quotation omitted).  Thus, in *Winnick*, 406 F. Supp. 2d at 247, where plaintiffs alleged a defendant was involved with transactions which, though not fraudulent in and of themselves, were carried out in furtherance of the underlying fraud, the court found that whether the defendant's "actual contribution on any given transaction was sufficient to be a proximate cause of the [] losses is ultimately a fact issue to be resolved after fuller development of the record, but the [plaintiffs] are entitled to present proof of the substantial assistance they have adequately alleged."  *Id.* at 257; *see Carbon Inv. Partners*, 2021 U.S. Dist. LEXIS 166293, at *26-27 (finding it "reasonably foreseeable" that manager's assistance in

20

obtaining transfer authorization, which permitted fraudster to withdraw proceeds, enabled him to further his scheme); *Surefire Dividend Capture*, 2022 WL 1808798, at *3 ("The issue of proximate causation cannot be decided as a matter of law because there is a dispute as to whether defendant's actions amounted to routine clearing functions or something more.").

Here, Citibank was both a "but-for" and proximate cause of Plaintiff's losses.  Plaintiff pled that Citibank approved and executed hundreds if not thousands of atypical transactions that were necessary to keep Nissen's Ponzi scheme alive, while simultaneously documenting those same transactions as reflecting fraud, all while Crowley and Santana stalled closure of the Accounts for months, by falsely promising that Nissen would substantiate the activity when they knew he could not.  (*Id.*, ¶¶ 159-225.)  This assistance, foreseeably, enabled Nissen to defraud creditors out of millions of dollars through the Accounts – even after Citibank decided to close them.  By contrast, in *Vasquez*, cited by Citibank, the court found proximate cause lacking where the defendant bank maintained a <u>single</u> correspondent account – not <u>all</u> the fraudster's business banking, as is the case here.  2019 WL 2327810, at *18-19.  (*Cf.* Cmplt., ¶¶ 64-68.)  That Nissen ran a Ponzi scheme through the Company's primary bank was certainly foreseeable given that that bank decided to close the Accounts due to unmitigated AML concerns months before it did so.

**D.      The Gueli Declaration Exhibits are Improper and Cannot be Considered**

The Motion should also be denied because it constitutes a premature summary judgment motion.  Rule 12(b)(6) "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it."  *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006) (citations omitted).  Thus, "it would be improper in ruling on a motion to dismiss to draw any inference in an extrinsic document that inferences favorable to a defendant – any legitimate dispute about the meaning or import of an extrinsic document is a question of fact."  *In re Refco Inc. Sec. Litig.*, 2010 WL 11500542, at *4 (S.D.N.Y. Oct. 22, 2010), *report and*

*recommendation adopted as modified sub nom.*, 2011 WL 6097724 (S.D.N.Y. Dec. 7, 2011) (citation omitted).  Thus, extrinsic documents not attached to a complaint may only be considered on a motion to dismiss if they are "incorporated into the complaint by reference" or "integral to the complaint." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010).

"To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *Id.* (quotation omitted).  Importantly, the "'limited quotation' of documents not attached to the complaint 'does not constitute incorporation by reference.'" *Id.* (quoting *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)); *see Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989), s*uperseded by statute on other grounds as stated in Bd. of Trs. of Ft. Lauderdale Gen. Emps. Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853 (S.D.N.Y. 2011) (finding district court improperly considered documents the complaint "merely discussed" and from which it "presented short quotations") (quotation omitted).

"To be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *DeLuca*, 695 F. Supp. 2d at 60 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (quotation marks and brackets omitted).  "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which…was not attached to the complaint." *Glob. Network Commc'ns*, 458 F.3d at 157.  Even if a document is "integral," it also must be clear that "no dispute exists regarding the authenticity or accuracy of the document" and "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citation omitted).  This "has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render

consideration impermissible.'"  *UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 435 (S.D.N.Y. 2015) (quotation omitted).

Additionally, a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns*, 458 F.3d at 157 (quotation omitted) (complaint's reference to plaintiff's guilty pleas in separate proceedings did not permit consideration of "the content of his testimony proffered in exchange for the pleas"); *see Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (reference to "sworn testimony" in prior action insufficient to warrant district court's consideration of deposition testimony); *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 273 (S.D.N.Y. 2011) (examiner's report, even if "integral," could not be considered for the truth of the matter asserted that it demonstrated due diligence); *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) ("[I]t would violate Fed. R. Evid. 201 for the Court to take judicial notice of the contents of the General Release.").

Critically, "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'"  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quoting Rule 12(d)). This conversion requirement is "strictly enforced" and "mandatory."  *Global Network Commc'ns*, 458 F.3d at 155 (quotations and brackets omitted).  Here, the Gueli Declaration annexes twelve extrinsic exhibits (the "Exhibits").  As attested in the Schub Declaration, none of the Exhibits were attached to, incorporated by reference in, or integral to, the Complaint, and Citibank's only purpose in presenting them is to improperly support its own view of disputed facts on a motion to dismiss. Thus, the Court should not consider the Exhibits.  Alternatively, if the Court does, it should convert

the Motion into one under Rule 56, and deny it as premature pending depositions, written

discovery, completion of document production, and Plaintiff's presentation of further evidence.[18]

E.    **_In Pari Delicto_ and the _Wagoner_ Rule Do Not Bar the First Cause of Action**

Neither *in pari delicto* nor the related federal rule (the "_Wagoner_ Rule"),[19] bars the First

Cause of Action, because the adverse interest exception to those doctrines applies, as alleged in

the Complaint.   "The *in pari delicto* doctrine and a party's standing to sue under *Wagoner*…may

bar an estate representative's recovery from a third party malfeasor where the debtor is also at

fault." *Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008)

(citations omitted).   Neither doctrine bars the First Cause of Action, due to the adverse interest

exception.    "Under New York law…management misconduct will not be imputed to the

corporation if the officer acted entirely in his own interests and adversely to the interests of the

corporation."  *Id.* at 696 (citations and quotations omitted).   The mere fact that a company benefits

from a manager's misconduct "does not preclude a fact-finder from determining that the manager's

true motivation was diametrically opposed to the interests of the corporation." *McHale v. Citibank,*

*N.A. (In re 1031 Tax Grp., LLC)*, 420 B.R. 178, 200 (Bankr. S.D.N.Y. 2009); *see Trott v. Platinum*

*Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*, 2019 U.S. Dist. LEXIS 104562, at *28, *31-

32 (S.D.N.Y. June 21, 2019) (holding "applicability of the adverse interest exception must be

evaluated with respect to specific instances of alleged misconduct" and denying Platinum fund

defendants' motions to dismiss under *Wagoner* Rule and *in pari delicto*, despite their argument

that adverse interest exception could not apply because related SEC complaint alleged the fraud

was "to attract investors and keep the fund afloat" and that fraudsters "worked to sustain the fund").

Here, the Trustee pled that Nissen was a faithless and disloyal fiduciary of the Company,

---

[18]    Plaintiff does not concede to the truth, accuracy, or authenticity of any of the Exhibits, and reserves all rights.
[19]    The *Wagoner* Rule was established in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991).

and acted completely adversely to the Company's interests. (Cmplt., ¶ 252.) By using the Company to operate his Ponzi scheme – unbeknownst to his partner Falcon, or even to the Company's CFO or controller – Nissen totally abandoned the Company's interests and acted entirely in his own interest. (*Id.*, ¶¶ 252, 254.) Plaintiff pled that Nissen looted the Company of over $27.5 million in the years leading up to his arrest, and prolonged the Company's existence so that he could continue to loot from it. (*Id.*, ¶ 252.) In addition to the looting of funds, Nissen also harmed the Company by increasing its losses. (*Id.*) The Company was harmed, not benefitted, by Nissen's Ponzi scheme. (*Id.*)[20] Citibank's improper attempt to dispute the Complaint's factual allegations in this regard is based on extrinsic documents not referenced in the Complaint that it asks the Court to accept for the truth of the matter asserted. (Memo at 24-25; Schub Decl., ¶¶ 6-9, 15-17.) This is plainly improper and should be rejected out of hand.[21]

**F.    Alternatively, the Court Should Allow Plaintiff to Amend the Complaint**

Rule 15 provides that leave to replead should be "freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Kirschner*, 648 F. Supp. 2d at 546 ("While the Trustee has enjoyed access to a substantial trove of Refco's internal documents…the Trustee deserves 'at least one opportunity to plead fraud with greater specificity.'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)). Accordingly, in the event the Court grants the Motion, it should do so without prejudice and allow Plaintiff to amend the Complaint and re-plead this action.

---

[20]    Citibank cites the allegation that Nissen's fraud "prolonged the Company's existence" (Cmplt., ¶ 252), and argues that the Complaint thus admits Nissen's fraud benefitted the Company. (Memo at 25.) That is incorrect; such allegation is not an admission because extending a company's life is not necessarily a benefit to the Company.

[21]    Moreover, it was disingenuous for Citibank to have removed this Action from state court if it believes it has a *Wagoner* Rule defense to the First Cause of Action. *See Am. Tissue, Inc. v. Arthur Andersen, L.L.P.*, 2003 U.S. Dist. LEXIS 22137, at *4, *10 (S.D.N.Y. Dec. 3, 2003) ("[P]utative plaintiffs lacking standing are not entitled to have their claims litigated in federal court… The *Wagoner* rule is a standing rule…"). Citibank cannot have it both ways.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny the Motion.

Dated: September 20, 2022
       New York, New York

           KASOWITZ BENSON TORRES LLP

           By: */s/ Howard W. Schub*
           Howard W. Schub (hschub@kasowitz.com)
           Michele L. Angell (mangell@kasowitz.com)
           Katherine C. Boatman (kboatman@kasowitz.com)
           1633 Broadway
           New York, New York 10019
           Telephone:  (212) 506-1700
           Facsimile:  (212) 506-1800

           *Attorneys for Kenneth P. Silverman, Esq.,*
           *Chapter 7 Trustee*