**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Kenneth P. Silverman, Esq., The Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC, and Its Affiliated Debtors, | : : : : | Case No. 1:22-cv-05211-DEH |
| Plaintiff, | : : | |
| -against- | : : | |
| Citibank, N.A., | : : | |
| Defendant. | : : | |

**DEFENDANT CITIBANK, N.A.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Adam S. Hakki
John Gueli
Katherine J. Stoller
Randall Martin
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for Defendant Citibank, N.A.*

## **<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTS ........................................................................................................................................4

     A.     Plaintiff Retains Special Litigation Counsel For The Express Purpose
Of Pursuing Creditors' Assigned Claims In Addition To The
Debtors' Claims ..........................................................................................4

     B.     Plaintiff Obtains The Hutton Assignment For The Express Purpose
Of Pursuing Hutton's Claims Against Citibank And To Enable His
Anticipated Prosecution Of This Lawsuit ...................................................5

     C.     Plaintiff Obtains The Falcon And Taly Assignments For The Express
Purpose Of Pursuing Their Claims As Part Of The Expected Prosecution
Of This Lawsuit And Commences This Action The Very Same Day ...................7

LEGAL STANDARD....................................................................................................................8

ARGUMENT ..............................................................................................................................9

     A.     Under New York Law, An Assignment Made For The "Primary Purpose"
Of Enabling The Assignee To Sue On The Assigned Claim Is
Champertous, Illegal, And Void ..................................................................9

     B.     Because The "Primary Purpose" Of The Hutton, Falcon, And Taly
Assignments Was To Enable Plaintiff To Sue On The Assigned Claims,
Plaintiff's Remaining Cause Of Action Fails As A Matter Of Law .....................12

CONCLUSION...........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Allstate Ins. Co. v. Vitality Physicians Grp. Practice P.C.*,
 537 F. Supp. 3d 533 (S.D.N.Y. 2021)................................................................8, 9

*Am. Optical Co. v. Curtiss*,
 56 F.R.D. 26 (S.D.N.Y. 1971) ........................................................................12

*Aretakis v. Caesars Ent.*,
 2018 WL 1069450 (S.D.N.Y. Feb. 23, 2018)............................................ *passim*

*Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*,
 94 N.Y.2d 726, 731 N.E.2d 581 (N.Y. 2000) ............................................2, 10

*BSC Assocs., LLC v. Leidos, Inc.*,
 91 F. Supp. 3d 319 (N.D.N.Y. 2015)................................................12, 15, 16

*Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*,
 724 F. Supp. 2d 407 (S.D.N.Y. 2010).................................................................8

*Cody v. Charter Commc'ns, LLC*,
 2020 WL 3639935 (S.D.N.Y. July 6, 2020) .......................................................4

*Fairchild Hiller Corp. v. McDonnell Douglas Corp.*,
 28 N.Y.2d 325, 270 N.E.2d 691 (N.Y. 1971)..................................................10

*Frank H. Zindle, Inc. v. Friedman's Express, Inc.*,
 258 A.D. 636, 17 N.Y.S.2d 594 (N.Y. App. Div. 1940) ..................................12

*Justinian Cap. SPC v. WestLB AG*,
 28 N.Y.3d 160, 65 N.E.3d 1253 (N.Y. 2016)........................................... *passim*

*Koro Co., Inc. v. Bristol-Myers Co.*,
 568 F. Supp. 280 (D.D.C. 1983).......................................................................10

*L-7 Designs, Inc. v. Old Navy, LLC*,
 647 F.3d 419 (2d Cir. 2011)............................................................................4, 8

*Leasing Control Inc. v. 500 Fifth Ave., Inc.*,
 193 A.D.3d 592, 142 N.Y.S.3d 807 (N.Y. App. Div. 2021) ........................11, 14

**Page(s)**

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys,*
    850 F.2d 904 (2d Cir. 1988) ................................................................8

*Patel v. Contemp. Classics of Beverly Hills,*
    259 F.3d 123 (2d Cir. 2001) ................................................................9

*PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC,*
    991 F.3d 1187 (11th Cir. 2021) ...........................................................15

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n,*
    612 F. Supp. 3d 263 (S.D.N.Y. 2020) .................................... *passim*

*Sharbat v. Iovance Biotherapeutics, Inc.,*
    2023 WL 34377 (S.D.N.Y. Jan. 4, 2023) .........................................14

*Transbel Inv. Co. v. Roth,*
    36 F. Supp. 396 (S.D.N.Y. 1940) ......................................................10

*VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.,*
    594 F. Supp. 2d 334 (S.D.N.Y. 2008) ................................................9

**Statutes and Rules**

Bankruptcy Rule 9019 .............................................................................8

Fed. R. Civ. P. 12(c) ..........................................................................8, 9

Fed. R. Civ. P. 12(g)(2) ..........................................................................8

Fed. R. Civ. P. 12(h)(2)(B) .....................................................................8

N.Y. JUD. LAW § 489(1) .......................................................................10

**Other Authorities**

5C Charles Alan Wright & Arthur Miller,
    *Fed. Prac. & Proc. Civ.* § 1367 (3d ed.) (updated Apr. 2023) ...........9

Defendant Citibank, N.A. ("Citibank") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings dismissing with prejudice the Complaint's Second Cause of Action.  (Compl. ¶¶ 257–66, ECF No. 81.)

## PRELIMINARY STATEMENT

Plaintiff's sole remaining cause of action pursues claims that he acquired as a purported assignee for the very purpose of bringing this lawsuit, warranting dismissal under New York law.

Plaintiff Kenneth P. Silverman is the chapter 7 trustee of the jointly administered estates of National Events Holding, LLC and its affiliated debtors (the "Debtors").  His Complaint asserts two causes of action against Citibank, based on the same underlying factual allegations, for allegedly aiding and abetting a "Ponzi scheme" orchestrated by the Debtors' former President and CEO, Jason Nissen.  Plaintiff's first cause of action, asserted on behalf of the Debtors' estates, was dismissed by Judge Woods as barred by the *in pari delicto* doctrine because Nissen's conduct was imputable to the Debtors, and Plaintiff stands in the Debtors' shoes.  As the Court explained, New York public policy, as embodied in the *in pari delicto* doctrine, precludes a party that has been injured due to its own intentional misconduct from recovering for those injuries from a third party.  Here, because Nissen's wrongdoing — for which he pleaded guilty to wire fraud and was sentenced to 27 months in prison — was indisputably chargeable to the Debtors, Plaintiff could not sue Citibank on the Debtors' behalf for alleged injuries the Debtors sustained due to Nissen's actions.  (Mem. Op. & Order at 13–17, ECF No. 88.)[1]

Plaintiff's second cause of action is brought as the purported assignee of claims belonging to three alleged victims of Nissen's scheme: Hutton Ventures LLC ("Hutton"); Falcon

---

[1] Plaintiff was granted leave to re-plead his claim asserted on behalf of the Debtors' estates (*id.* at 24–25) to the extent he believed he had a valid basis to do so.  Plaintiff declined to do so, and indeed any such effort would have been futile under controlling law.

Strategic Partners IV, LP and FMP Agency Services, LLC (together, "Falcon"); and Taly USA

Holdings Inc. and SLL USA Holdings, LLC (together, "Taly").  (Compl. ¶¶ 9, 12–14, ECF

No. 81.)  Hutton, Falcon, and Taly each filed proofs of claims against the Debtors' estates

asserting that they had been harmed *by Nissen*.  Plaintiff has never disputed that Hutton, Falcon,

and Taly were harmed *by Nissen* and has not challenged their claims against the Debtors' estates.

Instead, knowing that he would be unable to lawfully pursue Citibank on behalf of the Debtors'

estates he was appointed to serve, Plaintiff solicited assignments from Hutton, Falcon, and Taly

of their purported claims against Citibank — claims that none of them had ever themselves

asserted — so that he and his counsel might still have *some* claim to attempt against Citibank.

As detailed below — and as Plaintiff himself explained to the Bankruptcy Court — a

primary reason why Plaintiff sought those assignments was to circumvent the *in pari delicto*

doctrine and enable his pursuit of this lawsuit notwithstanding the Debtors' (and Plaintiff's)

responsibility for Nissen's wrongdoing.  Specifically, recognizing that a claim by the Debtors'

estates against Citibank would properly be barred, Plaintiff conceived a fallback strategy of

trading in the purported claims of others.  But New York's champerty statute prohibits the

purchase or assignment of a cause of action where the "primary purpose" for the transaction is to

enable the purchaser or assignee to bring suit on the assigned claim.  *Justinian Cap. SPC v.

WestLB AG*, 28 N.Y.3d 160, 166–67, 65 N.E.3d 1253, 1256 (N.Y. 2016).  Such "trading in

litigation" is outlawed because New York public policy strongly disapproves of the speculation

and harassment that flow from the commercialization of legal claims.  *Justinian Cap.*, 28 N.Y.3d

at 163, 65 N.E.3d at 1254 (quoting *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 94

N.Y.2d 726, 729, 731 N.E.2d 581, 582 (N.Y. 2000)).

Here, the at-issue assignments themselves and Plaintiff's admissions to the Bankruptcy Court concerning those assignments, which the Court can consider in deciding this motion, establish on their face that their "primary purpose" was to enable Plaintiff to sue on the assigned claims as part of his prosecution of this action.  For example, Plaintiff explained to the Bankruptcy Court that: (i) he wanted to hire Special Litigation Counsel (the counsel representing Plaintiff in this action) specifically "to pursue" creditors' assigned claims against Citibank, (ii) Hutton's assignment was "for purposes of" pursuing claims against Citibank and without the agreement providing for Hutton's assignment Plaintiff's pursuit of litigation against Citibank would not be "viable," (iii) the Falcon and Taly assignments would enable Plaintiff to sue on their claims and thus prosecute Citibank "in an economical and efficient manner," and (iv) he sought the Hutton, Falcon, and Taly assignments because they would ostensibly allow Plaintiff to sue and recover from Citibank even if the Debtors' claims against Citibank were barred by *in pari delicto*.  Plaintiff filed this action *the very day* the Falcon and Taly assignments were made, making their purpose all the more transparent.

Plaintiff's cynical attempt to evade the Debtors' responsibility for Nissen's wrongdoing by suing as the purported assignee of Nissen's (and the Debtors') alleged victims violates well-settled New York law and long-standing public policy.  It should not be countenanced.  Because the pleading record makes clear that the assignments from Hutton, Falcon, and Taly of their purported claims against Citibank are champertous on their face, they are illegal and void. Plaintiff thus has no standing to pursue those claims, and his remaining cause of action should be dismissed.

## FACTS[2]

A.    **Plaintiff Retains Special Litigation Counsel For The Express Purpose Of Pursuing Creditors' Assigned Claims In Addition To The Debtors' Claims**

On February 11, 2021, Plaintiff (in his capacity as Trustee of the Debtors' estates) sought approval from the Bankruptcy Court to retain Special Litigation Counsel ("SLC") to "pursue and prosecute potential claims against various financial institutions used by Nissen and the Debtors." (Ex. 1 ¶ 19.)  The Trustee's putative SLC, in turn, advised the Bankruptcy Court that it had been requested, and had agreed, to represent the Trustee "in connection with the pursuit of certain claims of the Trustee and the Debtors' estates," which included the claims of creditors of the Debtors who had assigned (or would assign) their claims to the Trustee for the Trustee "to pursue on [the creditors'] behalf."  (Ex. 2 ¶¶ 2–3 & n.2.)  Citibank was not a party to the bankruptcy proceedings.

The SLC's $150,000 retainer was to be paid using funds otherwise due to Hutton (on account of post-petition financing that Hutton had provided the estates); further, the SLC would be entitled to 40% of any and all recoveries obtained from its pursuit of claims on behalf of creditor-assignors.  (Ex. 1 ¶¶ 19, 22–23; Ex. 2 ¶ 3.)  As the Trustee's counsel explained to the Bankruptcy Court, the Trustee and Hutton were in the process of documenting their agreement

---

[2] On a Rule 12(c) motion, the Court may consider, in addition to the complaint and answer, documents that are incorporated into the complaint by reference, documents that are integral to the complaint, and matters subject to judicial notice.  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).  This includes not only the at-issue assignments, but also Plaintiff's Bankruptcy Court filings related to those assignments.  *See, e.g.*, *Cody v. Charter Commc'ns, LLC*, 2020 WL 3639935, at *2 n.2 (S.D.N.Y. July 6, 2020) ("The Court is permitted to take judicial notice of Plaintiff's filings in the Bankruptcy Action in resolving the Motion for Judgment on the Pleadings."); *Aretakis v. Caesars Ent.*, 2018 WL 1069450, at *1 n.1 & *6 (S.D.N.Y. Feb. 23, 2018) (on motion to dismiss challenging assignment as champertous, considering assignment itself).  "Ex." citations are exhibits to the February 22, 2024, Declaration of John Gueli in support of Citibank's motion for judgment on the pleadings.

providing that Hutton would (i) waive its claim to repayment so that the Trustee could retain the

SLC (Ex. 3 at 7:4–8), and (ii) assign certain of its rights and claims to the Debtors' estates,

"which will all be part of the special litigation matters that will be pursued" by the SLC (*id.* at

8:7–9).  The Bankruptcy Court approved Plaintiff's retention of Special Litigation Counsel on

June 3, 2021.  (Ex. 4.)

### B.    Plaintiff Obtains The Hutton Assignment For The Express Purpose Of Pursuing Hutton's Claims Against Citibank And To Enable His Anticipated Prosecution Of This Lawsuit

On November 10, 2021, Plaintiff and Hutton entered into a Stipulation of Settlement that

was purposefully structured to enable Plaintiff's pursuit of Hutton's purported claims against

Citibank.  The stipulation thus provided for (i) payment of the SLC's $150,000 retainer using

funds otherwise due to Hutton and (ii) Hutton's assignment of its purported claims against

Citibank to Plaintiff.  (Ex. 6 at 3.)  In his motion for approval of the settlement, Plaintiff

explained to the Bankruptcy Court that the parties had engaged in discussions and negotiations

regarding the outstanding loan due to Hutton, as well as "claims and causes of action that Hutton

and the Debtors' estates have or may have against certain banks and other interested parties, that

should be pursued, and the cost inherent with pursuing such claims."  (Ex. 5 ¶ 9.)  More

specifically:

> [A]s a result of the Trustee and Hutton's discussions and negotiations, Hutton has agreed to (i) permit the Trustee to use funds that would have otherwise been available for distribution to Hutton … to pay a $150,000 retainer to the Trustee's recently Court-approved special litigation counsel to pursue litigation, causes of action, and settlement of claims against various banks and other parties (the "<u>Bank Litigation</u>"), (ii) contribute, transfer and assign to the Debtors' estates for purposes of the Bank Litigation all direct claims and causes of action that Hutton has or may have against these banks …, and (iii) waive any claim against the Debtors for repayment of the $150,000 advanced to the [SLC]….

(*Id.* ¶ 10.)

The Hutton settlement accordingly provided that Hutton was assigning to Plaintiff any claims it might have against the banks "identified by the Trustee as a target or potential target of litigation in the Bank Litigation" (Ex. 6 ¶ 3) and, further, expressly recited that Hutton was doing so "for purposes of the Bank Litigation" (*id.* at 3).  In return, Hutton would receive, among other things, a portion of the gross proceeds "of any judgment or settlement of any and all claims or causes of action threatened or asserted in the Bank Litigation."  (Ex. 5 ¶ 11; Ex. 6 at 3–4.)  As the Trustee's counsel informed the Bankruptcy Court at the hearing to approve the settlement:

> The quid pro quo for Hutton's authorization to use the [$150,000] to retain [the SLC] is that it will recover a seven-percent distribution of gross proceeds on account of any judgment or settlement of any and all cases or causes of action threatened or asserted against the banks in this case, essentially all matters that are being handled by [the SLC].

(Ex. 7 at 140:25–141:5.)  And Hutton's counsel confirmed that Hutton was waiving repayment on its loan so that the Trustee could engage the SLC "to investigate and then pursue potential claims against banks" (*id.* at 143:23–144:7), including Hutton's claims that it was assigning to the Debtors' estates (*id.* at 145:24–146:4).

In response to the Bankruptcy Court's request for additional information regarding Plaintiff's rationale for entering into the Hutton settlement and agreeing to the 7% figure (*id.* at 147:24–148:2), Plaintiff gave two key reasons for doing so.  *First*, as no law firm would take on the Bank Litigation on a purely contingent basis, and because "the speculative nature of the Bank Litigation" meant it was unclear whether the Debtors' estates should themselves fund the required retainer (Ex. 8 ¶¶ 4–6), Hutton's agreement to forgive $150,000 otherwise due to it was necessary to enable Plaintiff to retain the SLC (*id.* ¶¶ 7, 11).  *Second*, Hutton's assignment "provide[d] the Estates with a path to recovery that avoid[ed] potential … *in pari delicto* defenses" (*id.* ¶ 8); in other words, even if the *Debtors'* claims against Citibank were barred, the assignment offered Plaintiff an opportunity to recover on *Hutton's* claims.  Plaintiff thus

explained that Hutton's debt forgiveness and assignment provided the estates with "significant consideration" (*id.* ¶ 8) that was necessary "to make the Bank Litigation possible" and, without which, "the Bank Litigation would not be viable." (*Id.* ¶ 13.) In light of this, Plaintiff was of the view that a 7% distribution would provide Hutton with a reasonable return on its "'investment'" in the Trustee's pursuit of the Bank Litigation. (*Id.* ¶ 12.) The Bankruptcy Court approved the Hutton settlement on January 3, 2022. (Ex. 9.)

### C.    Plaintiff Obtains The Falcon And Taly Assignments For The Express Purpose Of Pursuing Their Claims As Part Of The Expected Prosecution Of This Lawsuit And Commences This Action The Very Same Day

On June 1, 2022, Plaintiff entered into a Stipulation of Settlement with Falcon (Ex. 11) and a Stipulation of Assignment with Taly (Ex. 13), both of which (like the Hutton settlement) included assignments from Falcon and Taly of their purported claims against Citibank and were purposefully structured to enable Plaintiff to sue on those claims. Plaintiff commenced this lawsuit that very day.

Plaintiff's application seeking Bankruptcy Court approval of the Falcon and Taly agreements explained that they were the result of substantial negotiations regarding, among other things, "the various claims and causes of action that [Falcon and Taly] and the Debtors' estates have or may have against certain banks…." (Ex. 10 ¶ 12; Ex. 12 ¶ 10.) According to Plaintiff:

> As a result of these discussions, and for the sake of efficiency and administrative convenience, [Falcon and Taly] agreed to contribute, transfer and assign to the Debtors' estates all direct claims and causes of action that [Falcon or Taly] has or may have against various banks … (collectively, the "Bank Litigation")….

(Ex. 10 ¶ 13; Ex. 12 ¶ 11; *see also* Compl. ¶ 258, ECF No. 81.) In exchange, Falcon and Taly would receive, among other things, a portion of the net proceeds (after payment of Hutton's 7% distribution and the SLC's 40% contingency fee) from any recoveries in connection with the Bank Litigation. (Ex. 11 ¶ 4; Ex. 13 ¶ 2.)

Plaintiff told the Bankruptcy Court that among the reasons he decided to enter into the agreements with Falcon and Taly was that they: (i) "eliminate[d] the issue of standing that a bank may raise as a defense to avoid liability in the Bank Litigation" — referring to *in pari delicto* and related issues — because the agreements made clear that Plaintiff could "bring [Falcon's and Taly's] claims in connection with the Bank Litigation" (Ex. 10 ¶ 22; Ex. 12 ¶ 20); and (ii) enabled Plaintiff's "prosecution of the Bank Litigation in an economical and efficient manner" (Ex. 10 ¶ 23; Ex. 12 ¶ 21).  The Bankruptcy Court approved the Falcon and Taly agreements on October 10, 2022.  (Ex. 14; Ex. 15.)[3]

## LEGAL STANDARD

A party may move for judgment on the pleadings at any time after the pleadings are closed, provided the motion will not delay trial.  *Allstate Ins. Co. v. Vitality Physicians Grp. Practice P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021); *Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 407, 414 (S.D.N.Y. 2010).  A Rule 12(c) motion is analyzed using the same standard applicable to 12(b)(6) motions to dismiss for failure to state a claim.  *L-7 Designs*, 647 F.3d at 429; *Citibank*, 724 F. Supp. 2d at 414; *see also, e.g.*, Fed. R. Civ. P. 12(g)(2) & 12(h)(2)(B) (expressly authorizing Rule 12(c) motion challenging whether the plaintiff has stated a claim upon which relief can be granted, even following a motion to dismiss pursuant to Rule 12(b)(6)); *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys*, 850 F.2d 904, 909

---

[3] As noted, Citibank was not a party to the bankruptcy proceedings.  Moreover, the Bankruptcy Court was not required to, and did not, evaluate whether the Hutton, Falcon, or Taly assignments were champertous.  Plaintiff's motions for approval of the Hutton, Falcon, and Taly agreements were made pursuant to Bankruptcy Rule 9019, which merely asks whether the proposed settlement is reasonable and in the best interests of the estate.  (*See, e.g.*, Ex. 5 ¶¶ 12–15; Ex. 9; Ex. 10 ¶¶ 18–21; Ex. 15; Ex. 12 ¶¶ 16–19; Ex. 14.)  In its motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6), briefing on which was completed before the Bankruptcy Court approved the Falcon and Taly assignments, Citibank expressly reserved all its rights with respect to the purported assignments.  (Def.'s Mem. at 6 n.5, ECF No. 82.)

n.2 (2d Cir. 1988) (Rule 12(h)(2) allows "a defense of failure to state a claim [to] be raised in a Rule 12(c) motion for judgment on the pleadings"); *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("[T]he defense of failure to state a claim is not waivable.").

A Rule 12(c) motion for judgment on the pleadings "is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice." 5C Charles Alan Wright & Arthur Miller, *Fed. Prac. & Proc. Civ.* § 1367 (3d ed.) (updated Apr. 2023). Thus, judgment on the pleadings is appropriate when the record demonstrates that the relevant facts cannot be disputed and the movant is entitled to judgment as a matter of law. *Allstate*, 537 F. Supp. 3d at 545–46; *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339–40 (S.D.N.Y. 2008).

## ARGUMENT

### A.    Under New York Law, An Assignment Made For The "Primary Purpose" Of Enabling The Assignee To Sue On The Assigned Claim Is Champertous, Illegal, And Void

Each of the Hutton, Falcon, and Taly assignments by its terms "shall be construed under and governed by" New York law. (Ex. 6 ¶ 10; Ex. 11 ¶ 9; Ex. 13 ¶ 7.) "[A]n assignment governed by New York law must comply with New York's statutory prohibition against champerty," *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 280 (S.D.N.Y. 2020), *i.e.*, the acquisition of a claim "for the purpose of bringing suit," *Aretakis*, 2018 WL 1069450, at *9.

"Champerty is a venerable doctrine developed hundreds of years ago to prevent or curtail the commercialization of or trading in litigation." *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 94 N.Y.2d 726, 729, 731 N.E.2d 581, 582 (N.Y. 2000). The doctrine reflects "a disapproval of lawsuits brought 'for part of the profits' of the action." *Bluebird Partners*, 94 N.Y.2d at 734, 731 N.E.2d at 585 (citation omitted). New York's champerty prohibition is "intended to aid in the enforcement of time-honored public policies," *Transbel Inv. Co. v. Roth*, 36 F. Supp. 396, 398 (S.D.N.Y. 1940), and declares champertous agreements illegal in order "[t]o prevent the resulting strife, discord and harassment which could result from permitting [the] purchase [of] claims for the purpose of bringing actions thereon," *Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 28 N.Y.2d 325, 329, 270 N.E.2d 691, 693 (N.Y. 1971); *see also, e.g.*, *Koro Co., Inc. v. Bristol-Myers Co.*, 568 F. Supp. 280, 286–88 (D.D.C. 1983) (applying New York law: "New York has a clearly enunciated public policy against champerty," the purpose of which is "to prevent trafficking and speculation in lawsuits").

Accordingly, in order "to battle the ills associated with the commodification of litigation," *Aretakis*, 2018 WL 1069450, at *9, it is illegal under New York law to take an assignment of a claim if the "primary purpose" for the assignment is to enable the assignee to bring suit on the claim, *Justinian Cap. SPC v. WestLB AG*, 28 N.Y.3d 160, 166, 65 N.E.3d 1253, 1256 (N.Y. 2016). New York's champerty statute, Judiciary Law § 489, provides in pertinent part that:

> No person … shall … take an assignment of … any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon….

N.Y. JUD. LAW § 489(1).[4]

---

[4] In its entirety, the statute provides:

The "primary purpose" test has been the law in New York for more than a century; it invalidates assignments whose "impetus" is a "desire to sue" on the assigned claim. *Justinian Cap.*, 28 N.Y.3d at 167, 65 N.E.3d at 1257; *see, e.g.*, *Leasing Control Inc. v. 500 Fifth Ave., Inc.*, 193 A.D.3d 592, 592–93, 142 N.Y.S.3d 807, 808 (N.Y. App. Div. 2021) (assignment was champertous when its "primary purpose … was for plaintiff to pursue litigation against defendants on the claims in exchange for a portion of the proceeds from the litigation"); *Phoenix Light*, 612 F. Supp. 3d at 283 (assignments were champertous because the express purpose of the assignments was to permit the assignee to bring claims identified in the assignments themselves); *Aretakis*, 2018 WL 1069450, at *10 (assignment was champertous because "the purpose of the assignment was to allow Plaintiff to prepare and file a lawsuit seeking to obtain the funds to

---

No person or co-partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon; provided however, that bills receivable, notes receivable, bills of exchange, judgments or other things in action may be solicited, bought, or assignment thereof taken, from any executor, administrator, assignee for the benefit of creditors, trustee or receiver in bankruptcy, or any other person or persons in charge of the administration, settlement or compromise of any estate, through court actions, proceedings or otherwise. Nothing herein contained shall affect any assignment heretofore or hereafter taken by any moneyed corporation authorized to do business in the state of New York or its nominee pursuant to a subrogation agreement or a salvage operation, or by any corporation organized for religious, benevolent or charitable purposes. Any corporation or association violating the provisions of this section shall be liable to a fine of not more than five thousand dollars; any person or co-partnership, violating the provisions of this section, and any officer, trustee, director, agent or employee of any person, co-partnership, corporation or association violating this section who, directly or indirectly, engages or assists in such violation, is guilty of a misdemeanor.

N.Y. JUD. LAW § 489(1).

which Plaintiff claims [the assignor] is entitled"); *Am. Optical Co. v. Curtiss*, 56 F.R.D. 26, 31 (S.D.N.Y. 1971) (because assignment "was merely a means to enable [assignee] to sue on behalf of the [assignor]," it "contravenes [Section 489] and the public policy of New York").

A champertous assignment is void and cannot be sued upon. *Phoenix Light*, 612 F. Supp. 3d at 286; *Aretakis*, 2018 WL 1069450, at *10; *see, e.g.*, *Frank H. Zindle, Inc. v. Friedman's Express, Inc.*, 258 A.D. 636, 637, 17 N.Y.S.2d 594, 595 (N.Y. App. Div. 1940) (affirming dismissal of complaint "because of the illegality of the assignment upon which plaintiff's causes of action were based").

### B.    Because The "Primary Purpose" Of The Hutton, Falcon, And Taly Assignments Was To Enable Plaintiff To Sue On The Assigned Claims, Plaintiff's Remaining Cause Of Action Fails As A Matter Of Law

When the primary purpose of an assignment "is clear from the face of the document" itself, the validity *vel non* of the assignment can (and should) be determined as a matter of law. *Aretakis*, 2018 WL 1069450, at *10 (granting 12(b)(6) motion to dismiss); *see, e.g.*, *BSC Assocs., LLC v. Leidos, Inc.*, 91 F. Supp. 3d 319, 326 (N.D.N.Y. 2015) ("courts have found the issue of champerty amenable to judgment as a matter of law where the facts concerning the assignment and its purpose are undisputed," granting 12(b)(6) motion to dismiss).  That is the case here.

There can be no credible dispute that the primary purpose for the Hutton, Falcon, and Taly assignments was to enable Plaintiff to sue on the assignors' claims as part of his pursuit of the Bank Litigation, *i.e.*, this action.  As detailed above:

- One of the Special Litigation Counsel's express functions was "to pursue" as part of the Bank Litigation creditors' assigned claims.  (Ex. 2 ¶ 3 & n.2; *see* Ex. 3 at 8:7–9.)

- The Hutton Settlement Agreement expressly recites that Hutton's assignment was made "for purposes of the Bank Litigation." (Ex. 6 at 3; *see* Ex. 7 at 143:23–144:7, 145:24–146:4.)

- Plaintiff told the Bankruptcy Court that the agreement assigning Hutton's claims was necessary "to make the Bank Litigation possible" and, absent approval, "the Bank Litigation would not be viable." (Ex. 8 ¶ 13; *see* Ex. 7 at 140:25–141:5.)

- Plaintiff told the Bankruptcy Court that he entered the Falcon and Taly agreements so he could "bring [Falcon's and Taly's] claims in connection with the Bank Litigation" (Ex. 10 ¶ 22; Ex. 12 ¶ 20) and thus enable his "prosecution of the Bank Litigation in an economical and efficient manner" (Ex. 10 ¶ 23; Ex. 12 ¶ 21).

- Any recovery on the assignors' claims is to be shared with Plaintiff (and with the SLC through its contingency fee arrangement). (Ex. 1 ¶¶ 19, 22–23; Ex. 2 ¶ 3; Ex. 5 ¶ 11; Ex. 6 at 3–4; Ex. 11 ¶ 4; Ex. 13 ¶ 2.)

- Indeed, Plaintiff told the Bankruptcy Court that a primary rationale for the assignments was that, even if the Debtors' claims against Citibank were barred by *in pari delicto*, Plaintiff could ostensibly still pursue Citibank by suing (and sharing in any recovery) on the assignors' claims. (Ex. 8 ¶ 8; Ex. 10 ¶ 22; Ex. 12 ¶ 20.)

- In his Complaint, the only purpose Plaintiff alleges for the Hutton, Falcon, and Taly assignments is that they were made "[f]or the sake of efficiency and administrative convenience" (Compl. ¶ 258, ECF No. 81); in other

13

words, to allow Plaintiff's pursuit of the assigned claims as part of his

prosecution of this action.

● Indeed, Plaintiff commenced this action the very day the Falcon and Taly

assignments were made. (Ex. 11; Ex. 13.)

This indisputable evidence — all of which is from Plaintiff — demonstrates as a matter

of law that the Hutton, Falcon, and Taly assignments are champertous. Indeed, those

assignments bear all the indicia that courts have identified as evidencing champerty:

● Plaintiff told the Bankruptcy Court, and the assignments themselves

provide, that their purpose was to allow Plaintiff's pursuit of the assigned

claims as part of the Bank Litigation. *See, e.g.*, *Phoenix Light*, 612 F.

Supp. 3d at 283; *Aretakis*, 2018 WL 1069450, at \*10; *see also Sharbat v.*

*Iovance Biotherapeutics, Inc.*, 2023 WL 34377, at \*15–16 (S.D.N.Y.

Jan. 4, 2023) (assignment was champertous because its purpose was to

give assignee standing to litigate assignors' claims against defendant).

● Plaintiff filed this lawsuit immediately upon the making of the Falcon and

Taly assignments. *See, e.g.*, *Justinian Cap.*, 28 N.Y.3d at 167, 65 N.E.3d

at 1257 (filing suit "almost immediately" after acquiring notes

demonstrated that notes were acquired in order to file lawsuit); *Leasing*

*Control*, 193 A.D.3d at 592, 142 N.Y.S.3d at 808 (commencing litigation

two days after assignment evidenced that assignment's primary purpose

was to pursue litigation).

● Nothing in the Bankruptcy Court record or alleged in the Complaint

suggests the assignments were anything other than "naked" assignments of

14

litigation claims; *i.e.*, there is no evidence that Plaintiff took the assignments as incidental to any debt instruments or other obligations or assets of the assignors.  *See, e.g.*, *Phoenix Light*, 612 F. Supp. 3d at 282; *Aretakis*, 2018 WL 1069450, at *9; *BSC Assocs.*, 91 F. Supp. 3d at 328.

●    The Complaint's allegation that the assignments were for reasons of efficiency and convenience — and for no other reason — is an acknowledgement that they were intended to allow Plaintiff's pursuit of the assignors' claims as part of this action.  *See, e.g.*, *Phoenix Light*, 612 F. Supp. 3d at 282 n.21; *Aretakis*, 2018 WL 1069450, at *10; *see also PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*, 991 F.3d 1187, 1194 (11th Cir. 2021) (applying New York law: affirming champerty dismissal based on evidence that plaintiff's primary purpose was to "facilitate the prosecution and resolution" of the assigned claims).

The record is clearcut, even at the pleading stage: the Hutton, Falcon, and Taly assignments were made for the "primary purpose" of enabling Plaintiff to sue on the assignors' claims as part of this action.  Indeed, "[t]he facts and procedural history of this case demonstrate that the genesis of the assignment agreements was the desire to litigate this case."  *Phoenix Light*, 612 F. Supp. 3d at 281.

Plaintiff's trading in the assignors' claims is doubly dubious as a matter of New York policy because he openly contravened champerty law to skirt the *in pari delicto* doctrine, which he knew would properly foreclose the estates' own claims against Citibank.  As the Court explained in dismissing Plaintiff's cause of action asserted on behalf of the estates, undergirding the *in pari delicto* doctrine is the notion that a bankruptcy trustee "acts as the debtor's

representative" and thus the "debtor's misconduct is imputed to the trustee." (Mem. Op. &
Order at 15, ECF No. 88, citations and quotations omitted.)  Because a trustee "stands in the
shoes of the corporation," the "doctrine of *in pari delicto* bars him from recovering for a wrong
that he himself essentially took part in." (*Id.*, citations and quotations omitted.)  "Like a natural
person, a corporation must bear the consequences when it commits fraud." (*Id.*, citations and
quotations omitted.)  This limitation on a trustee's powers serves important public policy
purposes, including that "denying judicial relief to an admitted wrongdoer deters illegality." (*Id.*
at 14, citations and quotations omitted.)

Here, Plaintiff devised and implemented a "business plan" to secure the assignments "in
order to sue on them," so that he could evade the legal consequences of the Debtors' fraud and
the limitations placed on bankruptcy trustees by the *in pari delicto* doctrine.  *See Justinian Cap.*,
28 N.Y.3d at 167, 65 N.E.3d at 1257.  But the "naked transfer" of Hutton's, Falcon's, and Taly's
claims to Plaintiff in an attempt to "litigat[e] by proxy" violates Section 489's prohibition on
"speculating in lawsuits." *BSC Assocs.*, 91 F. Supp. 3d at 326, 329 (citations and quotations
omitted).  Where, as here, "the lawsuit [is] not merely an incidental or secondary purpose of the
assignment, but its very essence," the assignment is champertous.  *Justinian Cap.*, 28 N.Y.3d at
168, 65 N.E.3d at 1257.

## CONCLUSION

Because Plaintiff's sole remaining claim is premised on assignments that are void under
New York law, the Complaint should be dismissed with prejudice.

Dated: New York, New York          SHEARMAN & STERLING LLP
       February 22, 2024

                             By:    /s/ John Gueli
                                  Adam S. Hakki
                                  John Gueli

Katherine J. Stoller
Randall Martin

599 Lexington Avenue
New York, NY  10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
adam.hakki@shearman.com
jgueli@shearman.com
katherine.stoller@shearman.com
randall.martin@shearman.com

*Attorneys for Defendant Citibank, N.A.*