**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KENNETH P. SILVERMAN, ESQ., the Chapter 7
Trustee of the Jointly Administered Estates of
National Events Holdings, LLC and its Affiliated
Debtors,

                     Plaintiff,

       v.

CITIBANK, N.A.,

                     Defendant.

Case No. 22-cv-05211 (DEH)

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CITIBANK, N.A.'S MOTION FOR JUDGMENT ON THE PLEADINGS

**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700

*Attorneys for Plaintiff Kenneth P.*
*Silverman, Esq., Chapter 7 Trustee*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

    A.    Nissen's Arrest and the Taly Litigation ................................................ 3

    B.    The Filing of the Bankruptcy Cases ...................................................... 3

    C.    The Assignors' Claims in the Bankruptcy Cases .................................. 4

    D.    Conversion of the Corporate Debtors' Bankruptcy Cases to Chapter 7 ................ 5

    E.    The Retention of Kasowitz and Citibank's Appearance in the Bankruptcy Cases ............................................................................... 5

    F.    The Hutton Settlement ........................................................................... 6

    G.    Citibank's Second Appearance in the Bankruptcy Cases, Through New Counsel ........................................................................................ 8

    H.    The Falcon Settlement, the Taly Settlement and the Complaint ........... 9

    I.    Citibank's Motion to Dismiss the Action .............................................. 12

ARGUMENT .................................................................................................................. 13

    A.    The Motion Collaterally Attacks the Bankruptcy Court's 9019 Orders .............. 14

        1.    Citibank Failed to Object to the Settlements or Assignments ................. 14

        2.    The Bankruptcy Court Approved the Settlements Under Rule 9019 ..................................................................................... 16

    B.    The Motion Fails on the Merits ............................................................. 17

        1.    There is No Champerty Because the Trustee is Not a Stranger to the Claims ....................................................................... 18

        2.    The Assignments' Sole Purpose was Not to Profit Off Litigation ........... 20

        3.    The Assignments were Made to Settle Claims, Not Avoid *In Pari Delicto* ..................................................................... 23

    C.    The Motion is Premature Because Champerty is Contested ................. 24

CONCLUSION ............................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Optical Co. v. Curtiss*,
　　56 F.R.D. 26 (S.D.N.Y. 1971) ................................................................22

*Aretakis v. Caesars Entm't*,
　　2018 WL 1069450 (S.D.N.Y. 2018) ........................................................22

*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009) ..............................................................................13

*Bellarno Int'l, Ltd. v. Irving Tr. Co.*,
　　560 N.Y.S.2d 287 (1st Dep't 1990) .........................................................19

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
　　94 N.Y.2d 726 (2000) .......................................................................18, 21

*BSC Assocs. v. Leidos, Inc.*,
　　91 F. Supp. 3d 319 (N.D.N.Y. 2015) .......................................................22

*Campos v. Aegis Realty Mgmt. Corp.*,
　　2020 WL 433356 (S.D.N.Y. Jan. 28, 2020) .............................................14

*In re Capmark Fin. Grp., Inc.*,
　　438 B.R. 471 (Bankr. D. Del. 2010) .................................................... 16-17

*Coccaro v. Barnard College*,
　　2024 WL 196524 (S.D.N.Y. Jan. 18, 2024) .............................................13

*Corbett v. MacDonald Moving Servs.*,
　　124 F.3d 82 (2d Cir. 1997) ....................................................................14

*In re Dalen*,
　　259 B.R. 586 (Bankr. W.D. Mich. 2001) .................................................17

*In re Dewey & Leboeuf LLP*,
　　478 B.R. 627 (Bankr. S.D.N.Y. 2012) .....................................................16

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
　　600 F.3d 190 (2d Cir. 2010) ..................................................................14

*Espadarte Partners, LLC v Riverside Gulf Coast Banking Co.*,
　　2020 WL 1955672 (Sup. Ct. N.Y. Cnty. Apr. 23, 2020) .....................17, 21

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,
    679 F. Supp. 2d 312 (E.D.N.Y. 2010) ....................................................................19

*Frank H. Zindle, Inc. v. Friedman's Express, Inc.*,
    258 A.D. 636 (1st Dep't 1940) ..............................................................................22

*IKB Int'l S.A. v. Morgan Stanley*,
    2023 WL 2307489 (Sup. Ct. N.Y. Cnty. Mar. 1, 2023) .............................18, 21, 25

*In re IMAX Sec. Litig.*,
    2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011) ........................................................19

*Jamaica Public Serv. Co., Ltd.*
    *v. La Interamericana Compania De Seguros Generales SA*,
    262 A.D.2d 73 (1st Dep't 1999) ............................................................................19

*Justinian Capital SPC v. WestLB AG, N.Y. Branch*,
    28 N.Y.3d 160 (2016) ......................................................................................21, 22

*Leasing Control v. 500 Fifth Ave.*,
    193 A.D.3d 592 (1st Dep't 2021) ..........................................................................22

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F. 4th 293 (2d Cir. 2021) ............................................................................13, 24

*Lynch v. City of N.Y.*,
    952 F.3d 67 (2d Cir. 2020) ....................................................................................13

*Motorola, Inc. v. Official Comm. of Unsecured Creditors*
    *(In re Iridium Operating LLC)*,
    478 F.3d 452 (2d Cir. 2007) ..................................................................................16

*Phoenix Light SF Ltd. v. U.S. Bank N.A.*,
    612 F. Supp. 3d 263 (S.D.N.Y. 2020) ......................................................17, 18, 22

*In re Promise Healthcare Grp., LLC*,
    2021 WL 4528461 (Bankr. D. Del. Oct. 4, 2021) .............................................15-16

*In re Reagor-Dykes Motors, LP*,
    613 B.R. 878 (Bankr. N.D. Tex. 2020) ..................................................................14

*Schatzman & Schatzman, P.A. v. Greason (In re Greason)*,
    2009 WL 701921 (Bankr. W.D.N.Y. Mar. 10, 2009) .............................................20

*Semi-Tech Litig., L.L.C. v. Bankers Trust Co.*,
    272 F. Supp. 2d 319 (S.D.N.Y. 2003) ..........................................................14-15, 24-25

*Tr. for Certificate Holders of Merrill Lynch Mtge. Invs., Inc.*
    *v. Love Funding Corp.*,
    13 N.Y.3d 190 (2009) ........................................................................... 17-18, 18, 19

*Tr. for the Certificate Holders of the Merrill Lynch Mtge. Invs., Inc.*
    *v. Love Funding Corp.*,
    591 F.3d 116 (2d Cir. 2010).............................................................................17, 18

*Yagman v. Kittay (In re Yagman)*,
    2015 WL 13203927 (S.D.N.Y. Dec. 4, 2015) ........................................................14

**Statutes**

N.Y. Jud. Ct. Acts Law § 489(1) .........................................................................17

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller,
    *Federal Practice & Procedure* § 1369 (3d ed. 2021) ...........................................13

Fed. R. Bankr. P. 9019(a) ...............................................................................16

Plaintiff Kenneth P. Silverman, Esq., the chapter 7 trustee ("Plaintiff" or the "Trustee") of the bankruptcy estates (the "Estates") of National Events Holdings, LLC and its affiliated debtors (the "Company"),[1] respectfully submits this memorandum of law in opposition (the "Opposition") to defendant Citibank, N.A.'s ("Citibank") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") [Dkt. No. 103] (the "Motion").[2]

## PRELIMINARY STATEMENT[3]

No word better describes the Motion than ***frivolous***. Having lost its initial motion to dismiss this Action, Citibank now seeks a second bite at the apple by invoking the ancient doctrine of champerty, a relic of French feudal times, to try and belatedly void Assignments to which it could have objected *years ago*. The Assignments were a component of complex Settlements approved by the Bankruptcy Court under Rule 9019, *after* Citibank appeared in the Bankruptcy Cases and failed to object. Citibank does not even correctly recite New York champerty law, let alone apply it to the Assignments.

*First*, the Motion constitutes a stunning collateral attack on at least three final orders of the Bankruptcy Court – the Hutton 9019 Order, the Falcon 9019 Order and the Taly 9019 Order. The 9019 Orders – which approved Settlements of multiple disputes between the Trustee and the largest Creditors of the Debtors' Estates – were entered in January and October 2022, *after* all parties to the Bankruptcy Cases – *including Citibank* – received notice and several weeks to object.

---

[1]   The Company's chapter 7 bankruptcy cases are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and are jointly administered as Case No. 17-11556, by the Honorable James L. Garrity, Jr. The debtors in the Bankruptcy Cases are: National Events Holdings, LLC; National Events Intermediate, LLC; National Event Company II, LLC; National Event Company III, LLC; and World Events Group II, LLC (collectively, the "LLC Debtors"); and National Events of America, Inc. and New World Events Group Inc. (together, the "Corporate Debtors," and collectively with the LLC Debtors, the "Debtors"). "Dkt. No." as used herein refers to this Court's docket in the above-captioned action (the "Action"). "Main Dkt. No." refers to the docket in the Bankruptcy Cases. "CD Dkt. No." refers to the docket in the Corporate Debtors' initial bankruptcy cases, Case No. 17- 11798 (Bankr. S.D.N.Y.), prior to their joint administration with the LLC Debtors.

[2]   Citibank's memorandum of law [Dkt. No. 104] is referred to and cited herein as "Memo," and exhibits to the declaration of John Gueli submitted therewith [Dkt. No. 105] (the "Gueli Declaration") are cited as "Ex."

[3]   Capitalized terms used in this Preliminary Statement have the meanings assigned to them in the Opposition.

Citibank initially appeared in the Bankruptcy Cases in early November 2021, before any of the 9019 Motions were filed. Thus, Citibank received electronic notice of all the Assignments through its former counsel in the Bankruptcy Cases, ZEK, and/or its current counsel, Shearman. The Trustee additionally served Citibank by mail with the Falcon 9019 Motion and Taly 9019 Motion, in early July 2022. Yet, *Citibank failed to object to any of the Assignments*. It is beyond improper for Citibank to now assert that the Assignments violated New York law and the Bankruptcy Court improperly approved of illegal assignments.

*Second*, the Motion fails on the merits. Citibank fails even to quote the correct New York champerty standard, to wit: champerty will be found *only* when suing is the *sole* purpose of an assignment, *to the exclusion of all other purposes – not* when suing is merely a so-called primary purpose, as Citibank falsely asserts. As the Complaint, Memo, and Gueli Declaration make clear, the Trustee did not enter into the Assignments for the "sole" purpose of suing Citibank. The Assignments were merely one component of broader Settlements which resolved a myriad of debtor-creditor issues in the Bankruptcy Cases, including a DIP Loan claim, two large proofs of claim and an objection to the SubCon Motion. Moreover, Citibank cannot reasonably contend that the Trustee, having asserted his own Bank Claims on behalf of the Estates, is a stranger to the Assignments, which is required as a matter of New York law to find champerty. That the Court dismissed the Trustee's Bank Claims and he opted not to re-plead them does not retroactively render him a stranger to the Action. The Trustee has his own Bank Claims (and can appeal their dismissal) and maintains an interest in the subject matter of the Action as the assignee of the Creditors' claims and the Estates' fiduciary, inasmuch as the Assignors are the three largest creditors of the Estates and recovery in the Action flows to the Estates.

*Third*, the Motion must also be denied because the existence of champerty is a highly

factual question and a Rule 12(c) motion cannot be granted where it is not clear from the pleadings that judgment is appropriate.  As noted above, the record is clear here that the Assignments were *not* champertous under New York law.  To the extent, however, the Court finds the Complaint and materials outside the pleadings that may be considered on a Rule 12(c) motion do not conclusively show that the Assignments were not champertous, the issue can only be decided after discovery on a full record, not based on snippets of the pleadings and motion papers and the improper inferences Citibank wants to draw from them.  Because the Rule 12(c) standard is identical to Rule 12(b)(6)'s, the Motion must be denied as premature for this reason alone.

### STATEMENT OF FACTS

Inasmuch as Citibank cherry-picks a handful of quotes while omitting years of background facts that are pertinent to assessing the Motion, Plaintiff provides a brief recitation:

**A.    Nissen's Arrest and the Taly Litigation**

On or about May 31, 2017, the FBI arrested the Debtors' former CEO, president, and managing member, Jason Nissen ("Nissen") for allegedly defrauding victims of $70 million in a Ponzi scheme.  Such victims included, but were not limited to, three of the Company's creditors: (i) Hutton Ventures LLC ("Hutton"); (ii) FMP Agency Services, LLC (for itself and on behalf of Falcon Strategic Partners IV, LP) ("Falcon"); and (iii) Taly USA Holdings Inc. and SLL USA Holdings, LLC (together, "Taly," and with Hutton and Falcon, the "Assignors" or the "Creditors").

On or about June 1, 2017, Taly commenced litigation against Nissen and others, including certain Debtors, in New York state court, which resulted in the appointment of a receiver for the Corporate Debtors on or about June 5, 2017 (the "Receiver").

**B.    The Filing of the Bankruptcy Cases**

On June 5, 2017, the LLC Debtors filed voluntary petitions for relief under chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.

On June 28, 2017, the Receiver filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Corporate Debtors.

On August 7, 2017, the LLC Debtors' chapter 11 cases were converted to liquidation proceedings under chapter 7 of the Bankruptcy Code [Main Dkt. No. 143], and the Trustee was appointed in the LLC Debtors' Bankruptcy Cases [Main Dkt. 144].

On August 16, 2017, the Trustee sought to examine Citibank under Bankruptcy Rule 2004 ("Rule 2004") [Main Dkt. 154], which the Bankruptcy Court granted [Main Dkt. No. 165].

**C.**    **The Assignors' Claims in the Bankruptcy Cases**

On October 13, 2017, the Bankruptcy Court authorized the Corporate Debtors to obtain secured debtor-in-possession financing in an aggregate principal amount of up to $280,000, pursuant to an agreement with Hutton and Taly (the "DIP Loan") [CD Dkt. No. 69] (the "DIP Order").  Hutton and Taly's extensions of principal DIP Loan amounts, as approved by the Bankruptcy Court, entitled them to secured, superpriority claims against the Corporate Debtors' Estates.  (*Id.*, ¶¶ 1, 4, 6.)  Initially, the Receiver (or others granted standing) had two months to commence proceedings ("Challenges") asserting claims or causes of action against Hutton or Taly (the "Challenge Deadline").  (*Id.*, ¶ 10.)

The Receiver (followed by the Trustee, as his predecessor) and Taly have been negotiating the potential resolution of Challenges against Taly under chapter 5 of the Bankruptcy Code.  Thus, they have consensually sought, and the Bankruptcy Court has so-ordered, multiple extensions of the Challenge Deadline, which is currently set to expire on April 30, 2024 [Main Dkt. No. 984].

On November 2, 2017, Hutton timely filed proofs of claim against each Debtor's Estate in the amount of $9,356,616.62, on account of money it loaned the Debtors prior to Nissen's arrest (*see, e.g.*, [Main Dkt. No. 18-1]) (collectively, the "Hutton Proof of Claim").

4

On November 6, 2017, Falcon timely filed proofs of claim against each Debtor's Estate in the amount of at least $47,154,737.60, on account of money it loaned the Debtors prior to Nissen's arrest, alleging that $29,872,732.70 of its claim against each of the Estates is secured by all of the Debtors' assets, and that $17,282,004.90 is unsecured (*see, e.g.*, [Main Dkt. No. 20-1]) (collectively, the "Falcon Proof of Claim").

On or about November 10, 2017, Taly timely filed proofs of claim against each Debtor's Estate in the amount of at least $25,135,303.53, on account of money it loaned the Debtors prior to Nissen's arrest, comprised of $16,135,303.53 in Taly's capital plus over $9 million in guaranteed profits (*see, e.g.*, [Main Dkt. No. 21-1]) (collectively, the "Taly Proof of Claim").

On or about November 2, 2018, the Trustee and Receiver sought substantive consolidation of the Estates pursuant to the Bankruptcy Code [Main Dkt. No. 439] (the "SubCon Motion"). Falcon objected [Main Dkt. No. 450] (the "SubCon Objection").

**D.      Conversion of the Corporate Debtors' Bankruptcy Cases to Chapter 7**

On February 11, 2019, the Bankruptcy Court entered an order: converting the Corporate Debtors' chapter 11 cases to chapter 7; appointing the Trustee in the Corporate Debtors' cases; and directing the joint administration of all the Debtors' chapter 7 cases [Main Dkt. No. 513] (the "Conversion Order").  The Conversion Order specifically did not substantively consolidate the Estates for any purposes.  (*Id.* at 5.)  Rather, no such relief was to be requested unless and until the parties had engaged in good faith negotiations to reach a consensus regarding such relief.  (*Id.*)

**E.      The Retention of Kasowitz and Citibank's Appearance in the Bankruptcy Cases**

On June 3, 2021, on application and notice, and after a hearing (Exs. 1-3), the Bankruptcy Court authorized the Trustee to retain Kasowitz Benson Torres LLP ("Kasowitz") as special litigation counsel in the Bankruptcy Cases to "pursue and prosecute potential claims against various financial institutions used by Nissen and the Debtors under Nissen's control…" (the "Bank

Claims"). (Ex. 4; Ex. 1, ¶ 19.) Kasowitz was to be paid a retainer of $150,000, plus a contingency

fee of 40% of any recoveries from the Bank Claims (the "Contingency Fee"). (*Id.*, ¶¶ 22, 24.)

On August 9, 2021, the Trustee (through Kasowitz), sought a supplemental Rule 2004

examination of Citibank [Main Dkt. No. 826], which the Bankruptcy Court granted on September

10, 2021 [Main Dkt. No. 831].

On November 8, 2021, Kasowitz filed a letter-brief with the Bankruptcy Court, requesting

relief concerning Citibank's deficiencies under Rule 2004 [Main Dkt. No. 844]. Citibank

responded *to the Bankruptcy Court* with its own letter-brief the next day [Main Dkt. No. 845] (the

"2004 Response"), through its then-counsel *in the Bankruptcy Cases*, Zeichner Ellman & Krause

LLP ("ZEK"). Thereafter, on November 23, 2021, the Bankruptcy Court held a conference on the

Trustee and Citibank's letter-briefs, at which ZEK appeared and argued on behalf of Citibank.

**F.    The Hutton Settlement**

After the Conversion Order, the Debtors still owed Hutton $167,403.07, plus interest

accruing at the default rate, on account of the DIP Loan. (Ex. 5, ¶ 8.) Thus, the Trustee and Hutton

engaged in extensive, arm's length settlement discussions regarding, among other things, the

outstanding DIP Loan amount, the Hutton Proof of Claim, and Hutton and the Estates' Bank

Claims. (*Id.*, ¶ 9.) These negotiations culminated, on November 12, 2017, in the Trustee's motion

under Bankruptcy Rule 9019 ("Rule 9019") (Ex. 5) (the "Hutton 9019 Motion"), pursuant to which

the Trustee sought Bankruptcy Court approval of his resolution with Hutton (the "Hutton

Settlement"). The deadline to object to the Hutton 9019 Motion was December 2, 2021. (*Id.*)

Because ZEK had filed the 2004 Response in the Bankruptcy Cases using the Bankruptcy

Court's electronic case filing system ("ECF") prior to the filing of the Hutton 9019 Motion, the

Bankruptcy Court transmitted electronic notice of the Hutton 9019 Motion directly to ZEK at

counsel's email address. Citibank failed to object.

Pursuant to the Hutton Settlement, Hutton agreed to: (i) permit the Trustee to use funds that would have otherwise been available for repayment of Hutton's secured DIP Loan claim, to pay Kasowitz's $150,000 retainer to pursue the Bank Claims; (ii) contribute, transfer, and assign to the Estates all of Hutton's Bank Claims (the "Hutton Assignment"); and (iii) waive any claim against the Debtors for repayment of the $150,000 advanced to Kasowitz. (*Id.*, ¶ 10; Ex. 6 at 3, ¶¶ 1, 3.) In return, the Trustee agreed that Hutton would receive: (a) a 7% distribution of the gross proceeds resulting from the settlement or litigation of any Bank Claims (the "Hutton 7% Distribution"); (b) a fixed, general unsecured claim in the Bankruptcy Cases for $9,356,616.62 (the "Hutton GUC"); and (c) a *pro rata* distribution on account of the Hutton GUC of any funds distributed by the Trustee to unsecured creditors from any source, including, but not limited to, any net proceeds resulting from any Bank Claims. (*Id.* at 3, ¶¶ 2, 4; Ex. 5, ¶ 11.)

On December 9, 2021, the Bankruptcy Court held a hearing on the Hutton 9019 Motion. (Ex. 7.) Citibank did not appear, despite having argued the 2004 Response two weeks earlier. Nevertheless – and despite no party objecting to the Hutton Settlement – the Bankruptcy Court declined to grant the Hutton 9019 Motion at the hearing. Rather, Judge Garrity directed the Trustee to further explain the value of the Hutton 7% Distribution. (*See id.* at 147:25-148:2.)

On December 17, 2021, the Trustee filed the requested information (Ex. 8) (the "Affirmation"). The Bankruptcy Court transmitted electronic notice of the Affirmation to ZEK through ECF. The Trustee attested, *inter alia*:

> We were unable to find any firm that would take on the potential Bank [Claims] on a purely contingent basis.…
>
> Kasowitz was ready, willing, and able to serve as special counsel in the Estates' prosecution of the Bank [Claims] on the condition that the firm receive an up front payment of $150,000…
>
> The Estates are currently administratively insolvent and the

speculative nature of the Bank [Claims] made it unclear if payment of the Kasowitz Retainer was in the best interests of the Estates.

Hutton's agreement to forgive $150,000 of monies otherwise due and owing to it in repayment of the Hutton DIP Loan, allowed the Estates[] to fund the Kasowitz Retainer without adversely affecting the general unsecured creditors of the Estates.

… Hutton assumed significant risk as it was foregoing payment of an administrative claim for the possibility of payment on contingent and unliquidated claims….

…. The Bank Litigation is speculative…. [I]t is difficult to assess the anticipated range of recovery, which could be anywhere from $0 to $70,000,000. Of course, as most litigations result in settlement at figures 50% or less than the face value of the claims, the anticipated high range of recovery could well be $35,000,000 or less.

…I agreed to pay Hutton seven percent (7%) of gross recoveries because it…compensates Hutton for the *money and* claims it has turned over…yet *still allows the Estates to retain the majority of all recoveries from the Bank [Claims] for the benefit of creditors*….

(Ex. 8, ¶¶ 4-10, 13 (emphasis added).)  Satisfied by the Affirmation, Judge Garrity granted the Hutton 9019 Motion on January 3, 2022 (Ex. 9) (the "Hutton 9019 Order").  The Bankruptcy Court transmitted electronic notice of the Hutton 9019 Order to ZEK through ECF.

**G.    Citibank's Second Appearance in the Bankruptcy Cases, Through New Counsel**

On April 19, 2022, Citibank's current counsel in the Bankruptcy Cases and the Action, Shearman & Sterling LLP ("Shearman"), submitted a notice of substitution of attorney for Citibank [Main Dkt. No. 868] *in the Bankruptcy Cases*.  Shearman later modified that notice with *Citibank, N.A.'s Motion for Withdrawal and Substitution of Counsel* [Main Dkt. No. 958] (the "Motion for Substitution").  In the Motion for Substitution, Citibank represents:

> *Citibank was previously represented in these proceedings* [the Bankruptcy Cases] by Kenneth C. Rudd and Barry J. Glickman of [ZEK].  Citibank wishes to substitute Adam S. Hakki, John Gueli, Katherine J. Stoller, and Randall Martin of Shearman…as counsel of record for Citibank *in these proceedings* [the Bankruptcy Cases].

> On April 19, 2022, a Stipulation and Order for Substitution of Counsel was filed seeking Court approval for [ZEK] to withdraw its appearance as counsel of record for Citibank and for Shearman…to enter its appearance as counsel of record for Citibank.  Dkt. No. 868.
>
> *Since that date, Shearman…has been acting as counsel for Citibank in this case* [the Bankruptcy Cases] and certain related matters.

(Motion for Substitution, ¶¶ 1-3 (emphasis added).)  ZEK and Shearman both signed the Motion for Substitution (*id.* at 6), which the Bankruptcy Court granted [Main Dkt. No. 960].

On April 28, 2022, the Trustee again sought Bankruptcy Court relief with respect to Citibank's Rule 2004 production [Main Dkt. No. 869].  The next day, Citibank, through Shearman, submitted a response in the Bankruptcy Cases [Main Dkt. No. 871] (the "Second 2004 Response").

On or about May 2, 2022, the Bankruptcy Court held a conference with the Trustee and Citibank.  Shearman appeared and argued the Second 2004 Response on behalf of Citibank.

## H.    The Falcon Settlement, the Taly Settlement and the Complaint

Meanwhile, Falcon and Taly, like Hutton, had also been engaging in good faith discussions with the Trustee regarding, *inter alia*, the Falcon Proof of Claim, the Taly Proof of Claim, Falcon's SubCon Objection, and the Bank Claims held by Falcon, Taly and the Estates.  (Ex. 10, ¶ 12; Ex. 12, ¶ 10.)  On or around June 1, 2022, these negotiations culminated in settlement agreements between the Trustee, and each of Falcon and Taly.  (Ex. 11 (the "Falcon Settlement"); Ex. 13 (the "Taly Settlement," and together with the Hutton Settlement and the Falcon Settlement, the "Settlements").)

On June 1, 2022, Plaintiff filed his complaint commencing this Action [Dkt. No. 81] (the "Complaint"), which Kasowitz served, along with a summons and other papers, on Shearman via email (the "Email Service") [Dkt. No. 34, ¶ 23].  The Complaint alleged, *inter alia*:

- "Plaintiff is the chapter 7 trustee of the Company's…Bankruptcy Cases, and brings this action (i) in his capacity as Trustee on behalf of the Company's bankruptcy estates, *and* (ii) in his capacity as the assignee of Falcon's, Taly's and Hutton's direct claims against

Citibank."  (Complaint, ¶ 9 (emphasis added).)

- "Hutton assigned its claim against Citibank for aiding and abetting Nissen's fraud, that is the subject of this Complaint, to the Trustee."  (*Id.*, ¶ 12.)

- "Taly assigned its claim against Citibank for aiding and abetting Nissen's fraud, that is the subject of this Complaint, to the Trustee."  (*Id.*, ¶ 13.)

- "Falcon assigned its claims against Citibank for aiding and abetting Nissen's fraud, that are the subject of this Complaint, to the Trustee."  (*Id.*, ¶ 14.)

- By reason of Nissen's Ponzi scheme, "the Company has been damaged in the amount of at least $70,000,000 plus prejudgment interest for total damages in excess of $100,000,000." (*Id.*, ¶ 256.)

- "For the sake of efficiency and administrative convenience, Taly, Falcon, and Hutton have assigned to the Trustee *for the benefit of the Company's estates and its creditors* any and all claims they possess against Citibank for aiding and abetting Nissen's fraud." (*Id.*, ¶ 258 (emphasis added).)

On June 2, 2022, Shearman agreed to accept the Email Service as formal service of process in the Action [Dkt. No. 1-8].

On June 30, 2022, the Trustee filed Rule 9019 motions seeking approval of the Falcon Settlement (the "Falcon 9019 Motion") and the Taly Settlement (the "Taly 9019 Motion," and collectively with the Hutton 9019 Motion and the Falcon 9019 Motion, the "9019 Motions") with the Bankruptcy Court.  (Exs. 10, 12.)   The deadline to object to the Falcon 9019 Motion and/or the Taly 9019 Motion was August 9, 2022.  (Ex. 10 at 1; Ex. 12 at 1.)

Because Shearman had previously filed the Second 2004 Response in the Bankruptcy Cases using ECF, the Bankruptcy Court transmitted electronic notice of the Falcon 9019 Motion and Taly 9019 Motion to Shearman through ECF.  Additionally, the Trustee served Citibank with both motions by first class mail [Main Dkt. No. 888].  Citibank failed to object – even despite Shearman having accepted the Email Service of the Complaint, which contained multiple, patent allegations concerning the Assignments, a month earlier.

In the Falcon Settlement, Falcon agreed: (i) to waive any opposition to substantive consolidation of the Estates; and (ii) for the sake of efficiency and administrative convenience, to

contribute, transfer and assign to the Estates all of Falcon's Bank Claims (the "<u>Falcon Assignment</u>"). (Ex. 10, ¶¶ 13-14; Ex. 11 at 3-4, ¶¶ 1-2.) In return, the Trustee agreed: (a) to allow the Falcon Proof of Claim in the amount of $47,154,737.60 in total, of which $29,872,732.70 would be deemed fully secured (the "<u>Falcon Secured Claim</u>") to the extent of any assets pledged as collateral to Falcon or the proceeds thereof (the "<u>Collateral</u>"), with any deficiency claim treated as a general unsecured claim (the "<u>Falcon Deficiency</u>"), and $17,282,004.90 treated as a general unsecured claim (the "<u>Falcon GUC</u>"); (b) that Falcon would receive (I) a 100% distribution on account of the Falcon Secured Claim, of any Collateral held or received by the Trustee, and (II) a *pro rata* distribution on account of the Falcon Deficiency and the Falcon GUC, of any funds distributed by the Trustee to general unsecured creditors of any Debtors from any source, including any net proceeds resulting from the settlement or litigation of any Bank Claims; and (c) that prior to the determination of *pro rata* distributions, Falcon would receive a percentage distribution (the "<u>Falcon Percentage</u>") of the "net proceeds" of any Bank Claims. (*Id*. at 4, ¶¶ 3-4, 16(d); Ex. 10, ¶ 15.) "Net proceeds" meant the gross proceeds of the Bank Claims, less the Contingency Fee and the Hutton 7% Distribution. (*Id.*)

Pursuant to the Taly Settlement, Taly also agreed, for the sake of efficiency and administrative convenience, to contribute, transfer and assign to the Estates all of Taly's Bank Claims (the "<u>Taly Assignment</u>," and collectively with the Hutton Assignment and the Falcon Assignment, the "<u>Assignments</u>"). (Ex. 12, ¶ 11; Ex. 13 at 3, ¶ 1.) In return, the Trustee agreed that Taly would likewise receive a percentage distribution (the "<u>Taly Percentage</u>"), of the "net proceeds" of any Bank Claims. (*Id.* at 3, ¶ 2; Ex. 12, ¶ 12.) "Net proceeds" meant the gross proceeds of the Bank Claims, less the Contingency Fee and Hutton 7% Distribution. (*Id.*) However, because the Trustee and Taly had not resolved the Challenges by the date of the

Complaint – which the Trustee filed days shy of six years after Taly's first event-specific loan to the Debtors – the parties reserved and preserved all rights, claims, and defenses, with regard to the Taly Proof of Claim, Taly's DIP Loan claim, any other claim Taly may have against the Estates and any claim the Trustee may have against Taly.  (*Id.*, ¶ 13; Ex. 13, ¶ 2.)

## I.    <u>Citibank's Motion to Dismiss the Action</u>

On August 23, 2022, Citibank moved to dismiss the Action pursuant to Federal Rule of Civil Procedure 12(b)(6) ("<u>Rule 12(b)(6)</u>") [Dkt. No. 82][4] (the "<u>MTD</u>").  Citibank did not seek dismissal on the basis of purported champerty, despite having notice of all of the following at the time: all three 9019 Motions, the Affirmation, the Hutton 9019 Order, and the Complaint, of which Shearman had accepted Email Service.

On September 20, 2022, Plaintiff opposed the MTD [Dkt. No. 83].  Six days later, the Trustee filed certificates of no objection with the Bankruptcy Court, requesting that it grant the Falcon 9019 Motion and the Taly 9019 Motion [Main Dkt. Nos. 908, 909] (the "<u>CNOs</u>").  The Bankruptcy Court transmitted electronic notice of the CNOs to Shearman through ECF.

On October 4, 2022, Citibank filed its reply in support of the MTD [Dkt. No. 85] (the "<u>MTD Reply</u>").  Again, Citibank failed to raise alleged champerty, despite the CNOs also having been filed by then.  The next day, the Bankruptcy Court granted the Falcon 9019 Motion and Taly 9019 Motion, as entered on October 10, 2022.  (Ex. 14 (the "<u>Taly 9019 Order</u>"); Ex. 15 (the "<u>Falcon 9019 Order</u>," and with the Hutton 9019 Order and Taly 9019 Order, the "<u>9019 Orders</u>").)

In January and September 2023, Plaintiff filed supplemental MTD letter-briefs, in order to submit later-decided, relevant authority to the Court [Dkt. Nos. 57, 59, 77, 79].  Despite additionally having knowledge of the entered Falcon 9019 Order and Taly 9019 Order at that point,

---

[4]    After the Honorable Gregory H. Woods, who previously presided over the Action, denied Citibank's sealing motions, the parties re-filed the Complaint and their MTD briefing publicly, in unredacted form, during October 2023.

Citibank still responded without mentioning purported champerty [Dkt. Nos. 58, 78].

On November 6, 2023, Judge Woods entered a memorandum opinion and order: (i) denying the MTD as to the Assignors' Bank Claims against Citibank; but (ii) dismissing, on the basis of *in pari delicto*, without prejudice to re-plead, the Estates' Bank Claims against Citibank [Dkt. No. 88]. Plaintiff opted not to re-plead the Estates' Bank Claims against Citibank. Over three months later, Citibank – in the midst of fact discovery – filed the Motion.

## ARGUMENT

"Rule 12(c) has limited usefulness today in light of both Rule 12(b)(6) and Rule 12(d), which requires a court to convert a motion under Rule 12(b)(6) or 12(c) into a motion for summary judgment whenever matters outside the pleadings are presented to and not excluded by the court." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F. 4th 293, 302 (2d Cir. 2021) (quoting Fed. R. Civ. P. 12(d)). "Some commentators have described 'the Rule 12(c) motion as little more than a relic of the common law and code eras.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1369 (3d ed. 2021) ("In light of the battery of pretrial motions available under the federal rules and the conversion provision in [Fed. R. Civ. P. 12(d)], there probably is little need for retaining the judgment on the pleadings as a separate procedure…")).

"The standard for granting a Rule 12(c) motion…is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Coccaro v. Barnard College*, 2024 WL 196524, at *2 (S.D.N.Y. Jan. 18, 2024) (quoting *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020)). Thus, a complaint survives Rule 12(c) so long as it contains "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, just as the MTD failed, so too does the Motion, for three reasons: (i) it constitutes a collateral attack on the 9019 Orders; (ii) the Assignments are not champertous as a matter of

substantive law; and (iii) it constitutes a thinly disguised, premature summary judgment motion.

**A.**      **The Motion Collaterally Attacks the Bankruptcy Court's 9019 Orders**

"A collateral attack may be foreclosed by principles of former adjudication provided the party mounting the challenge was subject to the personal jurisdiction of the Bankruptcy Court and, despite notice of and an opportunity to challenge the...Order, failed to appeal from it."  *Semi-Tech Litig., L.L.C. v. Bankers Tr. Co.*, 272 F. Supp. 2d 319, 324 (S.D.N.Y. 2003) (citations omitted). "'Under New York law, the doctrine of *res judicata*...provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action.'"  *Campos v. Aegis Realty Mgmt. Corp.*, 2020 WL 433356, at *4 (S.D.N.Y. Jan. 28, 2020) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195-96 (2d Cir. 2010)); *see Corbett v. MacDonald Moving Servs.*, 124 F.3d 82, 88 (2d Cir. 1997) ("[B]ecause the Trustees raised no jurisdictional challenge during the bankruptcy proceedings...the present action is a collateral attack on [the] Bankruptcy Court's jurisdiction[.]"); *Campos*, 2020 WL 433356, at *6 (recognizing that if plaintiff had notice of a third-party release in bankruptcy action, plaintiff could not subsequently challenge validity of the release, reasoning that "[t]he time for direct review of the Bankruptcy Court's order ha[d] passed, and such a collateral attack would not comport with principles of res judicata").  These principles render the Motion dead on arrival.

**1.**      **Citibank Failed to Object to the Settlements or Assignments**

"A bankruptcy court's approval of a settlement order that resolves litigation between parties is a final order, and is entitled to full res judicata effect."  *Yagman v. Kittay (In re Yagman)*, 2015 WL 13203927, at *4 (S.D.N.Y. Dec. 4, 2015), *aff'd sub nom.* 670 F. App'x 743 (2d Cir. 2016) (quotations and citations omitted); *see In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 887 (Bankr. N.D. Tex. 2020) ("An order approving a settlement under Rule 9019 has res judicata effect as a final order."); *Semi-Tech*, 272 F. Supp. 2d at 324 ("The next aspect of [defendant's] standing

argument is a collateral attack on the power of the Bankruptcy Court to effect an assignment of the claims by approving the Plan.").

Citibank's claim that it "was not a party to the bankruptcy proceedings" (Memo at 4, 8 n.3) is *false*, as patently demonstrated by the Motion for Substitution. Citibank first appeared in the Bankruptcy Cases, through ZEK, on November 9, 2021 [Main Dkt. No. 845]. Thus, on November 12, 2021, the Bankruptcy Court transmitted electronic notification of the Hutton 9019 Motion to ZEK through ECF. Two weeks before the deadline to object thereto, ZEK argued the 2004 Response before Judge Garrity. Worse, Citibank's own Motion for Substitution concedes that Shearman appeared for Citibank *in the Bankruptcy Cases* on April 19, 2022 and had acted as Citibank's counsel *in the Bankruptcy Cases* ever since that date, and that *before April 19, 2022*, ZEK represented Citibank *in the Bankruptcy Cases*. (*See* Motion for Substitution, ¶¶ 1-3.) Shearman first submitted a filing in the Bankruptcy Cases on April 29, 2022 [Main Dkt. No. 871], which it argued to Judge Garrity on May 2, 2022. Thus, on June 30, 2022, the Bankruptcy Court transmitted electronic notification of the Falcon 9019 Motion and Taly 9019 Motion to Shearman through ECF. The Trustee additionally served Citibank with the Falcon 9019 Motion and Taly 9019 Motion via first class mail [Main Dkt. No. 888]. Citibank had three weeks to more than a month to object to each of the Assignments. (Ex. 10 at 1; Ex. 12 at 1.) Yet, it failed to do so.

Citibank cannot plausibly contend that ZEK and Shearman, both of which are sophisticated law firms, were unaccustomed in 2021 and 2022 to receiving electronic filing notifications from federal courts. That ZEK and Shearman would not monitor the docket filings of cases in which they filed papers, argued, and appeared, is absurd. *See In re Promise Healthcare Grp., LLC*, 2021 WL 4528461, at *8 (Bankr. D. Del. Oct. 4, 2021) ("CM/ECF notice is sufficient to provide notice in a manner that is reasonably calculated to reach counsel for a party that has appeared in a

bankruptcy case, which thus complies with the requirements of due process.").  Indeed, ZEK and Shearman utilized the Bankruptcy Court's ECF to file the 2004 Response and the Second 2004 Response in the first place.[5]

### 2.    The Bankruptcy Court Approved the Settlements Under Rule 9019

Rule 9019 provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  "As a general matter, settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate."  *In re Dewey & Leboeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012) (quotations and brackets omitted). "The decision to approve or deny a particular settlement involving a bankruptcy estate lies within the discretion of the bankruptcy court."  *Id.* at 641 (citation omitted).  Citibank's contention that "Rule 9019…merely asks whether the proposed settlement is reasonable and in the best interests of the estate" (Motion at 8 n.3), mischaracterizes the law.  Rather, courts within the Second Circuit are directed "to balance *seven* interrelated factors in determining whether a settlement is fair and equitable."  *Dewey*, 478 B.R. at 641 (citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007)) (emphasis added).

Citibank's contention that "the Bankruptcy Court was not required to…evaluate whether the…[A]ssignments were champertous" (Motion at 8 n.3) is also false.  Needless to say, bankruptcy courts cannot approve *illegal* settlements under Rule 9019.  *See In re Capmark Fin. Grp., Inc.*, 438 B.R. 471, 476 (Bankr. D. Del. 2010) ("Of course, the Court may not approve a [Rule 9019] settlement that would violate applicable law, regardless of whether it is a 'good deal'

---

[5]    That Citibank's "motion to dismiss…briefing…was completed before the Bankruptcy Court approved the Falcon and Taly assignments" (Memo at 8 n.3), while technically true by a single day, is no excuse for failing to raise champerty in the MTD, if at all, because all purported facts relevant to Citibank's baseless champerty argument were fully known to Citibank in August 2022.  Indeed, all three 9019 Motions, the Hutton 9019 Order, the Affirmation, and of course the Complaint alleging the Assignments, preceded the MTD.

for the debtor."); *In re Dalen*, 259 B.R. 586, 612 (Bankr. W.D. Mich. 2001) ("If the proposed [Rule 9019] settlement includes a provision which is illegal or against public policy, then it is irrelevant whether the settlement is in the best interests of the estate or not.") (footnote omitted).

Yet, in collaterally attacking the 9019 Orders, Citibank brazenly accuses Judge Garrity of doing precisely that.  Citibank's argument that the Bankruptcy Court facilitated and validated *illegal* claim transfers is particularly specious inasmuch as Judge Garrity *sua sponte* required supplemental papers to address the propriety of the Hutton Assignment before approving the Hutton 9019 Motion.  (*See* Ex. 7 at 139:12-150:14.)  For Citibank to argue two years later that the Bankruptcy Court did not consider the legitimacy of the Assignments, is downright frivolous.

## B.    <u>The Motion Fails on the Merits</u>

Next, the Motion fails utterly on the merits, because as a matter of law – which Citibank misstates – the Assignments are not champertous.  New York's champerty statute provides:

> 1.  No person…engaged directly or indirectly in the business of collection and adjustment of claims…shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of…any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon; provided however, that bills receivable, notes receivable, bills of exchange, judgments or other things in action may be solicited, bought, or assignment thereof taken, from any…trustee or receiver in bankruptcy….

N.Y. Jud. Ct. Acts Law § 489(1).  "Champerty is an affirmative defense for which the defendant bears the burden of proof."  *Phoenix Light SF Ltd. v. U.S. Bank N.A.*, 612 F. Supp. 3d 263, 281 (S.D.N.Y. 2020) (citing *Tr. for the Certificate Holders of the Merrill Lynch Mtge. Invs., Inc. v. Love Funding Corp.*, 591 F.3d 116, 119 (2d Cir. 2010) ("*Love Funding II*")).

"The purpose of champerty is 'to prevent or curtail the commercialization of or trading in litigation.'"  *Espadarte Partners, LLC v Riverside Gulf Coast Banking Co.*, 2020 WL 1955672, at *3 (Sup. Ct. N.Y. Cnty. Apr. 23, 2020) (quoting *Tr. for Certificate Holders of Merrill Lynch Mtge.*

*Invs., Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 198 (2009) ("*Love Funding I*")). "Indeed, early New York cases indicate that the prohibition of champerty was limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs, which, at the time, included attorneys' fees." *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 734 (2000) (citation omitted). New York "champerty law draws a distinction between acquiring a thing in action in order to obtain costs, which constitutes champerty, and acquiring it in order to protect an independent right of the assignee, which does not." *Phoenix Light*, 612 F. Supp. 3d at 281 (quotation omitted).

**1.     There is No Champerty Because the Trustee is Not a Stranger to the Claims**

*Love Funding I*, in which the New York Court of Appeals (the "Court of Appeals") answered champerty questions certified by the United States Court of Appeals for the Second Circuit (the "Second Circuit"), and *Love Funding II*, where the Second Circuit then ruled in favor of the plaintiff-assignee in light of *Love Funding I*, are often cited for a major exception to champerty: an assignment will not be champertous where – like here – the plaintiff-assignee has a pre-existing interest in the debt assigned. *See Love Funding II*, 591 F.3d 116; *Love Funding I*, 13 N.Y.3d at 190. The Supreme Court of New York, New York County, recently so clarified, thus rejecting a champerty defense where the plaintiff "had a preexisting proprietary interest in the subject matter" of the lawsuit. *IKB Int'l S.A. v. Morgan Stanley*, 2023 WL 2307489, at *4 (Sup. Ct. N.Y. Cnty. Mar. 1, 2023). There, in order to finance the initial assignment of certain certificates to a special purpose vehicle ("Rio"), the plaintiff and Rio entered into an agreement, pursuant to which the plaintiff, as junior lender, was entitled to 80% of the profits from the assets. *Id.* at *3, *11. While the defendants pointed out that "the loan has since been paid down to one dollar," the court found "this does not change the fact that, unlike…champertous assignments, the [] Assignment indisputably did not involve a 'stranger' to the transaction, but a party with a prior

interest." *Id.* at *11 (citations omitted).

      Likewise, in *In re IMAX Sec. Litig.*, 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011), the court rejected a champerty defense where the assignee was "certainly not a stranger to the dispute merely speculating on the suit. Rather, it has been involved in this suit from the beginning." *Id.* at *6. Thus, the assignment did "not suggest a 'commercialization of litigation' or involve the bringing of a claim to 'involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up in an effort to secure costs.'" *Id.* (quoting *Love Funding I*, 13 N.Y.3d at 200) (additional quotations, citation, footnote and brackets omitted); *see FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 679 F. Supp. 2d 312, 329 n.9 (E.D.N.Y. 2010) (finding plaintiff was "the parent company of [trademark assignor]. Moreover, under the facts as alleged, [plaintiff] has a direct interest in the resolution of the trademark claims. Thus, given these allegations, this issue cannot be resolved in defendant's favor at this [motion to dismiss] stage.") (citation omitted); *Jamaica Public Serv. Co., Ltd. v. La Interamericana Compania De Seguros Generales SA*, 262 A.D.2d 73, 74 (1st Dep't 1999) ("[N]o champerty defense applies at bar, since the primary purpose of the arrangement…was not the acquisition of a cause of action by a stranger to the underlying dispute…") (quotation and citation omitted); *Bellarno Int'l, Ltd. v. Irving Tr. Co.*, 560 N.Y.S.2d 287, 288 (1st Dep't 1990) ("Nor was the assignment champertous. Here, plaintiff was not a stranger to the transaction, and the assignment was made for the purpose of facilitating a recovery as compensation for an alleged wrong…") (citations omitted). In any event, "the champerty statute 'does not apply when the purpose of an assignment is the collection of a legitimate claim.'" *IMAX*, 2011 WL 1487090, at *5 (quoting *Love Funding I*, 13 N.Y.3d at 201). As another court explained:

> The Plaintiff law firm here took the assignment of its client's
> sanctions award against the Debtor as part of a complete satisfaction
> of its client's obligations to pay attorneys fees and expenses to its
> own attorney. The Debtor's notion is that whatever the firm

> accepted in full payment, it accepted. It no longer has any economic loss. *The Court might agree with this argument were the firm to have acquired the claim as a third party speculator.* That might well place the matter within the proscriptions of…champerty. But *the Plaintiff was not a stranger to the lawsuit giving rise to the sanctions award.* Indeed, it prosecuted the request for sanctions on behalf of its client, and appears to have taken over, for its client, the risk of collectability of the sanctions award, as part and parcel of its final resolution of the fee and expense bills it has sent to its client in connection with…years of litigation of the underlying matter.

*Schatzman & Schatzman, P.A. v. Greason (In re Greason)*, 2009 WL 701921, at *5 (Bankr. W.D.N.Y. Mar. 10, 2009) (emphasis added).

Obviously, the Trustee here is no stranger or "speculator" to the claims or Settlements. (*Id.*) Much to the contrary, he asserted his own Bank Claims against Citibank in the same Complaint as those assigned to him (Memo at 1), which Assignments he took, to some degree, "for the sake of efficiency and administrative convenience," inasmuch as he would have brought his Bank Claims regardless of what the Assignors did. (Ex. 10, ¶ 13; Ex. 12, ¶ 11). That the Court dismissed the Estates' Bank Claims, without prejudice, on a basis which simply does not apply to the Creditors', does not somehow transform the Trustee into a *stranger* to Assignments which are "part and parcel," 2009 WL 701921, at *5, of multifaceted Settlements he personally negotiated on behalf of the Estates. Notably, the Trustee has administered the LLC Debtors' Bankruptcy Cases since their inception nearly seven years ago, and the Corporate Debtors' for the past four years since the Conversion Order. Moreover, inasmuch as any recovery in this Action will inure to the benefit of the Estates, the Trustee can appeal the dismissal of the Estates' Bank Claims, and the Trustee is charged with maximizing recoveries to creditors of the Estates, he maintains an interest in the subject matter of the Action *even notwithstanding* his decision not to re-plead the Estates' claims against Citibank.

**2.    The Assignments' Sole Purpose was Not to Profit Off Litigation**

Contrary to Citibank's erroneous assertion that champerty will be found where suing is a "primary" purpose of the assignment (Memo at 3, 12-15), "establishing champerty requires 'that the acquisition be made with the intent and for *the* purpose (as contrasted to *a* purpose) of bringing an action or proceeding." *Espadarte*, 2020 WL 1955672, at *3 (quoting *Bluebird Partners*, 94 N.Y.2d at 736) (emphasis in original). Indeed, as *IKB* ruled:

> Defendants have…failed to establish that the sole purpose for the…Assignment was to profit off of litigation, to the **exclusion** of all other purposes. An assignment is not champertous merely because the parties enter into the assignment for the purpose of collecting damages, by means of a lawsuit…. Therefore, regardless of whether or not the…Assignment's primary purpose was litigation, Defendants have not provided sufficient evidence to establish that the sole purpose, to the exclusion of all other purposes, was to **profit** off of litigation. As such, Defendants have failed to establish that the…Assignment is void as champertous.

*IKB*, 2023 WL 2307489, at *4 (quotation omitted) (emphasis in original).

Citibank cites *Justinian Capital SPC v. WestLB AG, N.Y. Branch*, 28 N.Y.3d 160 (2016) in this regard. (*See* Memo, *passim*.) However, *Justinian* stands for no such proposition, and furthermore is not only an outlier in finding champerty at all, but highly distinguishable on its facts and entirely inapplicable to the instant situation. There, the plaintiff-assignee, Justinian, described its business plan to the court as profiting from litigation to which it was a stranger, in partnership with certain law firms, to wit:

> (1) purchase an investment that has suffered a major loss from a company so that the company does not need to report such loss on its balance sheet; (2) commence litigation to recover the loss on the investment; (3) remit the recovery from such litigation to the company, minus a cut taken by Justinian; and (4) partner with specific law firms to conduct litigation.

*Id.* at 164-65 (ellipses and quotation marks omitted). In *Justinian*, a German bank owned defaulted notes, but feared retribution from the government if it commenced a lawsuit itself. *Id.* at 164.

Thus, the bank assigned its notes to Justinian – a stranger to the transaction – in the ordinary course of Justinian's business.  *Id*.  In exchange, the bank charged Justinian a so-called purchase price of $1 million – but, the only penalty for Justinian's failure to pay it was that Justinian's share of proceeds from the lawsuit would be reduced by 5%.  *See id*. at 165.  The court found "no evidence, *even following completion of champerty-related discovery*, that Justinian's acquisition of the notes was for *any purpose other than the lawsuit* it commenced almost immediately after acquiring the notes."  *Id*. at 167 (emphasis added).  Thus, in *Justinian*, suing on the assignments was the *sole* – not merely a "primary" – purpose of the assignments at issue.[6]

Here, the Gueli Declaration demonstrates that suing Citibank was not the *sole* purpose of the Assignments (nor was it the "primary" one).  Rather, the Assignments were merely one component of comprehensive bankruptcy Settlements that resolved various claims between and among the Trustee (on behalf of the Estates) and the Assignors, including Hutton's DIP Loan claim, Falcon's SubCon Objection, two large proofs of claim, and the Estates and Assignors' disputes concerning who owned the Bank Claims, how to prosecute them and how to allocate proceeds thereof.  (*See* Exs. 5-15, *passim*.)[7]  Nor was the Trustee seeking to profit from litigation

---

[6]    Citibank's smattering of other cases are likewise inapposite.  *Cf. Phoenix Light*, 612 F. Supp. 3d at 267, 271, 281-83 ("Plaintiffs paid nothing in exchange for the[] assignments" and "are not entitled to the proceeds of this litigation, but may be reimbursed for costs and expenses based on any recovery."); *Aretakis v. Caesars Entm't*, 2018 WL 1069450, at *10 (S.D.N.Y. 2018) (assignor and plaintiff explained claims were assigned because assignor "did not want to be further upset and distracted" and due to assignor's children and "the stress of his career…anxiety, annoyance, frustration and upset"); *BSC Assocs. v. Leidos, Inc.*, 91 F. Supp. 3d 319, 328 (N.D.N.Y. 2015) ("Plaintiff…did not exist prior to [assignment] and was formed solely to 'retain' this cause of action from [assignor]," and "has repeatedly asserted that it was a stranger to the Subcontract…"); *Am. Optical Co. v. Curtiss*, 56 F.R.D. 26, 31 (S.D.N.Y. 1971) ("[A]ssignee had nothing to do with the relationships between the individual defendants and the [assignor], which form the basis for the instant complaint."); *Leasing Control v. 500 Fifth Ave.*, 193 A.D.3d 592, 593 (1st Dep't 2021) ("[P]laintiff had no pre-existing interest in the claim before the assignment…. Instead, plaintiff was a shell company with no real assets, corporate structure, or operations…"); *Frank H. Zindle, Inc. v. Friedman's Express, Inc.*, 258 A.D. 636, 637 (1st Dep't 1940) (plaintiff's "only interest in the assignment was to bring a suit thereon and to earn a fee from the proceeds in the event that the prosecution of the suit was successful.").

[7]    In particular, at the time of the Hutton Assignment in November 2021, the Trustee had not yet come close to completing an investigation into whether it could sue Citibank (or any bank), or not.  Citibank had not yet even produced any communications to the Trustee pursuant to Rule 2004.

– in entering into the Settlements, he was discharging his fiduciary duties to the Estates to maximize recoveries for creditors.

### 3.    The Assignments were Made to Settle Claims, Not Avoid *In Pari Delicto*

Citibank *grossly* misrepresents the record in arguing that Plaintiff seeks to "circumvent" *in pari delicto*. (Memo at 2.)   For example, the Affirmation does not remotely stand for the proposition that a potential *in pari delicto* defense to the Estates' Bank Claims was a "key reason[]" for the Hutton Assignment.  (*Cf. id.* at 6-7.)  Rather, the Trustee noted this additional, potential benefit to the Estates, in response to Judge Garrity's *sua sponte* supplemental Rule 9019 inquiry: "*Furthermore*, Hutton's assignment of direct claims that it has or may have against Debtors' former banks provides the Estates with a path to recovery that avoids *potential Wagoner* and *in pari delicto* defenses."  (Ex. 8, ¶ 8 (emphasis added).)  Nor do the Affirmation's allusions to rendering Bank Claims "possible" or "viable" *even refer to in pari delicto at all* – contrary to Citibank's outrageous mischaracterization.  (*Id.*, ¶ 13; *cf.* Memo at 13.)  Rather, the Trustee made such statements in explaining the benefit of paying the Hutton 7% Distribution:

> I agreed to pay Hutton seven percent (7%) of gross recoveries because it adequately compensates Hutton for the *money and* claims it has turned over to *make the Bank Litigation possible*, yet still allows the Estates to retain the majority of all recoveries from the Bank Litigation for the benefit of creditors.  Alternatively, *absent Hutton's contributions* [including money] under the Settlement Agreement, *the Bank Litigation would not be viable*.

(Ex. 8, ¶ 13 (emphasis added).)  Likewise, Citibank misleadingly contends: "Plaintiff told the Bankruptcy Court that a primary rationale for the assignments was that, even if the Debtors' claims against Citibank were barred by *in pari delicto*, Plaintiff could ostensibly still pursue Citibank…" (Memo at 13.)[8]  The record patently reveals that "Plaintiff told the Bankruptcy Court" no such

---

[8]     The entire Memo is replete with outrageous mischaracterizations of the record.  (*See also, e.g.*, Memo at 13 ("The Hutton Settlement Agreement expressly recites that Hutton's assignment was made 'for purposes of the Bank

thing.  (*See* Ex. 10, ¶ 22 ("*Further*, the Settlement Agreement eliminates the issue of standing that a bank *may* raise…") (emphasis added); Ex. 12, ¶ 20 (same).)[9]

Ironically, it is Citibank, not the Trustee, that seeks to circumvent the law.  Citibank does not deny that the Creditors held Bank Claims, and could have asserted them directly against Citibank prior to the Assignments.  Yet, Citibank kept silent in the Bankruptcy Court to allow the Assignments in the hopes of later escaping *all* liability, by arguing: (i) *in pari delicto* to avoid the Estates' Bank Claims; and (ii) champerty to avoid the Creditors' Bank Claims.  The Court should not reward this type of litigation gamesmanship.

## C.    <u>The Motion is Premature Because Champerty is Contested</u>

If the Court finds it not clear from the Complaint or the Motion that the Assignments were not champertous, the Motion should still be denied, because factual disputes cannot be resolved under Rule 12(c) and the Court must draw all reasonable inferences in the Trustee's favor. "Judgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial."  *Lively*, 6 F.4th at 301 (quotations and brackets omitted).  "Thus, where a question of fact is in dispute, it is improper for the district court to answer it on a motion…on the pleadings."  *Id.* (quotation and brackets omitted); *see Semi-Tech Litig.*, 272 F. Supp. 2d at 331 (rejecting champerty defense because despite "strong evidence that the sole or primary purpose was to sue on the assigned claims….  Where, as here, any basis is advanced that might justify a trier in finding that the sole or primary purpose was not the commencement of a lawsuit, summary

---

Litigation.'"); *cf.* Ex. 6, at 3 (listing the Hutton Assignment "for purposes of the Bank Litigation" as *one of Hutton's three* contributions to the Hutton Settlement).)

[9]    Nor did Plaintiff "kn[o]w" that "*in pari delicto*…would properly foreclose the estates' own claims against Citibank."  (Memo at 15.)  Plaintiff had a good faith belief that the Estates' Bank Claims would survive the MTD under the adverse interest exception to the *in pari delicto* doctrine, because Nissen's conduct was adverse to the Debtors and Nissen was not the sole actor of the Company.  (*See* Complaint, ¶¶ 246-50, 252, 254.)

judgment must be denied.") (citations omitted); *IKB*, 2023 WL 2307489, at *4 (affirming denial of summary judgment where defendants failed to establish that sole purpose for assignment was to profit from litigation, to the exclusion of all other purposes).

Here too, Citibank fails to satisfy Rule 12(c).  The Complaint does not suggest let alone admit that the Trustee took the Assignments for the sole or primary purpose of suing Citibank.  On the contrary, the record patently demonstrates a myriad of other reasons therefor, including:

- In partial settlement of Hutton's secured DIP Loan claim. (*See* DIP Order; Ex. 5, ¶¶ 7, 10; Ex. 6 at 3, ¶¶ 1, 3; Ex. 7 at 143:20-144:7, 146:1-4; Ex. 8, ¶¶ 7, 11.)

- In resolution of the Hutton Proof of Claim and Falcon Proof of Claim.  (*See* Ex. 5, ¶¶ 9, 11; Ex. 6, at 3, ¶¶ 2, 4; Ex. 10, ¶¶ 10, 12, 15; Ex. 11 at 3-4, ¶ 3.)[10]

- In resolution of Falcon's SubCon Objection.  (*See* SubCon Motion; SubCon Objection; Conversion Order at 5; Ex. 10, ¶¶ 9, 13-14; Ex. 11 at 3-4, ¶¶ 1-2.)

- Inasmuch as the Trustee would have pursued Bank Claims on the Estates' behalf regardless of receiving any Assignments, for administrative efficiency and convenience. (*See* Ex. 10, ¶¶ 13-14; Ex. 11 at 3-4, ¶¶ 1-2; Complaint, ¶ 258.)

- To resolve disputes between the Trustee and Assignors as to which was the rightful holder of the Bank Claims, how the Bank Claims should be prosecuted, to eliminate the risk, costs and delays attendant to potential litigation and to clearly allocate the Bank Claim proceeds. (*see* Ex. 10, ¶ 22; Ex. 12, ¶ 20).

- To provide the Estates with a path to recovery on the Bank Claims that avoided any *potential Wagoner* and in *pari delicto* defenses banks *may* raise.  (Ex. 8, ¶ 8.)

- To settle the Bank Claims with potential defendants, rather than bringing litigation.  (Ex. 5, ¶ 11; Ex. 8, ¶ 9; Ex. 10, ¶ 15; Ex. 12, ¶ 12.)

Citibank has not come close to demonstrating that *under no set of facts*, could Plaintiff show that suing it was *not* the *sole* purpose – to the exclusion of *any* of the foregoing – for the Assignments.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion.

---

[10]    Curiously, Citibank complains: "Plaintiff has never disputed that Hutton, Falcon, and Taly were harmed by Nissen and has not challenged their claims against the Debtors' estates."  (Memo at 2.)  Obviously, the Assignors could be harmed by *both* Nissen, who ran a Ponzi scheme, *and* Citibank, which aided and abetted – otherwise, no bank could ever aid or abet a fraudster.  In any event, the Trustee would not object to the Hutton Proof of Claim or Falcon Proof of Claim, because the Settlements resolved them.  The Trustee reserved the right to object to the Taly Proof of Claim.

Dated: March 25, 2024
      New York, New York

KASOWITZ BENSON TORRES LLP

By: */s/ Howard W. Schub*
Howard W. Schub (hschub@kasowitz.com)
Michele L. Angell (mangell@kasowitz.com)
Katherine C. Gauthier (kboatman@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800

*Attorneys for Kenneth P. Silverman, Esq.,*
*Chapter 7 Trustee*