UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH P. SILVERMAN, ESQ., The Chapter 7 Trustee of the JOINTLY Administered Estates of National Events Holdings, LLC, and its Affiliated Debtors,

   Plaintiff,

v.

CITIBANK, N.A.,

   Defendant.

22 Civ. 5211 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

Plaintiff Kenneth P. Silverman (the "Trustee") is the Chapter 7 trustee of the jointly administered estates of National Events Holdings, LLC, and its affiliated debtors[1]—collectively, the "Debtors," or the "Debtors' Estates." Compl. 1, ECF No. 81. The Trustee brought this action against Defendant Citibank, N.A. ("Citibank") for allegedly aiding and abetting a "Ponzi scheme" orchestrated by the Debtors' former President and CEO, Jason Nissen. *Id.* at 2–3, ¶ 31. The Trustee asserted causes of action on behalf of the Debtors' Estates, and as the purported assignee of claims belonging to three alleged victims of Nissen's scheme, who are creditors of the Debtors' Estates. *Id.* at 1, ¶¶ 9, 265. The claim on behalf of the Debtors' Estates was dismissed by this Court as barred by the *in pari delicto* doctrine because Nissen's conduct was imputable to the Debtors, and the Trustee stands in the Debtors' shoes. *See Silverman v. Citibank, N.A.*, No. 22 Civ. 5211, 2023 WL 7305243, at *7–9 (S.D.N.Y. Nov. 6, 2023).

---

[1] National Events Intermediate, LLC; National Event Company II, LLC; National Event Company III, LLC; World Events Group, LLC; National Events of America, Inc. ("NEA"); and New World Events Group Inc. Compl. 1.

Now before the Court is Citibank's motion for judgment on the pleadings, arguing that the remaining aiding and abetting claim on behalf of the three victims is void because the assignment of the claim by the victims of Nissen's alleged Ponzi scheme to the Trustee is champertous. Def.'s Mem. Supp. J. Pleadings 1–2, ECF No. 104 ("Def.'s MJOP"). For the reasons below, the motion is **DENIED**.

## BACKGROUND

The facts and procedural history of this matter are comprehensively set forth in the Court's November 6, 2023 Opinion and Order. *See Silverman v. Citibank, N.A.*, No. 22 Civ. 5211, 2023 WL 7305243, at *7–9 (S.D.N.Y. Nov. 6, 2023). The Court assumes the parties' familiarity with the facts and record, and briefly summarizes here only the facts relevant and necessary to explain this decision.

Hutton Ventures LLC ("Hutton"), Falcon Strategic Partners IV, LP and FMP Agency Services, LLC (together, "Falcon"), and Taly USA Holdings Inc. and SLL USA Holdings, LLC (together, "Taly"), were investors in, and alleged victims of, Nissen's Ponzi scheme—making them creditors of the Debtors' Estates. Compl. ¶¶ 9, 12–14, 246–247. Relevant to Citibank's motion is the assignment of these three creditors' claims against Citibank for alleged participation in the Ponzi scheme to the Trustee pursuant to individual debt settlement agreements approved by the bankruptcy court in 2022. *Silverman*, 2023 WL 7305243, at *4; *see also* Def.'s MJOP 5–8. Pursuant to the Hutton settlement, Hutton agreed to: (1) permit the Trustee to use funds that would have otherwise been available for repayment of a secured loan claim, to pay a $150,000 attorney retainer to Kasowitz Benson Torres LLP ("Kasowitz") to pursue claims against Citibank and/or any other banks involved in the scheme (the "Bank Claims"); (2) contribute, transfer, and assign to the Estates all of Hutton's Bank Claims; and (3) waive any claim against the Debtors for repayment of the $150,000 advance to Kasowitz. Pl.'s Opp'n to Def.'s MJOP 7, ECF No. 108

2

("Pl.'s Opp'n").  In return, the Trustee agreed that, *inter alia*, Hutton would receive "a 7% distribution of the gross proceeds resulting from the settlement or litigation of any Bank Claims[.]" *Id.*

Before approving the settlement, the bankruptcy court requested further explanation of the value of the Hutton 7% distribution.  Pl.'s Opp'n 7.  In explaining the need for the assignment of the claim and distribution to Hutton, the Trustee attested to the following:

- No "firm [] would take on the potential Bank [Claims] on a purely contingent basis," but "Kasowitz was ready, willing, and able to serve as special counsel in the Estates' prosecution of the Bank [Claims] on the condition that the firm receive an up front payment of $150,000."

- "The Estates are currently administratively insolvent and the speculative nature of the Bank [Claims] made it unclear if payment of the Kasowitz Retainer was in the best interests of the Estates."

- "Hutton's agreement to forgive $150,000 of monies otherwise due and owing to it in repayment the Hutton DIP Loan, allowed the Estates[] to fund the Kasowitz Retainer without adversely affecting the general unsecured creditors of the Estates."

- "Hutton assumed significant risk as it was foregoing payment of an administrative claim for the possibility of payment on contingent and unliquidated claims."

- "The Bank Litigation is speculative [and] [i]t is difficult to assess the anticipated range of recovery, which could be anywhere from $0 to $70,000,000.  Of course, as most litigations result in settlement at figures 50% or less than the face value of the claims, the anticipated high range of recovery could well be $35,000,000 or less."

- "[The Trustee] agreed to pay Hutton seven percent (7%) of gross recoveries because it . . . compensates Hutton for the money and claims it has turned over . . . yet still allows the Estates to retain the majority of all recoveries from the Bank [Claims] for the benefit of creditors[.]"

Pl.'s Opp'n 7–8; Ex. 8, ECF No. 105.

Subsequently, Falcon and Taly reached debt settlement agreements with the Trustee, and also agreed, *inter alia*, "for the sake of efficiency and administrative convenience, to contribute, transfer and assign to the Estates all of [their respective] Bank Claims."  Pl.'s Opp'n 10–11; Exs.

3

10, 12, ECF No. 105.  In return, the Trustee agreed that Falcon and Taly would each receive "a percentage distribution. . .of the 'net proceeds' of any Bank Claims."[2]  Pl.'s Opp'n 9–11.

## RULE 12(c) STANDARD[3]

"The standard for [addressing] a Rule 12(c) motion for judgment on the pleadings is identical to that for [] a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  On such a motion "courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively*, 6 F.4th at 306.  A motion for judgment on the pleadings is to be granted "only where, on the facts admitted by the non-moving party, the moving party is clearly entitled to judgment." *Transamerica Fin. Life Ins. Co. v. Session*, 10 Civ. 1328, 2010 WL 4273294, at *2 (S.D.N.Y. Oct. 28, 2010) (citing *Sellers*, 842 F.2d at 642).

## DISCUSSION

Citibank argues that the Trustee's taking of the assignments violated the New York champerty statute and that the Trustee consequently may not sue on the assigned claims.  The Trustee counters that it did not violate the statute both because it did not take the assignments with the requisite champertous intent, and because the statute excepts assignments taken in this context.

---

[2] "Net proceeds" meant the gross proceeds of the Bank Claims, less the Contingency Fee and the Hutton 7% Distribution.  Pl.'s Opp'n 11.

[3] All references to Rules are to the Federal Rules of Civil Procedure.

4

After review of the assignments, the history of New York's anti-champerty law, and New York courts' consistently narrow interpretation of that law, the Court concludes that the assigned claims do not violate New York's prohibition against champerty.

**I.    Applicable Law[4]**

Brief background on New York's champerty law is instructive. Champerty is "an acquisition made with the purpose of bringing a lawsuit[.]" *Tr. for Certificate Holders of Merrill Lynch Mortg. Invs. v. Love Funding Corp.*, 13 N.Y.3d 190, 200 (2009) ("*Love Funding*"). "In general, claims or choses in action may be freely transferred or assigned to others." *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997). "However, an assignment governed by New York law must comply with New York's statutory prohibition against champerty." *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 612 F. Supp. 3d 263, 280 (S.D.N.Y. 2020). New York's champerty statute, in pertinent part, states that:

> No person or co-partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly. . .shall solicit, buy or take an assignment of . . . any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon; provided however, that . . . things in action may be solicited, bought, or assignment thereof taken, from any executor, administrator, assignee for the benefit of creditors, trustee or receiver in bankruptcy, or any other person or persons in charge of the administration, settlement or compromise of any estate, through court actions, proceedings or otherwise.

N.Y. Jud. Law § 489(1) ("Section 489").

Pursuant to Section 489, New York courts have deemed an assignment champertous only where the "intent to sue on [a] claim" was the "primary purpose for, if not the sole motivation behind, entering into the transaction." *Justinian Cap. SPC v. WestLB AG, N.Y. Branch*, 28 N.Y.3d 160, 167 (2016) (quoting *Bluebird Partners, L.P. v. First Fid. Bank*, 94 N.Y.2d 726, 736 (2000)).

---

[4] Each of the assignments in question here are governed by New York law. Exs. 6 ¶ 10, 11 ¶ 9, 13 ¶ 7, ECF No. 105. The parties do not dispute this. Def.'s MJOP 9; *see generally* Pl.'s Opp'n.

"[T]he critical issue to assessing the sufficiency of the champerty finding is not the denomination of the [assignee's] intent as 'primary' or 'sole,' but the purpose behind its acquisition of rights that allowed it to sue[.]" *Love Funding I*, 13 N.Y.3d at 198 (quoting *Tr. for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 556 F.3d 100, 111 (2d Cir. 2009)). "Accordingly, when a 'lawsuit is not merely an incidental or secondary purpose of an assignment, but its very essence,' the assignment is champertous." *Sharbat v. Iovance Biotherapeutics, Inc.*, No. 20 Civ. 1391, 2023 WL 34377, at *15 (S.D.N.Y. Jan. 4, 2023) (quoting *Phoenix*, 612 F. Supp. 3d at 281).

However, even when the lawsuit is the primary purpose of the assignment, Section 489 draws a distinction "between 'acquiring a thing in action in order to obtain costs,' which constitutes champerty, 'and acquiring it in order to protect an independent right of the assignee,' which does not." *Tr. for Certificate Holders of Merrill Lynch Mortg. Invs., Inc. v. Love Funding Corp.*, 591 F.3d 116, 120 (2d Cir. 2010) ("*Love Funding II*") (quoting *Love Funding I*, 13 N.Y.3d at 199). Accordingly, an assignment of rights is not champertous "if its purpose is to collect damages, by means of a lawsuit, for losses on a debt instrument in which [the assignee] holds a preexisting proprietary interest." *Love Funding I.*, 13 N.Y.3d at 195. "Moreover, in evaluating the question of an assignment's purpose, courts have explained that when a substantial relationship exists between the assignor and assignee . . . 'there is less reason to be wary that the assignment is designed simply to foment litigation.'" *Sharbat*, 2023 WL 34377, at *15 (quoting *Am. Fun & Toy Creators, Inc. v. Gemmy Indus., Inc.*, No. 96 Civ. 799, 1997 WL 482518, at *4 (S.D.N.Y. Aug. 21, 1997)).

While the doctrine is intended "to prevent or curtail the commercialization of or trading in litigation," *Bluebird*, 94 N.Y.2d at 729, the New York Court of Appeals has continuously made clear that the State's prohibition on champerty has always been "limited in scope and largely

6

directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs[.]" *Love Funding I*, 13 N.Y.3d at 199 (quoting *Bluebird*, 94 N.Y.2d at 734).  It has also said that "consistent with the limited scope of the champerty doctrine," while it is "willing to find that an action is *not* champertous as a matter of law, it has been hesitant to find that an action *is champertous as a matter of law*." *Bluebird*, 94 N.Y.2d at 734–35 (internal citations omitted).

## II.     Application[5]

Citibank has not established as a matter of law—as it must when seeking judgment on the pleadings—that the Trustee took the assignments with the primary purpose of litigating them merely to obtain costs.  Citibank contends that the Trustee has failed to identify a proper primary purpose for the assignments, and further, that the assignments do not fall within an exception to New York's champerty statute because the Trustee did not have a preexisting interest in the claims against Citibank.  *See* Def.'s Reply Mem. in Supp. of J. Pleadings 7-10, ECF No. 111 ("Def.'s Reply").

But it is not clear from the pleadings that litigation was the primary purpose of the assignments.  As alleged in the Complaint, "[f]or the sake of efficiency and administrative convenience," the creditors "assigned to the Trustee for the benefit of the Company's estates and its creditors any and all claims they possess against Citibank for aiding and abetting Nissen's fraud." Compl. ¶ 258.  The Trustee contends that the assignments were merely one component of "comprehensive bankruptcy Settlements" that "resolved various claims between and among the

---

[5] In reviewing Citibank's motion, the Court considered the pleadings and exhibits 6, 8, 11, and 13, attached to the Gueli Declaration submitted in support of Citibank's motion.  *See* ECF No. 105. The Court is permitted to take notice of the exhibits in reaching its conclusion because the exhibits are integral to the pleadings and were part of the bankruptcy court proceeding.  See *Lively*, 6 F.4th at 306 (noting that courts may consider documents that are integral to the pleading as well as matters of which the court may take judicial notice).  The parties both rely on the Gueli Declaration.  Pl.'s Opp'n 1 n.2, 22; Def.'s MJOP 4 n.2.

Trustee . . . and the Assignors, including . . . disputes concerning who owned the Bank Claims, how to prosecute them and how to allocate proceeds thereof." Pl.'s Opp'n 22. The Trustee also contends that by entering the Settlements, he was "discharging his fiduciary duties to the Estates to maximize recoveries for creditors." *Id.* at 22–23. That is, the assignments are alleged to have been one part of broader settlement agreements, as a means of settling the Estates' debts and maximizing recovery for them—and thereby, for the Estates' creditors. Moreover, the Trustee notes that the assignments were not solely for the purpose of bringing suit, but seemingly also to investigate the viability of the Estates' and their creditors' claims against Citibank. *Id.* at 22 n.7. As the Trustee explains, the primary purpose of those transactions was to create efficiencies for the Estates' creditors, and/or to assist settlement negotiations—not for the purpose of accumulating claims for the sake of litigation. *Compare with Frank H. Zindle, Inc. v. Friedman's Express, Inc.*, 17 N.Y.S.2d 594, 594 (App. Div. 1940) (finding assignment champertous where plaintiff's "only interest in the assignment was to bring a suit thereon and to earn a fee from the proceeds in the event that the prosecution of the suit was successful"), *and Aretakis v. Caesars Ent.*, No. 16 Civ. 8751, 2018 WL 1069450, at *10 (S.D.N.Y. Feb. 23, 2018) (granting a motion to dismiss an assigned contract claim on champerty grounds, reasoning that there was no other consideration for the assignment other than to obtain a money judgment, and no preexisting interest in the claim).

While perhaps the ultimate value of the assignments may come from successful litigation, this demonstrates only that a possible contingent purpose of the transactions was to sue on the assigned claims. *See Bluebird*, 94 N.Y.2d at 735 ("The statute does not embrace a case where some other purpose induced the purchase, and the intent to sue was merely incidental and contingent." (citation omitted)). But it does not demonstrate that the settlements or assignments

8

were made for the "sole" or "primary" purpose of litigation.[6] And at this stage, per the facts alleged by the Trustee as to the primary purpose of the assignments, Citibank has not established that it is entitled to judgment on the pleadings.

Because Citibank has failed to establish at this point that the Trustee's primary purpose in taking the assignments was champertous, it is not necessary to determine whether the assignee—here, the Trustee—had a preexisting or proprietary right in the assignments. However, the Court concludes that, even if Citibank had established that the acquisitions were made with the primary purpose of bringing a lawsuit for gains, it would still have failed to satisfy its burden on this motion, because it has not established that the Trustee lacked a preexisting proprietary interest in the assignments. *See Love Funding I*, 13 N.Y.3d at 195; *Sharbat*, 2023 WL 34377, at *15.

"A Chapter 7 trustee is charged with the duty to 'collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest.'" *In re Balco Equities Ltd., Inc.*, 323 B.R. 85, 98 (S.D.N.Y. 2005) (quoting 11 U.S.C. § 704(1)); *see also Germain v. Conn. Nat. Bank*, 988 F.2d 1323, 1330 n.8 (2d Cir. 1993) (stating that a Chapter 7 trustee "owes a fiduciary duty . . . to the creditors as a group"). "As an officer of the Court and as a representative of the Debtor's creditors, the Trustee has a duty to realize the maximum return for the estate for further distribution to the Debtor's creditors." *In re Balco Equities*, 323 B.R. at 98.

---

[6] Citibank argues that even if Hutton and Falcon's assignments are not champertous, Taly's must be because the assignment of Taly's Bank Claims were not part of a broader settlement agreement. Def.'s Reply 7. The Trustee asserts that "the Trustee and Taly had not resolved [their broader settlement] by the date of the Complaint," but that "Taly also agreed, for the sake of efficiency and administrative convenience, to . . . assign to the Estates all of Taly's Bank Claims." Pl.'s Opp'n 11–12. Absent evidence to the contrary, the Trustee's representation is sufficient at this stage to indicate that Taly's assignment was made as part of broader settlement negotiations—even if the settlement was not final at the time of assignment.

9

Citibank argues this relationship between the Trustee and the creditors who assigned the rights at issue is not sufficient to demonstrate a preexisting proprietary interest in the assignments, because the "substantial relationship" cases require a principal-agent like relationship or a relationship in which one party owns the other. *See* Def.'s Reply 9–10 n.7. To be sure, Citibank is correct that relevant caselaw identifies relationships involving ownership between assignor and assignee as examples of a "substantial relationship" that can form the basis for an exception to the champerty statute. But there is no clear caselaw from the New York Court of Appeals or the Second Circuit that affirmatively holds that this is the *only* kind of "substantial relationship" sufficient for purposes of the champerty statute—or that states that, as a matter of law, a trustee-creditor relationship is not sufficient. In the absence of such caselaw, the Court cannot, at this stage, deem the Trustee-creditor relationship insufficient. At this juncture, the Trustee's assertion of its duty to maximize recovery for the Estates' creditors, Pl.'s Opp'n 22–23, appears to create a sufficient relationship—a quasi- or indirect interest in the alleged claims against Citibank—to survive dismissal on the pleadings. As the Trustee explains, the creditors assigned rights to their claims to make the proceedings against Citibank (on behalf of the creditors) more efficient, given the shared interest in the value of the Debtors' Estates. Compl. ¶ 258. Assuming this is true (as the Court must, at this stage of the proceedings), the assignments do not trigger concerns that they were "designed simply to foment litigation." *Sharbat*, 2023 WL 34377. Accordingly, Citibank has failed to establish, on the pleadings, that the relationship between the Trustee and the creditors cannot form the basis for the relevant exception to the champerty statute.

"In short, the champerty statute does not apply when the purpose of an assignment is the collection of a legitimate claim." *Love Funding I*, 13 N.Y.3d at 201. "What the statute prohibits . . . is the purchase of claims with the intent and for the purpose of bringing an action that [the assignee] may involve parties in costs and annoyance, where such claims would not be prosecuted

10

if not stirred up in an effort to secure costs." *Id.* (internal quotation marks omitted and alterations accepted). At this stage, Citibank has not established that this is the case here. Accepting the Trustee's allegations as true, the assignments are not champertous as a matter of law. *Semi-Tech Litig., LLC v. Bankers Tr. Co.*, 272 F. Supp. 2d 319, 331 (S.D.N.Y. 2003) (noting that the New York Court of Appeals has been hesitant to find an action champertous as a matter of law). Where, as here, a plausible basis is advanced that the sole or primary purpose was not the commencement of a lawsuit, judgment on the pleadings must be denied. *Id.*[7]

## CONCLUSION

For the reasons stated above, Citibank's motion for judgment on the pleadings is **DENIED**. The Clerk of Court is respectfully directed to terminate ECF Docket No. 103.

SO ORDERED.

Dated: September 27, 2024
New York, New York

DALE E. HO
United States District Judge

---

[7] Because the motion fails on the merits, the Court does not address the Trustee's alternative *res judicata* argument.