# Exhibit 99

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
KENNETH P. SILVERMAN, ESQ., THE
CHAPTER 7 TRUSTEE OF THE JOINTLY
ADMINISTERED ESTATES OF NATIONAL
EVENTS HOLDINGS, LLC, AND ITS
AFFILIATED DEBTORS,

               Plaintiff,                    Case No. 1:22-cv-05211-DEH

      -against-

CITIBANK, N.A.,

               Defendant.

-----------------------------------------------------------------X

# Expert Report of Raymond T. Sloane

## March 5, 2025

## TABLE OF CONTENTS

I.    BACKGROUND ............................................................................... 3

      A.    INTRODUCTION AND QUALIFICATIONS ........................... 3

      B.    SCOPE OF ENGAGEMENT .................................................. 4

II.   SUMMARY OF EXPERT OPINION CONCLUSIONS ............................ 5

III.  DOCUMENTS AND OTHER INFORMATION RELIED UPON ............................ 5

IV.   FACTUAL BACKGROUND ................................................................ 6

      A.    OVERVIEW OF THE COMPANY ......................................... 6

      B.    CITIBANK, N.A. ............................................................... 7

      C.    OVERVIEW OF THE LENDERS ......................................... 11

            1.    Hutton Ventures LLC ............................................ 12

            2.    Falcon Strategic Partners IV, LP ......................... 13

            3.    Taly USA Holdings Inc. and SLL USA Holdings, LLC .................. 15

V.    DETERMINATION OF ECONOMIC DAMAGES ............................... 17

      A.    APPROACH TO DETERMINING DAMAGES ......................... 17

      B.    DETERMINATION OF THE LENDERS' DAMAGES ............... 17

            1.    Hutton Ventures LLC ............................................ 17

            2.    Falcon Strategic Partners IV, LP ......................... 19

            3.    Taly USA Holdings Inc. and SLL USA Holdings, LLC .................. 22

VI.   CONCLUSION – EXPERT OPINION .................................................. 26

VII.  LIMITING FACTORS AND OTHER ASSUMPTIONS ........................... 26


APPENDICES

      A.    Curriculum Vitae of Raymond T. Sloane ................................ A-1

      B.    Documents and Other Information Relied Upon ..................... B-1


EXHIBITS

      1.    Hutton Ventures LLC Damages Schedule ...................................

      2.    Falcon Tracing and Damages Schedules .....................................

      3.    Falcon Senior Secured Notes Damages Schedule .......................

      4.    Falcon Senior Unsecured PIK Notes Damages Schedule ...........

      5.    Summary of Taly USA Holdings Promissory Notes Issued ...........

6.     Taly USA Holdings Inc. Damages Schedule.................................................

# I. BACKGROUND

## A. INTRODUCTION AND QUALIFICATIONS

1.     I, Raymond T. Sloane, have more than 40 years of financial consulting experience and, for the past 30 years, have specialized in forensic accounting, damage claims, and business valuations.  I have provided expert witness testimony in cases involving forensic accounting investigations, tracing of cash flows, economic losses, solvency determinations and substantive consolidation, business valuation, and complex technical accounting issues. In addition to being a Certified Public Accountant ("CPA") licensed in the State of New York, I am a Certified Fraud Examiner ("CFE"), am Certified in Financial Forensics ("CFF") and Accredited in Business Valuation ("ABV") by the American Institute of Certified Public Accountants and am a Certified Anti-Money Laundering Specialist ("CAMS"). I am also an attorney admitted to practice in New York.[1]  My Curriculum Vitae ("CV") is attached as Appendix A.

2.     I received my Bachelor of Business Administration ("BBA") degree from Hofstra University, Magna Cum Laude, (major in Accounting) in 1977, and my Juris Doctor degree from Fordham University School of Law in 1984. I am current with respect to my continuing education requirements for all my professional designations and credentials.

3.     Throughout my 30 years of practicing litigation consulting, I have had leadership roles in some of the largest and most challenging forensic accounting investigations in the United States and have performed damage analyses and business

---

[1] Although I am an attorney, I am not engaged in the practice of law and am not engaged to render, and am not rendering, any legal opinions herein; rather, I am only rendering opinions as an expert in the field of forensic accounting and related financial issues.

valuations in a wide variety of industries, including many involving investments.  Please consult my CV for additional details (Appendix A).

## B. SCOPE OF ENGAGEMENT

4.     I have been retained by Counsel representing the Chapter 7 Trustee ("Trustee") of the Jointly Administered Estates of National Events Holdings, LLC ("NEH"); National Events Intermediate, LLC; National Event Company II, LLC; National Event Company III, LLC; World Events Group, LLC; National Events of America, Inc. ("NEA"); and New World Events Group Inc. ("NWEG" and collectively, the "Company"). The Trustee seeks to hold Citibank, N.A. ("Citibank") responsible for aiding and abetting a fraud and Ponzi Scheme orchestrated by Jason Nissen, the former Chief Executive Officer of the Company.  I have been retained to determine the economic losses sustained by Hutton Ventures LLC ("Hutton"), by FMP Agency Services, LLC, for itself and on behalf of Falcon Strategic Partners IV, LP (together, "Falcon") and by Taly USA Holdings Inc. and its wholly-owned subsidiary SLL USA Holdings, LLC (together, "Taly") as a result of these entities lending funds to Mr. Nissen and the Company.

5.     This report summarizes my findings to date.  All supporting work and analyses were prepared by me and personnel of The Michel-Shaked Group working under my supervision and direction. I am not opining on liability or entitlement issues, and I reserve the right to amend or update this report and any opinions or conclusions, should additional documents or information become available.  I am being compensated at a rate of $650 per hour.  The rates of the other personnel working on this engagement range from $110 to $600 per hour.  Payment of such fees is not contingent upon my opinion expressed herein or upon the outcome of this litigation.

## II.  SUMMARY OF EXPERT OPINION CONCLUSIONS

6.    The opinions expressed in this report are informed by my professional experience, knowledge, skills, training, and educational background.  Based upon my analysis of the documents and information provided to me, and as explained in greater detail throughout this report, I have concluded that:

- Hutton suffered economic damages of at least $9,356,617.

- Falcon suffered economic damages of at least $47,154,651; and

- Taly suffered economic damages of at least $22,225,414.

## III.  DOCUMENTS AND OTHER INFORMATION RELIED UPON

7.    In my review and analysis of the issues raised in this case, I have relied upon the following categories of documents produced in this litigation:

- Legal filings;

- Deposition transcripts and exhibits;

- Bank statements for the various accounts that Mr. Nissen and the Company maintained at Citibank and Wells Fargo;

- Reports, emails, and memoranda prepared by analysts in Citibank's Financial Intelligence Unit ("FIU") and other Citibank personnel in its Compliance group;

- Proofs of Claim filed by Hutton, Falcon, and Taly; and

- Loan and interest schedules for Hutton, Falcon, and Taly.

8.     Appendix B is a list of the documents and other information relied upon by me in the course of performing work in this matter.  I may further revise or supplement this report if additional information is provided and/or further analysis is performed.

9.     In preparing this report, I have assumed that (a) accounting records as provided are accurate, except as otherwise noted, and (b) all relevant and available documents were provided to me.

## IV.  FACTUAL BACKGROUND

### A. OVERVIEW OF THE COMPANY

10.   The Company was formed in 2006 and provided "ticketing services for all concert, theater and sporting event tickets, as well as various V.I.P. hospitality packages that deliver exclusive access to big name events, including hotels, celebrity meet and greets and exclusive parties."[2]  NEH, the parent company, was owned 75% by NEA, 24% by Falcon Strategic Partners IV, LP, and 1% by NWEG.[3]  NEA and NWEG were owned by Mr. Jason Nissen.

11.   Mr. Jason Nissen was the Chief Executive Officer and President of the Company.  On May 31, 2017, he was arrested and charged by the Federal Bureau of Investigation ("FBI") with allegedly operating what the FBI characterized as a Ponzi

---

[2] In re: National Events Holdings, LLC et al., United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 17-11556 (JLG), Declaration of Timothy Puopolo In Support of First Day Motions, June 5, 2017, p. 2.

[3] In re: National Events Holdings, LLC et al., United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 17-11556 (JLG), Declaration of Timothy Puopolo In Support of First Day Motions, June 5, 2017, pp. 2 - 3.

scheme.[4]  After learning of Mr. Nissen's fraudulent activities, the Company terminated

him.  On May 11, 2017, the Company retained RAS Management Advisors, LLC

("RAS") to provide restructuring services.[5]

12.    On March 28, 2018, "Nissen pled guilty … to defrauding victims of more

than $60 million by falsely representing that he was using the victims' money to further a

profitable multimillion-dollar wholesale ticket business."[6]  On September 6, 2019, Mr.

Nissen received a prison sentence of 27 months for "defrauding at least five victims of

more than $70 million in loans that he claimed were being used to grow his ticket resale

business but were in fact used largely to pay down old debt he could not otherwise

afford to service"[7] as well as for his personal benefit and that of his family.

## B. Citibank, N.A.

13.    In conducting his business, Mr. Nissen and the Company maintained at

least 12 different bank accounts at Citibank.  Citibank maintains a FIU housed within its

compliance group, which conducts internal Anti-Money Laundering ("AML")

investigations, among other assessments, to protect the bank from potential violations

of laws and regulations, as well as reputational risk.[8]

---

[4] In re: National Events Holdings, LLC et al., United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 17-11556 (JLG), Declaration of Timothy Puopolo In Support of First Day Motions, June 5, 2017, p. 4.

[5] In re: National Events Holdings, LLC et al., United States Bankruptcy Court, Southern District of New York, Chapter 11, Case No. 17-11556 (JLG), Declaration of Timothy Puopolo In Support of First Day Motions, June 5, 2017, p. 4.

[6] "CEO And President of Premium Ticket Resale Business Pleads Guilty To Running Multimillion-Dollar Ponzi Scheme," U.S. Department of Justice Press Release, March 28, 2018, https://www.justice.gov/usao-sdny/pr/ceo-and-president-premium-ticket-resale-business-pleads-guilty-running-multimillion (last accessed February 14, 2025).

[7] https://casetext.com/case/united-states-v-nissen-6 (last accessed February 14, 2025).

[8] Deposition Transcript of Katelyn Boulden-Verdelli, August 16, 2024, p. 64.

14.    Investigations can be triggered by Citibank's automated systems designed to generate alerts based upon activity in its customers' accounts or by the receipt of a subpoena from a governmental body or regulator.  In the case of Mr. Nissen and the Company, Citibank's FIU AML group conducted multiple AML reviews and/or remonitorings, generating detailed internal reports.  Such AML reviews took place throughout mid-2016 and 2017, covering various periods from as far back as June 2013 through March 2017.[9]  These reviewers' reports concluded that the accounts should be closed based upon the risks identified.  The relationship manager and business banker for the accounts, Jack Crowley and Joshua Santana, respectively, contested those closure recommendations for months, during which time the accounts remained open and active.[10]

15.    One such FIU investigation was conducted by Zachary Durbin, under the supervision of Nicole Salvati, covering account activity during the period June 27, 2013 to July 27, 2016.  The case was opened in response to the receipt of a subpoena for records of Jason Nissen, NEA, and World Events Group from the United States District Court for the Southern District of New York for alleged violation of Title 18, United States Code Sections 1341 (frauds and swindles), 1343 (fraud by wire, radio, or television), 1346 (definition of 'scheme or artifice to defraud'), 1956 (laundering of monetary instruments), and 1957 (engaging in monetary transactions in property

---

[9] For example, *see* Closeout Recommendation Memo authored by Jennifer Figuereo, December 16, 2016 (CBNA00005041_001 at 5055_001 to 5056_001, Nicole Salvati Exhibit 18).

[10] For example, *see* Email from Jack Crowley to Jennifer Figuereo dated December 13, 2016 (CBNA00005041_001 at 5042_001, Nicole Salvati Exhibit 18).

derived from specified unlawful activity), issued on April 17, 2015.[11]  Several system-generated alerts were, over time, consolidated into and formed part of Mr. Durbin's review and assessment.  As part of Mr. Durbin's review, he observed that these accounts included thousands of transactions totaling $270 million.[12]  His observations and conclusions are detailed in his report within the FIU internal reporting system and are summarized in the Closeout Recommendation email that he sent to Citibank's FIU Post Investigations Team on August 30, 2016.[13]  Among the reasons cited for Mr. Durbin's recommendation that the accounts be closed are:

- Activity represents "an overall rapid movement of funds between the accounts as well as layering."

- Customer is "transacting with multiple parties involved in negative news involving corruption and bribery of government officials…"

- The funds "enter the accounts as incoming wires and check deposits with individuals and entities with an unsubstantiated relationship and purpose of the transactions."

- The "frequency and amounts [of the transactions] appear excessive and unusual."

- The "customer…makes large and frequent cash deposits derived from unknown sources.  Funds are then distributed among the large number of

---

[11] Financial Intelligence Unit General Investigations, Sensitive Case Review prepared by Zachary Durbin, August 10, 2016, CBNA00009869 at 9881, Nicole Salvati Exhibit 12).

[12] Deposition Transcript of Zachary Durbin, May 27, 2022, p. 87; CBNA00002390-00002393.

[13] Email from Zachary Durbin to FIU Post Investigations, August 30, 2016 (CBNA00009869 - 9870, Nicole Salvati Exhibit 12).

accounts as internal transfers, wires and checks occurring multiple times a day through multiple accounts."

- The funds "also leave the account as large and frequent cash withdrawals which appear unusual."

16.   In an email dated December 16, 2016, Jennifer Figuereo of the FIU AML Investigations group sent Mr. Crowley the Closeout Recommendation Memo, citing the findings and observations from the multiple AML reviews performed, and concluding that there are "Unmitigated AML Concerns".[14]

17.   Following up on Mr. Durbin's report, Katelyn Boulden, another Level 2 Citibank FIU Analyst in the AML group, was assigned to perform a remonitoring of the accounts of Mr. Nissen and the Company.  Ms. Boulden's investigation and assessment covered the period from July 28, 2016 (the day after Mr. Durbin's analysis period) to March 29, 2017.[15]  Ms. Boulden's Case Report consists of 191 pages and covers 20 alerts collapsed into her assessment.  Ms. Boulden's report is consistent with the observations made by Mr. Durbin and was summarized in an email to her supervisor, Brian Verdelli, on April 13, 2017 with the subject:  "Senior Management Escalation."[16] In addition to the rapid movement of funds and excessive transfers across Mr. Nissen's personal and business accounts multiple times per day, "which appears indicative of attempts at layering funds," she expanded on negative news reports related to several

---

[14] Closeout Recommendation Memo authored by Jennifer Figuereo, December 16, 2016 (CBNA00005041_001 at 5056_001, Nicole Salvati Exhibit 18).

[15] Financial Intelligence Unit General Investigations Report prepared by Katelyn Boulden, March 29, 2017 (CBNA00008428 at 8430, Nicole Salvati Exhibit 19).

[16] Financial Intelligence Unit General Investigations Report prepared by Katelyn Boulden, March 29, 2017 (CBNA00008428, Nicole Salvati Exhibit 19).

counterparties. Ms. Boulden also noted that "the customer interacted with several counterparties not expected for a business operating in the ticket sales industry…"[17] She also stated that although the first account closeout was disputed and the accounts are currently still open, a "follow-up account closure recommendation will be requested" based upon her findings.[18]

18. Based upon two subpoenas from the U.S. Department of Justice received by Citibank in May of 2017, Mr. Oleg Kutynak of Citibank's Financial Intelligence Unit / General Investigations group conducted a Remonitoring 2 assessment of Mr. Nissen and the Company. His 37-page Sensitive Case Review report (much of which was redacted) was dated September 21, 2017 and summarizes the findings of the previous AML assessments.[19] By this time, Mr. Kutynak (a) was aware that Mr. Nissen had admitted to his investors in early May 2017 that he had defrauded them and was running a Ponzi Scheme using his various companies and affiliates and (b) was aware that Taly had filed a lawsuit. Mr. Kutynak reported that, with the exception of two accounts which appear to have been deliberately kept open due to legal attachments, all of Mr. Nissen's accounts have been closed.

### C. OVERVIEW OF THE LENDERS

19. Hutton, Falcon and Taly each advanced loans to the Company and as described in more detail below, each of these lenders suffered economic damages as a

---

[17] Financial Intelligence Unit General Investigations Report prepared by Katelyn Boulden, March 29, 2017 (CBNA00008428, Nicole Salvati Exhibit 19).

[18] Financial Intelligence Unit General Investigations Report prepared by Katelyn Boulden, March 29, 2017 (CBNA00008428, Nicole Salvati Exhibit 19).

[19] Financial Intelligence Unit General Investigations, Sensitive Case Review prepared by Oleg Kutynak, September 21, 2017 (CBNA00007498_001, Nicole Salvati Exhibit 20).

result of Mr. Nissen's Ponzi Scheme. Each of the lenders assigned its claim against Citibank, for allegedly aiding and abetting Mr. Nissen's fraud, to the Trustee.

### 1. Hutton Ventures LLC

20.    Hutton is a New York, NY based business that provides financing to privately held companies. Since its formation in 2011, Ron Friedman has been the Chief Executive Officer of Hutton.[20] On July 6, 2016, Hutton, Mr. Nissen, and NEA entered into a Loan and Credit Agreement whereby Hutton agreed to advance up to $3,000,000 to Mr. Nissen and NEA who were jointly and severally liable for all amounts advanced to them by Hutton.[21] In accordance with the Loan and Credit Agreement, Mr. Nissen and NEA were permitted to request loan advances and were required to repay those advances. The use of loan proceeds was "[f]or business purposes only and not for personnel [sic] use. The acquisition of tickets."[22]

21.    On August 1, 2016, the Loan and Credit Agreement was amended to increase the $3,000,000 maximum advance to $5,000,000.[23] Although the maximum advance was raised to $5,000,000, Hutton had the discretion to advance funds in excess of that amount[24] and as discussed below, more than $5,000,000 was advanced to Mr. Nissen and the Company.

---

[20] Deposition Transcript of Ron Friedman, June 27, 2024, p. 12.

[21] Loan and Credit Agreement between Hutton Ventures LLC, Jason Nissen, and National Events of America, Inc., July 6, 2016 (attached as Exhibit A to the Proof of Claim filed January 18, 2018).

[22] Loan and Credit Agreement between Hutton Ventures LLC, Jason Nissen, and National Events of America, Inc., July 6, 2016, Schedule A.

[23] Amendment No. 1 to the Loan and Credit Agreement, August 1, 2016 (attached as Exhibit D to the Proof of Claim filed January 18, 2018).

[24] Loan and Credit Agreement between Hutton Ventures LLC, Jason Nissen, and National Events of America, Inc., July 6, 2016 (attached as Exhibit A to the Proof of Claim filed January 18, 2018).

22.   On May 10, 2017, Mr. Nissen confessed to Mr. Friedman that he was a fraud and had been operating a Ponzi Scheme and that he would not be able to repay Hutton.[25]  Following Mr. Nissen's confession, Hutton sent a Default Letter to Mr. Nissen and NEA notifying them that pursuant to the Loan and Credit Agreement as amended, $9,246,210.89 in principal amount and $110,405.94 in interest was due as of May 25, 2017.[26]

23.   On January 18, 2018, Hutton filed an Official Form 410 Proof of Claim ("Hutton Proof of Claim") in the amount of $9,356,616.62 including interest and other charges.[27]

24.   On March 28, 2018, Counsel for Hutton confirmed these amounts in a confidential letter to the U.S. District Attorney's Office for the Southern District of New York in response to its request.[28]

## 2.  Falcon Strategic Partners IV, LP

25.   Founded in 2001, Falcon is an investment firm that raises capital from limited partners to invest in companies.[29]  During the period July 6, 2015 to April 11, 2017, Falcon advanced funds in the form of both Senior Secured and Senior Unsecured PIK[30] Notes to Mr. Nissen and the Company.  The Senior Secured loans were issued at

---

[25] Deposition Transcript of Ron Friedman, June 27, 2024, pp. 82 – 85.

[26] Default Letter sent by Hutton Ventures LLC to National Events of America, Inc. and Jason Nissen, May 25, 2017 (attached as Exhibit E to the Proof of Claim filed January 18, 2018).

[27] National Events of America, Inc., Debtor - Claim No. 28-1, January 18, 2018, p. 2. Note: the Proof of Claim amount is slightly different than the total of $9,356,616.83 referenced in the May 25, 2017 Default Letter.

[28] Alston & Bird letter addressed to AUSA Lara Pomerantz, March 28, 2018, Summary Chart (CH7TRUSTEE_0011163 at 0011169).

[29] Deposition Transcript of Jonathan Moses, August 12, 2024, pp. 28 – 30.

[30] PIK refers to Payment-in-Kind.

a 1.5% discount to par value, meaning that for every $985 Falcon advanced to Mr. Nissen and the Company, they were required to repay $1,000 plus interest. Interest on the loans was generally 10% cash and 1% PIK. If the 1% PIK interest was not paid, then that portion of the interest was added to the outstanding principal balance. Table 1 provides a summary of the Senior Secured loans.

Table 1 – Summary of Senior Secured Notes Advanced to Nissen Entities

|  | Original Agreement | First Amendment | Second Amendment | Third Amendment | Fourth Amendment |
|---|---|---|---|---|---|
| Face Value | $12,500,000 | $ 3,750,000 | $ 6,250,000 | $ 2,500,000 | $ 4,000,000 |
| Origination Date | 07/06/15 | 08/20/15 | 11/23/15 | 01/13/16 | 04/11/17 |
| Maturity Date | 07/06/20 | 07/06/20 | 07/06/20 | 07/06/20 | 07/06/20 |
| Interest Rate: Cash | 10% | 10% | 10% | 10% | 18% |
| Interest Rate: PIK | 1% | 1% | 1% | 1% | 0% |
| Interest Rate: Default | 2% | 2% | 2% | 2% | 2% |
| Interest Methodology - Month | 30 | 30 | 30 | 30 | 30 |
| Interest Methodology - Year | 360 | 360 | 360 | 360 | 360 |
| Compounding | Quarterly | Quarterly | Quarterly | Quarterly | Monthly |

26.    In addition to the original agreement and four amendments, on June 5, 2017, Falcon entered into the Fifth Amendment to the Purchase Agreement. The Fifth Amendment to the purchase agreement outlined an aggregate principal amount of $108,572. The use of proceeds included payment of invoiced amounts and retainer to RAS for providing restructuring services as previously discussed.[31] This amount is included in the Falcon Proof of Claim and in my damages analysis.

27.    The Senior Unsecured PIK Notes were also issued at a 1.5% discount to par value. Interest on these Notes was 8% PIK. Mr. Nissen and the Company did not pay the PIK interest. Thus, the PIK interest was added to the outstanding principal balance of the loan. Table 2 provides a summary of the Senior Unsecured Notes.

---

[31] National Events Intermediate, LLC, Debtor - Claim No. 6-1, November 6, 2017, pp. 176-186.

Table 2 – Summary of Senior Unsecured PIK Notes Advanced to Nissen Entities

|  | Original Agreement | First Amendment | Second Amendment | Third Amendment |
|---|---|---|---|---|
| Face Value | $ 7,500,000 | $ 2,250,000 | $ 3,750,000 | $ 1,500,000 |
| Origination Date | 07/06/15 | 08/20/15 | 11/23/15 | 01/13/16 |
| Maturity Date | 07/06/20 | 07/06/20 | 07/06/20 | 07/06/20 |
| Interest Rate: Cash | 0% | 0% | 0% | 0% |
| Interest Rate: PIK | 8% | 8% | 8% | 8% |
| Interest Rate: Default | 2% | 2% | 2% | 2% |
| Interest Methodology - Month | 30 | 30 | 30 | 30 |
| Interest Methodology - Year | 360 | 360 | 360 | 360 |
| Compounding | Quarterly | Quarterly | Quarterly | Quarterly |

28.    On November 6, 2017, Falcon filed an Official Form 410 Proof of Claim ("Falcon Proof of Claim") in the amount of $47,154,737.60. The portion of the claim that is secured is $29,872,732.70 and the portion of the claim that is unsecured is $17,282,004.90.[32]

### 3.  Taly USA Holdings Inc. and SLL USA Holdings, LLC

29.    Taly, owned by Yaron Turgeman, is a diamond and jewelry wholesaler and is also a passive investor in real estate transactions.[33]  From January 2012 through November 2013, Taly and Mr. Nissen had entered into a number of event-specific loans including sporting, music, and other types of events.[34]  Those loans were repaid.

30.    Beginning in June 2016, the lending relationship resumed when Mr. Nissen and the Company entered into several event-specific loans with Taly.[35]  For the period June 2016 through March 2017, Taly and/or its wholly-owned subsidiary SLL USA

---

[32] National Events Intermediate, LLC, Debtor - Claim No. 6-1, November 6, 2017, p. 2 of 378.

[33] Deposition Transcript of Guy Tanne, December 6, 2024, pp. 26 – 27.

[34] Deposition Transcript of Guy Tanne, December 6, 2024, p. 36.

[35] In re: National Events of America, Inc. et al., United States Bankruptcy Court, Southern District of New York, Chapter 11 Case, Case No. 17-11798 (JLG), Examiner's Report, January 4, 2018, p. 10 (Guy Tanne Deposition Exhibit 1)

Holdings, LLC ("SLL") entered into 30 Promissory Notes that provided Mr. Nissen and the Company with funds to purchase event-specific tickets for resale purposes.[36]  Each Promissory Note specified the event for which the capital provided by Taly and/or SLL was to be used to purchase tickets.  For example, the $1,000,000 Promissory Note issued on June 29, 2016, was to be used "to purchase tickets to the 'Hamilton' Show playing at The PrivateBank Theatre in Chicago."[37]  Exhibit 5 provides a summary of the Promissory Notes.

31.    On May 7, 2017, Mr. Nissen went to Mr. Turgeman's home and confessed that he had defrauded investors including Taly and his ticket reselling business was a Ponzi Scheme.  On the following day, Mr. Nissen met Mr. Turgeman and Taly's Chief Financial Officer, Guy Tanne,[38] at Taly's offices where he confessed again to his fraud.[39]  On May 26, 2017, Taly filed a complaint against Mr. Nissen and the Company seeking damages.[40]  On November 10, 2017, Taly filed an Official Form 410 Proof of Claim ("Taly Proof of Claim") in the amount of $25,135,303.53.[41]  The total claim is comprised of $16,135,303.53 in advances Taly made that Mr. Nissen and the Company failed to repay and $9,000,000 in guaranteed profits that also were not paid.[42]

---

[36] As seen in Exhibit 5, Taly made 32 separate loans to Nissen. The advances of $445,000 and $525,000 were not evidenced by a Promissory Notes.

[37] Promissory Note between National Events of America, Inc. and Taly USA Holdings Inc., $1,000,000, June 29, 2016 (Taly-0000448 – 449).

[38] Deposition Transcript of Guy Tanne, December 6, 2024, p. 12.

[39] Deposition Transcript of Guy Tanne, December 6, 2024, p. 20.

[40] Taly USA Holdings Inc., and SLL USA Holdings, LLC v. Jason Nissen et al., Verified Complaint, Index No. 652865/2017, May 26, 2017.

[41] National Events Holdings, LLC, Debtor - Claim No. 21-1, November 10, 2017, p. 2 of 3.

[42] Rider to Proof of Claim filed by Taly USA Holdings Inc. and SLL USA Holdings, LLC, November 10, 2017, p. 1 of 57, and Verified Complaint, Taly USA Holdings Inc. and SLL USA Holdings, LLC v. Jason Nissen et al., May 26, 2017, Exhibit A.

## V.  DETERMINATION OF ECONOMIC DAMAGES

32.    The following section of this report describes the steps I took to determine the economic damages suffered by Hutton, Falcon and Taly.

### A. APPROACH TO DETERMINING DAMAGES

33.    In order to determine economic damages, I first checked the underlying calculations and support for each of the transactions comprising the Proofs of Claim filed by Hutton, Falcon and Taly.  In this regard, I started with a review of the Proofs of Claim and the underlying schedules produced by Hutton, Falcon and Taly. When necessary, I made corrections to accrued interest and payments made by Mr. Nissen and the Company that were not included in the Proofs of Claim calculations, and any other discrepancies that I observed.  The following describes in detail the procedures I took in determining the economic damages for each of the three lenders.

### B. DETERMINATION OF THE LENDERS' DAMAGES

#### 1.  Hutton Ventures LLC

34.    As noted above, Hutton filed a Proof of Claim in the amount of $9,356,616.62.  Following my review of the Hutton Proof of Claim, and the deposition transcripts of Mr. Friedman and Hutton Associate, Gregory Preis,[43] I reviewed the Lending Period Analysis attached to the December 11, 2017 letter Alston & Bird addressed to William C. Heuer,[44] and the Summary Chart attached to the March 28, 2018 Alson & Bird letter addressed to United States District Attorney's Office, Southern

---

[43] Deposition Transcript of Gregory Preis, June 26, 2024, p. 21.

[44] Alston & Bird letter addressed to William C. Heuer, December 11, 2017, Exhibit A (CH7TRUSTEE_0011116 at 0011128).

District of New York.[45]  These loan schedules detail the advances and payments between Hutton and Mr. Nissen and the Company from July 6, 2016 (the date of Hutton's first advance to Mr. Nissen) to May 25, 2017 the date Hutton sent the Default Letter to Mr. Nissen.

35.   In order to obtain more detail as to the portions of principal and interest associated with each payment Mr. Nissen made, I asked Counsel if there was additional support for Hutton's Proof of Claim.  Following this request, I received a detailed Excel file that provided a breakdown of principal and interest for each advance that Hutton made, and payments received from Mr. Nissen and the Company.[46]  Exhibit 1 provides the details of these transactions.  Next, I confirmed each of the transactions listed in Exhibit 1 as appearing in one of Mr. Nissen's Citibank bank statements.  In the aggregate, there are 12 books of Citibank bank statements that pertain to different entities affiliated with Mr. Nissen and the Company.[47]  The Citibank bank statements pertaining to advances made by Hutton and repayments made by Mr. Nissen and the Company are found in the following:

- Book 2 - Statements for Mr. Jason Nissen, Account ▉▉▉7834.[48]
- Book 6 - Statements for NEA, Account ▉▉▉8376.[49]
- Book 7 - Statements for NWEG, Account ▉▉▉8421.[50]

---

[45] Alston & Bird letter addressed to AUSA Lara Pomerantz, March 28, 2018, Summary Chart (CH7TRUSTEE_0011163 at 0011169).

[46] Excel file CH7TRUSTEE_ 0011139.

[47] There are also Wells Fargo bank statements for National Event Company II, LLC for the period January 1, 2015 to December 31, 2015 (CH7TRUSTEE_0005763 - 0005852).

[48] CBNA00058058-CBNA00058211.

[49] CBNA00058224-CBNA00058332.

[50] CBNA00058692-CBNA00058757.

36.   Following the tracing of the advances and repayments, I calculated interest that accrued on each advance using the 16% per annum interest rate outlined in the Loan and Credit Agreement, Article 2, Section 2.5.  Interest was calculated on the basis of a 30-day month, 360-day year and the actual number of days elapsed in each calculation period.[51] Further, as payments were received by Hutton, proceeds were applied first to accrued interest and then to the outstanding principal balance, if applicable.  If any payment that was made was insufficient to satisfy the interest owed as of the payment date, such interest was carried over and added to the outstanding loan balance.[52]  I then compared my calculations to the Hutton-prepared accrued interest schedule,[53] with only minor differences being noted.

37.   As seen in Exhibit 1, as of May 25, 2017, Mr. Nissen and the Company owed Hutton $9,246,210.89 in outstanding principal and $110,405.94 in accrued interest, totaling $9,356,616.83.

### 2.  Falcon Strategic Partners IV, LP

38.   I started my analysis by reviewing the Falcon Proof of Claim, including the Attachment to Proof of Claim and the exhibits thereto, and the Falcon representative's (Mr. Jonathan Moses) deposition.  Next, using Tables 2 and 3 discussed above that summarize the Senior Secured Notes and Senior Unsecured PIK Notes, I traced the advances that Taly made to Mr. Nissen and the Company for these Notes.  I confirmed each of the advances that Taly made to a Nissen-related bank statement maintained at

---

[51] National Events of America, Inc. - Claim No. 28-1 pp. 12-13.

[52] CH7TRUSTEE_0011163-0011169.

[53] Excel file CH7TRUSTEE_0011139.

either Wells Fargo or Citibank. I reviewed all of the bank statements produced in discovery and identified the following bank statements to trace these transactions:

- Wells Fargo Bank Statements.[54]

- Book 4 – Citibank Statements for National Event Company II, LLC (NECO II), Account ████8419.[55]

Exhibit 2 shows the tracing of the Falcon advances made to Mr. Nissen and the Company.

39.    After tracing the advances made to Mr. Nissen and the Company, I then traced payments received from them by again reviewing all of the bank statements produced in discovery.  In addition to the bank statements identified above, I used the following bank statement to confirm repayments that Mr. Nissen and the Company made to Falcon:

- Book 5 – Citibank Statements for World Events Group, LLC - World Events Group II, LLC, Account ████8806.[56]

40.    After tracing the advances made to Mr. Nissen and the Company and the payments received from them, I reviewed the detailed loan schedules prepared by Falcon for each of the Secured and Unsecured loans.[57]  These loan schedules provided the detail as to how Falcon allocated each repayment made by Mr. Nissen and the Company between interest and principal.  Using these detailed loan schedules, I

---

[54] CH7TRUSTEE_0005763- CH7TRUSTEE_0005852.

[55] CBNA00058490-CBNA00058690.

[56] CBNA00058916-CBNA00058981.

[57] Excel file "NECO – Accrual at 2017.06.05" (CH7TRUSTEE_0139691).

developed Exhibit 3 to summarize the Senior Secured Notes and Exhibit 4 to summarize the Senior Unsecured Notes.

41.     As seen in Exhibits 3-1 through 3-6, for the Senior Secured Notes, the interest schedules encompassed the lending period from the origination date of each respective note to June 5, 2017.  For each Note, interest accrued from the origination date to the date of the first repayment made on each Note and then interest accrued from that repayment date until the next repayment date.  Each payment received from Mr. Nissen and the Company was first applied to the cash interest portion of the Senior Secured Notes and any remaining portion of the payment was then applied to the PIK interest component of the Senior Secured loans.

42.     As seen in Exhibits 4-1 through 4-4, throughout the course of the lending relationship, Mr. Nissen and the Company did not remit the PIK Interest component of any of the Senior Unsecured PIK Notes.  As provided for in the loan documents, PIK Interest that was not received was added to the principal of each Note.

43.     Beginning April 11, 2017, consistent with the terms of the Notes, Falcon applied 2% default interest to each Note.  Additionally, accrued cash and PIK interest were added to the outstanding balance for the Senior Secured Notes.  As of June 5, 2017, the Senior Secured Notes accrued outstanding balance was $29,872,646 (see Exhibit 3) and for the Senior Unsecured PIK Notes was $17,282,005 (see Exhibit 4). Thus, the total outstanding balance that Falcon was owed as of June 5, 2017, was $47,154,651, which represents the damages that Falcon has suffered.

21

### 3.  Taly USA Holdings Inc. and SLL USA Holdings, LLC

44.    Following a review of the Taly Proof of Claim, and deposition transcripts of Taly representatives, I reviewed the Taly "Transactions Report – NECO" ("TRN").[58]  The TRN lists the lending and repayment activity between Taly and Mr. Nissen and the Company covering the period from June 2, 2016 through May 5, 2017.  According to the TRN, Taly's advances and Mr. Nissen's and the Company's repayments totaled $32,358,921.00 and $16,223,617.47, respectively, resulting in a net balance owed Taly of $16,135,303.53.[59]  I then traced each of the transactions listed on the TRN to the bank statements that Jason Nissen and the Company maintained with Citibank.  The Citibank bank statements that included these transactions were the following:

- Book 2 - Statements for Mr. Nissen, Account ████7834.[60]
- Book 4 - Statements for National Event Company II, LLC (NECO II), Account ████8419.[61]
- Book 6 - Statements for NEA, Account ████8376.[62]
- Book 7 - Statements for NWEG, Account ████8421.[63]

45.    During the process of tracing the transactions listed on the TRN to the Citibank bank statements, I identified several additional transactions that had occurred

---

[58] Taly USA Holdings Inc., and SLL USA Holdings, LLC v. Jason Nissen et al., Verified Complaint, Index No. 652865/2017, May 26, 2017, Exhibit A.

[59] Taly USA Holdings Inc., and SLL USA Holdings, LLC v. Jason Nissen et al., Verified Complaint, Index No. 652865/2017, May 26, 2017, Exhibit A.

[60] CBNA00058058-CBNA00058211.

[61] CBNA00058490- CBNA00058690.

[62] CBNA00058224-CBNA00058332.

[63] CBNA00058692-CBNA00058757.

between Taly and Mr. Nissen and the Company that were not listed on the TRN.  These transactions included the following:

- 12/13/16 - Taly advanced $445,000.00 via wire to NEA.[64]

- 12/15/16 – The Company repaid $494,587.00 via wire to Taly.[65]  (This transaction was reported on the TRN as $49,587.00).

- 02/24/17 - Taly advanced $525,000.00 via wire to NEA.[66]

- 03/01/17 – The Company repaid $525,000.00 via wire to Taly.[67]

- 04/21/17 – The Company repaid $700,000.00 via wire to Taly.[68]

46.    The TRN also included a few transactions that, when netted, reflected that Mr. Nissen and the Company had repaid Taly $1,200,000 for an advance Taly had made for that same amount.  I was unable to trace these transactions to a bank statement.  Therefore, I removed the transactions pertaining to the $1,200,000 from the loan schedule.  After accounting for the discrepancies, the total amount Taly advanced to Mr. Nissen and the Company was $32,128,921 and the total amount that Mr. Nissen and the Company repaid was $16,693,617.  Table 3 presents a reconciliation of the Taly Proof of Claim to my findings.

---

[64] CBNA00058224 at 00058299.

[65] CBNA00058224 at 00058301.

[66] CBNA00058224 at 00058315.

[67] CBNA00058224 at 00058316.

[68] CBNA00058058 at 00058200.

Table 3 – Reconciliation of Damages to Proof of Claim

| | Taly Amount | | |
| Date | Advanced | Repaid | Cash Confirmation |
|---|---|---|---|
| Total per Proof of Claim | $ 32,358,921.00 | $ 16,223,617.47 | |
| 12/13/16 | 445,000.00 | - | CBNA00058224 at 00058299 |
| 12/15/16 | - | 494,587.00 | CBNA00058224 at 00058301 |
| 12/15/16 | - | (49,587.00) | |
| 02/24/17 | 525,000.00 | - | CBNA00058224 at 00058315 |
| 03/01/17 | - | 525,000.00 | CBNA00058224 at 00058316 |
| 03/31/17 | - | (1,200,000.00) | |
| 04/05/17 | (1,200,000.00) | - | |
| 04/21/17 | - | 700,000.00 | CBNA00058058 at 00058200 |
| Adjusted Total | $ 32,128,921.00 | $ 16,693,617.47 | |

47.    In order to determine the damages sustained by Taly, I reviewed the terms of each Promissory Note between Taly and Mr. Nissen and the Company that are listed in Exhibit 5.  The terms of the Promissory Notes typically included the principal of the Note as well as a minimum guaranteed profit owed to Taly as compensation for advancing funds to Mr. Nissen and the Company.  Exhibit 6 shows the principal amount and guaranteed profit (minimum return) for each of the Notes. The guaranteed profit for each loan was typically the greater of a fixed or percentage-based guaranteed return, or an amount equal to a percentage of the profits generated.

48.    Having already traced the amounts that Taly advanced to Mr. Nissen and the Company as shown in Exhibit 5, I then traced repayments that Mr. Nissen and the Company made to repay the principal amount advanced by Taly and the guaranteed profit.  For example, as seen in Exhibit 6, pursuant to Note 103 for the 2016 U.S. Open Tennis Championship, the principal amount of Note 103 was $900,000 with a guaranteed minimum profit of $75,000.  Mr. Nissen and the Company made a repayment in the amount of $975,000.[69]  Of that payment, $900,000 was applied to the

---

[69] CBNA00058224 at 00058274.

principal outstanding and the remaining $75,000 was applied to the guaranteed minimum return.  We spoke to Mr. Tanne and he indicated that when a payment was received from Mr. Nissen and the Company, the payment was typically for the principal owed and the minimum profit guarantee.  However, in some instances, Falcon received a payment that exceeded the minimum profit (e.g., see Note 100 in Exhibit 6).

49.    Mr. Tanne further stated that in some instances, when Mr. Nissen and the Company failed to repay in full either the principal or the guaranteed minimum return, the remaining balance outstanding was cancelled and added to a different (subsequent) Note.  This process is referred to as "rolling over" a note. For example, for Note 105, Mr. Nissen and the Company failed to repay $695,000 of principal and the $153,000 guaranteed minimum return.  The principal owed of $695,000 was divided into two portions.  First, $116,000 was rolled over into Note 114. The remaining principal of $579,000 ($695,000 less $116,000) and the $153,000 guaranteed minimum return were rolled over to Note 116.

50.    Beginning on March 24, 2017, seven additional payments were received totaling $5,725,000 which were not allocated to any specific note.  Therefore, these payments were deducted from the total outstanding advances.

51.    The results of this detailed analysis are shown in Exhibit 6.  As seen on the last page of the Exhibit, Taly is owed $17,658,250  in unpaid advances and $4,567,164 in unpaid guaranteed profits.  The total of these two amounts, $22,225,414 , are the damages that Taly has suffered.

## VI.  CONCLUSION – EXPERT OPINION

52.   To the extent that additional information is discovered or provided hereafter, including expert reports, I may amend or supplement my analyses and conclusions based upon such information.  Based upon my analysis of the documents and information provided to date, however, I have concluded that:

- Hutton suffered economic damages in the amount of not less than $9,356,617 comprised of principal and interest owed by the Company as a result of Hutton advancing loans to the Company.

- Falcon suffered economic damages in the amount of not less than $47,154,651 comprised of principal and interest owed by the Company as a result of Falcon advancing loans to the Company.

- Taly suffered economic damages in the amount of not less than $22,225,414 comprised of principal and guaranteed profit owed by the Company as a result of Taly advancing loans to the Company.

## VII.  LIMITING FACTORS AND OTHER ASSUMPTIONS

53.   This report is furnished solely for the benefit of the parties, Counsel, the Court, and the finder of fact in this matter.  This report may not be relied upon by any other person or entity without my express, prior written consent.  Any disclosure of this report, whether or not consented to, shall not create any obligation or liability on Raymond Sloane.  This report is delivered subject to the conditions, scope of engagement, limitations and understandings set forth in this report.

54.   Neither this report, nor any part of its contents, should be conveyed to the public through advertising, public relations, news, sales, mail, direct transmittal, or other media, without my prior written consent and approval.

55.   In accordance with recognized professional ethics, my professional fees for my services are not contingent upon the opinion expressed herein. I do not have a present or intended financial interest in the outcome of this matter.

56.   Public information, statistical information and data are from sources I deem to be reliable. However, I make no representation as to the accuracy or completeness of such information and data.

57.   I have reviewed numerous documents related to this matter and I have set forth in this report only a summary of the testimony I expect to provide at trial. I have not attempted to set forth verbatim every fact that supports my opinion. Furthermore, I reserve the right to supplement or amend this report should any additional information become available. I further reserve the right to change or add new opinions to the extent other parties change or add to their reports or opinions.

Respectfully submitted,

Raymond T. Sloane

# Appendix A
# Curriculum Vitae of Raymond T. Sloane

CURRICULUM VITAE

# RAYMOND T. SLOANE



## QUALIFICATIONS

JD, Fordham University School of Law, USA
BBA, Hofstra University, USA
Certified Public Accountant (CPA), New York
Certified Fraud Examiner (CFE)
Certified in Financial Forensics (CFF)
Certified Anti-Money Laundering Specialist (CAMS)
Accredited in Business Valuation (ABV)

## MEMBERSHIPS

Member, American Institute of Certified Public Accountants (AICPA)
Member, New York State Society of Certified Public Accountants (NYSSCPA)
Member, American Bar Association (ABA)
Member, New York State Bar Association (NYSBA)
Member, Association of Certified Fraud Examiners (ACFE)
Member, Association of Certified Anti-Money Laundering Specialists (ACAMS)

## PROFILE

**Raymond T. Sloane** has more than 45 years of financial and consulting experience, including 24 years with public accounting firms. Ray has provided expert witness testimony in cases involving economic losses, solvency determinations and substantive consolidation, tracing of cash flows, business valuation, auditor malpractice, and accounting issues.

Ray's experience extends to contract disputes, rebates, allowances and kickbacks, post-acquisition disputes, asset securitization, white-collar crime, fraudulent conveyances, and preferences. He has worked in banking and financial services, including commodities and hedge funds; construction; real estate, including developers of commercial properties and owners of multifamily housing; labor unions; automotive; asbestos; retail; advertising; entertainment and sports; and consumer and industrial products.

Ray's expertise in highly complex commercial litigation involving damages, fraud, business valuation, and technical accounting and auditing issues is well recognized and valued by his clients. In addition to leading the investigation of several of the largest fraud cases in the United States, he has conducted internal investigations on behalf of audit and special committees of boards of directors in connection with

restatements of financial results and in instances of suspected embezzlement, Foreign Corrupt Practices Act (FCPA) violations, and other alleged fraudulent activity.

Ray has held senior leadership positions in the forensic accounting and investigations divisions of three international litigation consulting and advisory firms and was the partner in charge of the litigation consulting and bankruptcy services department of a major regional CPA firm in the New York metropolitan area. He was also the partner in charge of the litigation consulting division of the New York office of an international CPA firm, where he had previously been an SEC audit partner and a partner in the firm's quality control group.

## SAMPLING OF EXPERIENCE BY TYPE

### FINANCIAL INVESTIGATIONS

**Data Analysis and Compliance Assessment – Opioids Litigation**
Ray served as a consulting expert to a state Attorney General's Office in its lawsuit against several opioid distributors. Working closely with the state AG's Office and its outside counsel, he and his team evaluated the work performed by other compliance and data analytics experts regarding the application of compliance-based metrics to large data sets of transactions.

**Forensic Accounting Investigation – Non-Profit Organization**
On behalf of a large, national 501(c)(3) non-profit corporation, Ray and his team performed forensic accounting analyses with respect to the activities of a senior executive officer of the organization, evaluating expense accounting and recordkeeping practices, as well as compliance with the entity's bylaws, policies and procedures, and internal controls. He also quantified damages sustained by the organization as a result of violations of such governance controls and related misconduct.

**Forensic Accounting Investigation – Healthcare Service Provider**
Ray assisted outside counsel with an internal corporate investigation assessing the company's exposure, if any, related to criminal charges being brought by the Department of Justice against a partner for his activities prior to the company's acquisition of an entity with which he was associated. Such activities created potential liability exposure for the company under the Federal False Claims Act and the Anti-Kickback statute. Our internal investigation found that the conduct at issue, if found to be criminal, had occurred pre-acquisition, with minimal exposure to the company.

**Forensic Accounting Investigation – Bernard L. Madoff Investment Securities Ponzi Scheme**
Ray co-led the team working on behalf of counsel for Irving Picard in the investigation of the Bernard L. Madoff Investment Securities Ponzi scheme, focusing on the reconstruction of the flows of cash received from, and paid to, investors over the decades it was perpetrated, as well as performing solvency determinations as of various points in time.

**Collective Bargaining Agreement Compliance Assessment – Major Sports League**
Ray served as one of the forensic accountants for the players' association of a major sports league to assess compliance with the terms of the collective bargaining agreement.

**Forensic Accounting Review – Ponzi Scheme**
Ray led the team reviewing the work performed by the receiver's accountants in connection with an alleged $800M Ponzi scheme, focusing on the entity's internal bookkeeping, information from third-party financial institutions, and issues regarding the existence of the alleged Ponzi scheme.

**Forensic Accounting Investigation – International Soccer**
Ray led the forensic accounting portion of the investigation for one of the constituent organizations against which charges were being considered by the U.S. Attorney's Office for the Southern District of New York in the international soccer scandal.

**Financial Activity Analysis – Not-For-Profit Organization, New York, USA**
In response to various allegations of asset misappropriation, self-dealing, and tax avoidance raised by the U.S. Attorney's Office in the Eastern District of New York, Ray led a team analyzing multiple years of

financial activity of a not-for-profit organization and affiliated businesses of the founder and executive director. He presented findings to the U.S. Attorney's team, the Internal Revenue Service (IRS), and the Federal Bureau of Investigation (FBI), resulting in no criminal prosecution being brought.

**Forensic Accounting Investigation – Student Loan Financing and Servicer Organization**
Ray co-led the forensic accounting investigation into collateral and other issues discovered to exist at a student loan financing and servicer organization. Issues investigated included alleged insufficiency of collateral, a higher percentage of alternative loans (i.e., privately guaranteed loans as opposed to federally guaranteed loans) than were permitted by the loan eligibility requirements of the financing documents, and reporting requirement deficiencies.

**Investigation – National Century Financial Enterprises Fraud Case**
In the high-profile National Century Financial Enterprises $3B fraud case, Ray led the investigation into issues involving related-party transactions and fraudulent reporting of results to investors in the various trusts/pools of securitized receivables.

**Financial Statement Review – Post-Acquisition Review**
In connection with a post-acquisition dispute involving revenue recognition issues, Ray co-led a team reviewing financial statements, contracts, and business records of the target company to assess compliance with U.S. Generally Accepted Accounting Principles (GAAP) and to consider potential damages.

## BANKRUPTCY MATTERS

**Accounting Treatment Review – Lehman Brothers Bankruptcy Case**
In connection with the Lehman Brothers bankruptcy case, Ray was retained to review and report upon the proper accounting treatment for repurchase agreements ("Repos") and reverse repurchase agreements ("Reverse Repos") and related auditing issues.

**Related-Party Transfer Investigation – Hedge Fund Bankruptcy**
With respect to the bankruptcy of a series of related hedge funds, Ray led the investigation of extensive related-party transfers among the entities, which were effectively being operated as a Ponzi scheme. He successfully testified in support of the substantive consolidation of the multiple debtor entities.

**Accountant – Chapter 7 Trustee, Construction Supply Company**
Ray led the team retained as accountants to the Chapter 7 trustee of a construction supply company to analyze the books and records of two related debtor entities to identify potentially recoverable assets and advise the trustee and his counsel with respect to claims against the debtor's former officers who allegedly misappropriated and/or diverted inventory and vehicles to a related non-debtor entity.

## SHAREHOLDER/BUSINESS DISPUTES

**Cross-Claims – Dispute Between Members of Multiple Limited Liability Companies**
After the death of the managing member of several limited liability companies (LLCs), disputes arose between the other member and the estate of the deceased member. Ray and his team performed a forensic accounting investigation into the activities of the LLCs and transactions in the members' capital accounts and related party transactions, analyses of the tax returns over an extended period of time, and addressed damages issues raised by both sides.

**Indicia of Fraud Review – Equipment Wholesaler**
In a family dispute involving the majority and minority owners of an equipment wholesaler, Ray's team was retained to review the company's books and records for indicia of fraud, including cash skimming and inflation of business expenses/payment of personal expenses, ultimately reporting on findings of red flags and related damages.

**Cross-Claims – High-Frequency Trading Hedge Fund**
Ray led the team of forensic accountants investigating cross-claims made by the former partners in a high-frequency trading hedge fund concerning the value of their partnership interests and the allocation of profits

to the partners pursuant to the partnership agreement, as well as claims of "off-the-books" foreign trading having been concealed from one of the parties.

## EMPLOYMENT RECORD

| 2020-2023 | **HKA** |
|---|---|
| | New York, NY |
| | ▪ Partner |

| 2013-2020 | **Berkeley Research Group** |
|---|---|
| | New York, NY |
| | ▪ Managing Director |

| 2001-2013 | **FTI Consulting** |
|---|---|
| | New York, NY |
| | ▪ Senior Managing Director |

| 1990-2001 | **Margolin, Winer & Evens** |
|---|---|
| | Garden City, NY |
| | ▪ Partner |

| 1977-1990 | **Spicer & Oppenheim** |
|---|---|
| | New York, NY |
| | ▪ Partner |

## PUBLICATIONS & PAPERS

"**BNA Interview: Board 'Best Practice' When Facing a Financial Fraud Investigation**," Corporate Accountability Report, Bloomberg/The Bureau of National Affairs, Inc., *June 2013*
"**Litigation Consulting – A Practitioner's Guide**," The CPA Journal, *April 1990* (Max Block Award Winner, Best Article, 1990)
"**Enhance Litigation Success with the Right Accounting Services**," The Practical Lawyer, *June 1995*
"**Access The CPA's Litigation Consulting Services**," Corporate Counsel – NY Law Journal, *June 1995*
"**Accounting for Success**," Legal Times, *November 1994*
**Attorneys' Handbook of Accounting**, Contributor
**Handbook of Asset-Backed Securities and Consumer Receivables**, Contributor

## PRESENTATIONS & SPEAKING ENGAGEMENTS

"**ADR – Testifying in Different Venues**," AICPA Forensic and Valuation Services Conference, *November 2017*
"**Punitive Damages – 'Financial Means' and 'Ability-To-Pay' Issues**," Practicing Law Institute, *March 1994*
"**Marketing Litigation Services**," CPA Associates International, *May and August 1993*
"**Accountants Liability**," Practicing Law Institute, *July 1992*

"**Forensic Accounting – Where the Money Is in Litigation Services**," CPA Associates International, *June 1992*

"**Audit Evidence**," Practicing Law Institute, *May 1992*

"**Litigation Regarding Going-Concern Issue**s," Margolin, Winer & Evens, July 1990

"**Accounting for Lawyers**," New York State Bar Association, *June 1990*

## LANGUAGES

English (native)

## RAYMOND T. SLOANE
## Testimony Experience

| Year | Attorney/Client | Forum | Action or Proceeding | Description |
|---|---|---|---|---|
| 2023 | Duane Morris LLP/Trustee for the Chapter 7 Bankruptcy Estate of Precise Graphix, LLC | Judicial Arbitration and Mediation Services | Lynne E. Feldman, Esq., in Her Capacity as the Chapter 7 Trustee for the Estate of Precise Graphix, LLC, Claimant v. NBCUniversal Media LLC, dba NBCUniversal; Machete Corporation, dba Machete Productions; Camping World, Inc.; and Does 1-50, Inclusive, Respondents | Expert testimony at Arbitration Hearing |
| 2022 | Larry Miller and the Entity Defendants | Supreme Court of the State of New York, County of New York | Jane Greenman, Individually and on behalf of Millman LLC, 392 Columbus Avenue LLC, and SDMJD Next Generation LLC v. Larry Miller, Millman LLC, 392 Columbus Avenue LLC, and SDMJD Next Generation LLC | Expert testimony at Trial |
| 2020 | Attorney General for the State of New York | Supreme Court of the State of New York, County of Nassau | People of the State of New York v. Aaron Fischman | Expert testimony before a Special Grand Jury |
| 2017 | Elizabeth Weymouth | American Arbitration Association | Elizabeth Weymouth, Claimant, v. Riverstone Holdings, LLC, Pierre F. Lapeyre, Jr. and David M. Leuschen, Respondents | Expert testimony at Arbitration Hearing |

# Appendix B
# Documents and Other Information Relied Upon

The documents and other information relied upon in preparing this report are listed below.  Any other items cited in the report not listed are incorporated herein by reference.

### LEGAL FILINGS

- Kenneth P. Silverman, Esq., The Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC, and Its Affiliated Debtors v. Citibank, N.A., Supreme Court of the State of New York, County of New York, Complaint, Case 1:22-cv-05211-GHW
- Kenneth P. Silverman, Esq. v. Citibank, N.A.. United States District Court, Southern District of New York, Memorandum & Opinion, Case 1:22-cv-05211-GHW
- Kenneth P. Silverman, Esq., The Chapter 7 Trustee of the Jointly Administered Estates of National Events Holdings, LLC, and Its Affiliated Debtors v. Citibank, N.A., Case 1:22-cv-05211-GHW, Answer and Affirmative Defenses of Defendant Citibank, N.A. to Plaintiff's Complaint.
- https://casetext.com/case/united-states-v-nissen-6 (last accessed February 14, 2025).

### DEPOSITION TRANSCRIPTS

- Deposition Transcript of Zachary Durbin, May 27, 2022.
- Deposition Transcript of Gregory Preis, June 26, 2024.
- Deposition Transcript of Ron Friedman, June 27, 2024.
- Deposition Transcript of Nicole Salvati, August 9, 2024.
- Deposition Transcript of Jonathan Moses, August 12, 2024.
- Deposition Transcript of Katelyn Boulden-Verdelli, August 16, 2024.
- Deposition Transcript of Zachary Durbin, August 22, 2024.
- Deposition Transcript of Jason Griffith, August 23, 2024.
- Deposition Transcript of Guy Tanne, December 6, 2024.
- Deposition Transcript of Yaron Turgeman, December 12, 2024.
- Deposition Transcript of Paul Raps, December 18, 2024.
- Deposition Transcript of Joshua Santana, January 17, 2025.
- Deposition Transcript of Jack Crowley, January 23, 2025.
- Deposition Transcript of Keith Harding, January 24, 2025.
- Deposition Transcript of Jason Nissen, January 24, 2025.

### PROOF OF CLAIM

- National Events of America, Inc., Debtor - Claim No. 28-1, January 18, 2018.
- National Events Intermediate, LLC, Debtor - Claim No. 6-1, November 6, 2017.
- National Events Holdings, LLC, Debtor - Claim No. 21-1, November 10, 2017.

### CASE DOCUMENTS
- Taly-0000441-Taly-0000442
- Taly-0000443-Taly-0000447
- Taly-0000448-Taly-0000449
- Taly-0000450-Taly-0000451
- Taly-0000452-Taly-0000456
- Taly-0000457-Taly-0000461
- Taly-0000462-Taly-0000466
- Taly-0000467-Taly-0000469
- Taly-0000470-Taly-0000475
- Taly-0000476-Taly-0000477
- Taly-0000478-Taly-0000482
- Taly-0000483-Taly-0000487
- Taly-0000488-Taly-0000492
- Taly-0000493-Taly-0000497
- Taly-0000498-Taly-0000502
- Taly-0000503-Taly-0000504
- Taly-0007701-Taly-0007705
- Taly-0000505-Taly-0000509
- Taly-0000510-Taly-0000514
- Taly-0000515-Taly-0000519
- Taly-0000520-Taly-0000524
- Taly-0000525-Taly-0000526
- Taly-0000549-Taly-0000551
- Taly-0000559-Taly-0000563
- Taly-0000436-Taly-0000440
- Taly-0000527-Taly-0000531
- Taly-0000532-Taly-0000536
- Taly-0000537-Taly-0000538
- Taly-0000539-Taly-0000543
- Taly-0000544-Taly-0000548
- Excel file CH7TRUSTEE_ 0011139
- CH7TRUSTEE_0011163-0011169
- CH7TRUSTEE_0011116-0011132

- CBNA00058058-CBNA00058211
- CBNA00058490-CBNA00058690
- CBNA00058916-CBNA00058981
- CBNA00058224-CBNA00058332
- CBNA00058692-CBNA00058757
- CH7TRUSTEE_0005763-CH7TRUSTEE_0005852
- CBNA00008428-CBNA00008619
- CBNA00009869-CBNA00009912
- CBNA00005041_001-CBNA00005056_001
- CBNA00007498-CBNA00007534
- CH7TRUSTEE_0139691

ARTICLES

- "CEO And President of Premium Ticket Resale Business Pleads Guilty To Running Multimillion-Dollar Ponzi Scheme," U.S. Department of Justice Press Release, March 28, 2018, https://www.justice.gov/usao-sdny/pr/ceo-and-president-premium-ticket-resale-business-pleads-guilty-running-multimillion (last accessed February 14, 2025).

**Exhibit 1**
**Hutton Ventures LLC**
## Damages Schedule

| Date | Advance | Repayment | Interest | Principal | Balance | Interest Calculation | | Transaction Confirmed |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Days O/S | Interest @ 16% | |
| 07/06/16 | $ 1,200,000.00 | $ - | $ - | $ - | $1,200,000.00 | 15 | $ 8,000.00 | CBNA00058058 at 00058147 |
| 07/21/16 | 1,500,000.00 | 50,000.00 | 8,000.00 | 42,000.00 | 2,658,000.00 | | - | CBNA00058058 at 00058148 |
| 07/22/16 | 360,000.00 | - | - | - | 3,018,000.00 | 1 | 1,181.33 | CBNA00058058 at 00058148 |
| 07/29/16 | - | 385,000.00 | 10,570.67 | 374,429.33 | 2,643,570.67 | 7 | 9,389.33 | CBNA00058058 at 00058153 |
| 08/02/16 | 950,000.00 | - | - | - | 3,593,570.67 | 4 | 4,699.68 | CBNA00058058 at 00058153 |
| 08/08/16 | - | 80,000.00 | 14,282.54 | 65,717.46 | 3,527,853.20 | 6 | 9,582.86 | CBNA00058058 at 00058153 |
| 08/16/16 | - | 93,750.00 | 12,543.48 | 81,206.52 | 3,446,646.68 | 8 | 12,543.48 | CBNA00058058 at 00058154 |
| 08/22/16 | 480,000.00 | - | - | - | 3,926,646.68 | 6 | 9,191.06 | CBNA00058058 at 00058154 |
| 08/23/16 | - | 85,000.00 | 10,936.23 | 74,063.77 | 3,852,582.92 | 1 | 1,745.18 | CBNA00058058 at 00058154 |
| 09/01/16 | 675,000.00 | - | - | - | 4,527,582.92 | 9 | 15,410.33 | CBNA00058058 at 00058159 |
| 09/02/16 | - | 57,000.00 | 17,422.59 | 39,577.41 | 4,488,005.51 | 1 | 2,012.26 | CBNA00058058 at 00058159 |
| 09/02/16 | - | 93,750.00 | - | 93,750.00 | 4,394,255.51 | - | - | CBNA00058058 at 00058159 |
| 09/14/16 | - | 700,000.00 | 23,436.03 | 676,563.97 | 3,717,691.54 | 12 | 23,436.03 | CBNA00058058 at 00058160 |
| 09/22/16 | - | 25,000.00 | 13,218.46 | 11,781.54 | 3,705,909.99 | 8 | 13,218.46 | CBNA00058058 at 00058161 |
| 09/22/16 | - | 250,000.00 | - | 250,000.00 | 3,455,909.99 | - | - | CBNA00058058 at 00058161 |
| 09/23/16 | - | 250,000.00 | 1,535.96 | 248,464.04 | 3,207,445.95 | 1 | 1,535.96 | CBNA00058058 at 00058161 |
| 10/06/16 | - | 1,500,025.00 | 18,531.91 | 1,481,493.09 | 1,725,952.86 | 13 | 18,531.91 | CBNA00058058 at 00058165 |
| 10/07/16 | 1,500,000.00 | - | - | - | 3,225,952.86 | - | 767.09 | CBNA00058058 at 00058165 |
| 10/07/16 | - | 57,000.00 | 16,538.42 | 40,461.58 | 3,185,491.28 | 1 | 15,771.33 | CBNA00058058 at 00058166 |
| 10/18/16 | - | 57,600.00 | - | 57,600.00 | 3,127,891.28 | 11 | - | CBNA00058058 at 00058166 |
| 10/18/16 | - | 480,000.00 | - | 480,000.00 | 2,647,891.28 | - | - | CBNA00058058 at 00058166 |
| 10/18/16 | - | - | - | - | - | - | - | |
| 10/19/16 | 500,000.00 | - | - | - | 3,147,891.28 | 1 | 1,176.84 | CBNA00058224 at 00058289 |
| 10/27/16 | 420,000.00 | - | - | - | 3,567,891.28 | 8 | 11,192.50 | CBNA00058224 at 00058290 |
| 11/02/16 | 791,500.00 | - | - | - | 4,359,391.28 | 6 | 9,514.38 | CBNA00058224 at 00058291 |
| 11/08/16 | 1,800,000.00 | - | - | - | 6,159,391.28 | 6 | 11,625.04 | CBNA00058224 at 00058292 |
| 11/17/16 | - | 28,000.00 | 28,000.00 | - | 6,159,391.28 | 9 | 24,637.57 | CBNA00058224 at 00058295 |
| 11/17/16 | - | 249,500.00 | 30,146.33 | 219,353.67 | 5,940,037.61 | - | - | CBNA00058224 at 00058295 |
| 11/29/16 | - | 1,400,000.00 | 31,680.20 | 1,368,319.80 | 4,571,717.81 | 12 | 31,680.20 | CBNA00058224 at 00058296 |
| 11/30/16 | - | 600,000.00 | 2,031.87 | 597,968.13 | 3,973,749.68 | 1 | 2,031.87 | CBNA00058224 at 00058296 |
| 12/01/16 | 1,500,000.00 | - | - | - | 5,473,749.68 | 1 | 1,766.11 | CBNA00058224 at 00058296 |

**Exhibit 1**
**Hutton Ventures LLC**
## Damages Schedule

| Date | Advance | Repayment | Interest | Principal | Balance | Days O/S | Interest @ 16% | Transaction Confirmed |
|---|---|---|---|---|---|---|---|---|
| 12/13/16 | - | 29,440.00 | 29,440.00 | - | 5,473,749.68 | 12 | 29,193.33 | CBNA00058224 at 00058301 |
| 12/13/16 | - | 110,400.00 | 1,519.44 | 108,880.56 | 5,364,869.13 |  | - | CBNA00058224 at 00058301 |
| 12/15/16 | 1,080,000.00 | - | - | - | 6,444,869.13 | 2 | 4,768.77 | CBNA00058224 at 00058301 |
| 12/21/16 | 1,242,000.00 | - | - | - | 7,686,869.13 | 6 | 17,186.32 | CBNA00058224 at 00058302 |
| 12/22/16 | - | 59,104.80 | 25,371.48 | 33,733.32 | 7,653,135.80 | 1 | 3,416.39 | CBNA00058224 at 00058302 |
| 12/30/16 | - | 1,410,000.00 | 27,211.15 | 1,382,788.85 | 6,270,346.95 | 8 | 27,211.15 | CBNA00058224 at 00058304 |
| 01/10/17 | - | 63,320.00 | 30,655.03 | 32,664.97 | 6,237,681.98 | 11 | 30,655.03 | CBNA00058224 at 00058306 |
| 01/10/17 | - | 316,600.00 | - | 316,600.00 | 5,921,081.98 |  |  | CBNA00058224 at 00058306 |
| 01/17/17 | - | 8,548.20 | 8,548.20 | - | 5,921,081.98 | 7 | 18,421.14 | CBNA00058224 at 00058309 |
| 01/18/17 | 1,000,000.00 | - | - | - | 6,921,081.98 | 5 | 2,631.59 | CBNA00058224 at 00058309 |
| 01/23/17 | - | 569,880.00 | 27,884.72 | 541,995.28 | 6,379,086.70 | 5 | 15,380.18 | CBNA00058224 at 00058310 |
| 02/24/17 | - | 1,000,000.00 | 90,724.79 | 909,275.21 | 5,469,811.49 | 32 | 90,724.79 | CBNA00058224 at 00058316 |
| 03/13/17 | - | 800,000.00 | 41,327.46 | 758,672.54 | 4,711,138.95 | 17 | 41,327.46 | CBNA00058692 at 00058749 |
| 03/15/17 | - | 850,000.00 | 4,187.68 | 845,812.32 | 3,865,326.63 |  | 4,187.68 | CBNA00058692 at 00058751 |
| 03/17/17 | 528,500.00 | - | - | - | 4,393,826.63 | 5 | 3,435.85 | CBNA00058224 at 00058321 |
| 03/22/17 | 1,200,000.00 | - | - | - | 5,593,826.63 | 5 | 9,764.06 | CBNA00058224 at 00058322 |
| 03/23/17 | 1,800,000.00 | - | - | - | 7,393,826.63 | 1 | 2,486.15 | CBNA00058224 at 00058322 |
| 04/03/17 | 1,200,000.00 | - | - | - | 8,593,826.63 | 11 | 36,147.60 | CBNA00058224 at 00058323 |
| 04/21/17 | - | 1,224,000.00 | 120,584.26 | 1,103,415.74 | 7,490,410.89 | 18 | 68,750.61 | CBNA00058224 at 00058323 |
| 04/26/17 | 800,000.00 | - | - | - | 8,290,410.89 | 5 | 16,645.36 | CBNA00058224 at 00058327 |
| 04/28/17 | 639,000.00 | - | - | - | 8,929,410.89 | 2 | 7,369.25 | CBNA00058224 at 00058327 |
| 05/02/17 | 316,800.00 | 24,000.00 | 24,000.00 | - | 9,246,210.89 | 4 | 15,874.51 | CBNA00058224 at 00058327 |
| 05/25/17 | - | - | - | - | 9,246,210.89 | 23 | 94,516.82 |  |
| Total | $ 21,482,800.00 | $ 12,906,918.00 |  |  |  |  |  |  |

| Total | |
|---|---|
| Principal | 9,246,210.89 |
| Accrued Interest (1) | 110,405.94 |
| Total Owed | $ 9,356,616.83 |

1. Accrued Interest (04/26/17 - 05/25/17) of $134,405.94, less Interest Payment of $24,000.00.

Sources:
National Events of America, Inc. - Claim No. 28-1;
Alston & Bird Letter to William C. Heuer, Exhibit A, December 11, 2017 (CH7TRUSTEE_0011116 at 0011128);
Excel file CH7TRUSTEE_0011139;
Book 2 - Citibank Statements for Nissen, Account ███7834 (CBNA00058058);
Book 6 - Citibank Statements for National Events of America, Inc., Account ███8376 (CBNA00058224); and
Book 7 - Citibank Statements for New World Events Group Inc. (New WEG), Account ███8421 (CBNA00058692).

**Exhibit 2**

## Falcon Strategic Partners IV, LP
## Advances & Repayments Tracing Schedule

| Date | Advance | Repayment | Advance To | Repayment From | Transaction Confirmed |
|---|---|---|---|---|---|
| 07/06/15 | $ 19,700,000.00 | $ - | (a) NECO, II LLC | | CH7TRUSTEE_0005763 at 0005818 |
| 08/21/15 | 5,910,000.00 | - | (a) NECO II | | CBNA00058490 at 00058492 |
| 09/15/15 | - | 300,972.00 | | NECO, II LLC | CH7TRUSTEE_0005763 at 0005840 |
| 11/23/15 | 9,850,000.00 | - | (a) NECO II | | CBNA00058490 at 00058806 |
| 12/15/15 | - | 480,104.17 | NECO II | | CBNA00058490 at 00058514 |
| 01/14/16 | 3,940,000.00 | - | (a) NECO II | | CBNA00058490 at 00058521 |
| 03/15/16 | - | 666,111.11 | | NECO II | CBNA00058490 at 00058541 |
| 06/16/16 | - | 687,500.00 | | NECO II | CBNA00058490 at 00058568 |
| 09/15/16 | - | 687,500.00 | | NECO II | CBNA00058490 at 00058594 |
| 12/15/16 | - | 687,500.00 | | NECO II | CBNA00058490 at 00058625 |
| 03/17/17 | - | 387,500.00 | | NECO II | CBNA00058490 at 00058661 |
| 03/21/17 | - | 300,000.00 | | WEG II | CBNA00058916 at 00058969 |
| 04/11/17 | 4,000,000.00 | - | NECO II | | CBNA00058490 at 00058670 |
| 05/10/17 | - | 40,000.00 | | NECO II | CBNA00058490 at 00058682 |
| Total | $ 43,400,000.00 | $ 4,237,187.28 | | | |

Note:
a. Falcon advanced 98.5% of the Principal Amount of the Notes.

Sources:
Moses (Falcon Rep) 081224Mini;
National Events Intermediate, LLC - Claim No. 6-1;
Book 4 - Statements for National Event Company II, LLC (NECO II), Account ████8419;
Book 5 - Statements for World Events Group, LLC - World Events Group II, LLC, Account ████8806; and
WF Bank Stmts CH7TRUSTEE_0005763 - CH7TRUSTEE_0005852.

**Exhibit 2-1**

# Falcon Strategic Partners IV, LP
## Damages Schedule

| Origination Date | Purchase Agreement | Senior Secured Notes | | | Senior Unsecured PIK Notes | | | Total Face Value | Amount Advanced |
|---|---|---|---|---|---|---|---|---|---|
| | | Exhibit | Face Value | Amount Accrued | Exhibit | Face Value | Amount Accrued | | |
| 07/06/15 | Original | 3-1 | $12,500,000.00 | $12,843,055.56 | 4-1 | $7,500,000.00 | $8,753,911.37 | $20,000,000.00 | $19,700,000.00 |
| 08/20/15 | First | 3-2 | 3,750,000.00 | 3,852,916.67 | 4-2 | 2,250,000.00 | 2,600,883.06 | 6,000,000.00 | 5,910,000.00 |
| 11/23/15 | Second | 3-3 | 6,250,000.00 | 6,421,527.78 | 4-3 | 3,750,000.00 | 4,246,991.36 | 10,000,000.00 | 9,850,000.00 |
| 01/13/16 | Third | 3-4 | 2,500,000.00 | 2,568,611.11 | 4-4 | 1,500,000.00 | 1,680,219.11 | 4,000,000.00 | 3,940,000.00 |
| 04/11/17 | Fourth | 3-5 | 4,000,000.00 | 4,077,962.96 | | - | - | 4,000,000.00 | 4,000,000.00 |
| 06/05/17 | Fifth | 3-6 | 108,572.00 | 108,572.00 | | - | - | 108,572.00 | - |
| | | | $29,108,572.00 | $29,872,646.08 | | $15,000,000.00 | $17,282,004.90 | $44,108,572.00 | $43,400,000.00 |

| Total Accrued | |
|---|---|
| Senior Secured Notes | 29,872,646.08 |
| Senior Unsecured Notes | 17,282,004.90 |
| Total | $47,154,650.98 |

| Exhibit | Cash Interest | Payments PIK Principal | Total |
|---|---|---|---|
| 3-1 | 2,114,583.34 | 211,458.34 | 2,326,041.68 |
| 3-2 | 588,541.66 | 58,854.16 | 647,395.82 |
| 3-3 | 819,444.44 | 81,944.44 | 901,388.88 |
| 3-4 | 293,055.56 | 29,305.56 | 322,361.12 |
| 3-5 | 40,000.00 | - | 40,000.00 |
| 3-6 | - | - | - |
| 4-1 | - | - | - |
| 4-2 | - | - | - |
| 4-3 | - | - | - |
| 4-4 | - | - | - |
| Total | $3,855,625.00 | $381,562.50 | $4,237,187.50 |

Exhibit 3

**Falcon Strategic Partners IV, LP**

## Senior Secured Notes - Damages Schedule Summary

| Purchase Agreement | Exhibit | Sr. Secured Notes |
|---|---|---|
| Original | 3-1 | $ 12,843,055.56 |
| First Amendment | 3-2 | 3,852,916.67 |
| Second Amendment | 3-3 | 6,421,527.78 |
| Third Amendment | 3-4 | 2,568,611.11 |
| Fourth Amendment | 3-5 | 4,077,962.96 |
| Fifth Amendment | 3-6 | 108,572.00 |
| Total | | $ 29,872,646.07 |

**Exhibit 3-1**
**Falcon Strategic Partners IV, LP**
**Senior Secured Notes - Damages Schedule**
**Original Purchase Agreement**

| | | |
|---|---|---|
| Face Value: | $ 12,500,000 | Interest Methodology - Month 30 |
| Purchase Price %: | 98.5% | Interest Methodology - Year 360 |
| Purchase Price: | 12,312,500 | Interest Payment Dates 3/15, 6/15, 9/15, 12/15 |
| Origination Date: | 07/06/15 | 1st Interest Payment Date 09/15/15 |
| Maturity Date: | 07/06/20 | Compounding Quarterly |
| Interest Rate: Cash | 10.00% | |
| Interest Rate: PIK | 1.00% | |
| Interest Rate: Default | 0.00% | |
| Interest Rate: Total | 11.00% | |

| Date Start | Date End | Days in Period | Interest Rate Total | Cash | PIK | Default | Accruals Cash Interest | PIK Principal | Default Interest | Payments Cash Interest | PIK Principal | Outstanding Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/06/15 | 09/15/15 | 71 | 11.00% | 10.00% | 1.00% | 0.00% | 246,527.78 | 24,652.78 | - | (246,527.78) | (24,652.78) | $ 12,500,000.00 |
| 09/16/15 | 12/15/15 | 88 | 11.00% | 10.00% | 1.00% | 0.00% | 305,555.56 | 30,555.56 | - | (305,555.56) | (30,555.56) | 12,500,000.00 |
| 12/16/15 | 03/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 312,500.00 | 31,250.00 | - | (312,500.00) | (31,250.00) | 12,500,000.00 |
| 03/16/16 | 06/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 312,500.00 | 31,250.00 | - | (312,500.00) | (31,250.00) | 12,500,000.00 |
| 06/16/16 | 09/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 312,500.00 | 31,250.00 | - | (312,500.00) | (31,250.00) | 12,500,000.00 |
| 09/16/16 | 12/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 312,500.00 | 31,250.00 | - | (312,500.00) | (31,250.00) | 12,500,000.00 |
| 12/16/16 | 03/15/17 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 312,500.00 | 31,250.00 | - | (312,500.00) | (31,250.00) | 12,500,000.00 |
| 03/16/17 | 04/11/17 | 26 | 11.00% | 10.00% | 1.00% | 0.00% | 90,277.78 | 9,027.78 | - | | | 12,599,305.56 |
| 04/12/17 | 06/05/17 | 54 | 13.00% | 10.00% | 1.00% | 2.00% | 187,500.00 | 18,750.00 | 37,500.00 | | | 12,843,055.56 |
| | | | | | | | | | | (2,114,583.33) | (211,458.33) | |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 12-127, 188-195; NECO - Accrual at 2017.06.05 (CH7TRUSTEE_0139691).
Note:   Using 90 days between 09/16/15 and 12/15/15 results in immaterial difference in accrued interest.

**Exhibit 3-2**
**Falcon Strategic Partners IV, LP**
**Senior Secured Notes - Damages Schedule**
**First Amendment to the Purchase Agreement**

| | | |
|---|---|---|
| Face Value: | $ 3,750,000 | |
| Purchase Price %: | 98.5% | |
| Purchase Price: | 3,693,750 | |
| Origination Date: | 08/20/15 | |
| Maturity Date: | 07/06/20 | |
| Interest Rate: Cash | 10.00% | |
| Interest Rate: PIK | 1.00% | |
| Interest Rate: Default | 0.00% | |
| Interest Rate: Total | 11.00% | |

| | |
|---|---|
| Interest Methodology - Month | 30 |
| Interest Methodology - Year | 360 |
| Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 |
| 1st Interest Payment Date | 09/15/15 |
| Compounding | Quarterly |

| Date Start | Date End | Days in Period | Interest Rate Total | Interest Rate Cash | Interest Rate PIK | Interest Rate Default | Accruals Cash Interest | Accruals PIK Principal | Accruals Default Interest | Payments Cash Interest | Payments PIK Principal | Outstanding Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/20/15 | 09/15/15 | 26 | 11.00% | 10.00% | 1.00% | 0.00% | 27,083.33 | 2,708.33 | - | (27,083.33) | (2,708.33) | $ 3,750,000.00 |
| 09/16/15 | 12/15/15 | 89 | 11.00% | 10.00% | 1.00% | 0.00% | 92,708.33 | 9,270.83 | - | (92,708.33) | (9,270.83) | 3,750,000.00 |
| 12/16/15 | 03/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 93,750.00 | 9,375.00 | - | (93,750.00) | (9,375.00) | 3,750,000.00 |
| 03/16/16 | 06/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 93,750.00 | 9,375.00 | - | (93,750.00) | (9,375.00) | 3,750,000.00 |
| 06/16/16 | 09/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 93,750.00 | 9,375.00 | - | (93,750.00) | (9,375.00) | 3,750,000.00 |
| 09/16/16 | 12/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 93,750.00 | 9,375.00 | - | (93,750.00) | (9,375.00) | 3,750,000.00 |
| 12/16/16 | 03/15/17 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 93,750.00 | 9,375.00 | - | (93,750.00) | (9,375.00) | 3,750,000.00 |
| 03/16/17 | 04/11/17 | 26 | 11.00% | 10.00% | 1.00% | 0.00% | 27,083.33 | 2,708.33 | - | | | 3,779,791.67 |
| 04/12/17 | 06/05/17 | 54 | 13.00% | 10.00% | 1.00% | 2.00% | 56,250.00 | 5,625.00 | 11,250.00 | | | 3,852,916.67 |
| | | | | | | | | | | (588,541.67) | (58,854.17) | |

Sources:  National Events Intermediate, LLC - Claim No. 6-1 pp. 129-143; NECO - Accrual at 2017.06.05 (CH7TRUSTEE_0139691).
Note:  Using 90 days between 09/16/15 and 12/15/15 results in immaterial difference in accrued interest.

**Exhibit 3-3**
**Falcon Strategic Partners IV, LP**
**Senior Secured Notes - Damages Schedule**
**Second Amendment to Purchase Agreement**

| | | |
|---|---|---|
| Face Value: | 6,250,000 | |
| Purchase Price %: | 98.5% | |
| Purchase Price: | 6,156,250 | |
| Origination Date: | 11/23/15 | |
| Maturity Date: | 07/06/20 | |
| Interest Rate: Cash | 10.00% | |
| Interest Rate: PIK | 1.00% | |
| Interest Rate: Default | 0.00% | |
| Interest Rate: Total | 11.00% | |

| | | |
|---|---|---|
| Interest Methodology - Month | 30 | |
| Interest Methodology - Year | 360 | |
| Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 | |
| 1st Interest Payment Date | 12/15/15 | |
| Compounding | Quarterly | |

| Date | | Days | Interest Rate | | | | Accruals | | | Payments | | Outstanding |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Start | End | in Period | Total | Cash | PIK | Default | Cash Interest | PIK Principal | Default Interest | Cash Interest | PIK Principal | Balance |
| | | | | | | | | | | | | $ 6,250,000.00 |
| 11/23/15 | 12/15/15 | 22 | 11.00% | 10.00% | 1.00% | 0.00% | 38,194.44 | 3,819.44 | - | (38,194.44) | (3,819.44) | 6,250,000.00 |
| 12/16/15 | 03/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 156,250.00 | 15,625.00 | - | (156,250.00) | (15,625.00) | 6,250,000.00 |
| 03/16/16 | 06/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 156,250.00 | 15,625.00 | - | (156,250.00) | (15,625.00) | 6,250,000.00 |
| 06/16/16 | 09/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 156,250.00 | 15,625.00 | - | (156,250.00) | (15,625.00) | 6,250,000.00 |
| 09/16/16 | 12/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 156,250.00 | 15,625.00 | - | (156,250.00) | (15,625.00) | 6,250,000.00 |
| 12/16/16 | 03/15/17 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 156,250.00 | 15,625.00 | - | (156,250.00) | (15,625.00) | 6,250,000.00 |
| 03/16/17 | 04/11/17 | 26 | 11.00% | 10.00% | 1.00% | 0.00% | 45,138.89 | 4,513.89 | - | | | 6,299,652.78 |
| 04/12/17 | 06/05/17 | 54 | 13.00% | 10.00% | 1.00% | 2.00% | 93,750.00 | 9,375.00 | 18,750.00 | | | 6,421,527.78 |
| | | | | | | | | | | (819,444.44) | (81,944.44) | |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 144-154, 196-203; NECO - Accrual at 2017.06.05 (CH7TRUSTEE_0139691).

Exhibit 3-4
**Falcon Strategic Partners IV, LP**
**Senior Secured Notes - Damages Schedule**
**Third Amendment to the Purchase Agreement**

| | | |
|---|---|---|
| Face Value: | 2,500,000 | |
| Purchase Price %: | 98.5% | |
| Purchase Price: | 2,462,500 | |
| Origination Date: | 01/13/16 | |
| Maturity Date: | 07/06/20 | |
| Interest Rate: Cash | 10.00% | |
| Interest Rate: PIK | 1.00% | |
| Interest Rate: Default | 0.00% | |
| Interest Rate: Total | 11.00% | |

| | |
|---|---|
| Interest Methodology - Month | 30 |
| Interest Methodology - Year | 360 |
| Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 |
| 1st Interest Payment Date | 03/15/15 |
| Compounding | Quarterly |

| Date | | Days | Interest Rate | | | | Accruals | | | Payments | | Outstanding |
| Start | End | in Period | Total | Cash | PIK | Default | Cash Interest | PIK Principal | Default Interest | Cash Interest | PIK Principal | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/13/16 | 03/15/16 | 62 | 11.00% | 10.00% | 1.00% | 0.00% | 43,055.56 | 4,305.56 | - | (43,055.56) | (4,305.56) | $ 2,500,000.00 |
| 03/16/16 | 06/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 62,500.00 | 6,250.00 | - | (62,500.00) | (6,250.00) | 2,500,000.00 |
| 06/16/16 | 09/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 62,500.00 | 6,250.00 | - | (62,500.00) | (6,250.00) | 2,500,000.00 |
| 09/16/16 | 12/15/16 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 62,500.00 | 6,250.00 | - | (62,500.00) | (6,250.00) | 2,500,000.00 |
| 12/16/16 | 03/15/17 | 90 | 11.00% | 10.00% | 1.00% | 0.00% | 62,500.00 | 6,250.00 | - | (62,500.00) | (6,250.00) | 2,500,000.00 |
| 03/16/17 | 04/11/17 | 26 | 11.00% | 10.00% | 1.00% | 0.00% | 18,055.56 | 1,805.56 | - | | | 2,519,861.11 |
| 04/12/17 | 06/05/17 | 54 | 13.00% | 10.00% | 1.00% | 2.00% | 37,500.00 | 3,750.00 | 7,500.00 | | | 2,568,611.11 |
| | | | | | | | | | | (293,055.56) | (29,305.56) | |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 155-163, 209-216; NECO - Accrual at 2017.06.05 (CH7TRUSTEE_0139691).

**Exhibit 3-5**
**Falcon Strategic Partners IV, LP**
**Senior Secured Notes - Damages Schedule**
**Fourth Amendment to Purchase Agreement**

| | | |
|---|---|---|
| Face Value: | 4,000,000 | Interest Methodology - Month | 30 |
| Purchase Price %: | 100.0% | Interest Methodology - Year | 360 |
| Purchase Price: | 4,000,000 | Interest Payment Dates | 4/30, 5/31, 6/30 |
| Origination Date: | 04/11/17 | 1st Interest Payment Date | 04/30/17 |
| Maturity Date: | 07/06/20 | Compounding | Monthly |
| Interest Rate (Monthly): | 1.50% | | |
| Interest Rate (Annual): | 18.00% | | |
| Interest Rate: PIK | 0.00% | | |
| Interest Rate: Default | 0.00% | | |
| Interest Rate: Total | 18.00% | | |
| Interest Rate: Additional | 10.00% | | |

| Date | | Days | Interest Rate | | | | Accruals | | | Payments | | Outstanding |
| Start | End | in Period | Total | Cash | PIK | Default | Cash Interest | PIK Principal | Default Interest | Cash Interest | PIK Principal | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | $ 4,000,000.00 |
| 04/11/17 | 04/30/17 | 20 | 20.00% | 18.00% | 0.00% | 2.00% | 40,000.00 | - | - | (40,000.00) | | 4,000,000.00 |
| 05/01/17 | 05/31/17 | 30 | 20.00% | 18.00% | 0.00% | 2.00% | 60,000.00 | - | 6,666.67 | | | 4,066,666.67 |
| 06/01/17 | 06/05/17 | 5 | 20.00% | 18.00% | 0.00% | 2.00% | 10,166.67 | - | 1,129.63 | | | 4,077,962.96 |
| | | | | | | | | | | (40,000.00) | - | |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 164-175, 222-229; NECO - Accrual at 2017.06.05 (CH7TRUSTEE_0139691).
Note:   Using Actual Days in period between 04/11/17 and 04/30/17 results in immaterial difference in accrued interest.
        Using Actual Days in period between 06/01/17 and 06/05/17 results in immaterial difference in accrued interest.

**Exhibit 3-6**
**Falcon Strategic Partners IV, LP**
**Senior Secured Notes - Damages Schedule**
**Fifth Amendment to Purchase Agreement**

| | |
|---|---|
| Face Value: | 108,572 |
| Purchase Price %: | 100.0% |
| Purchase Price: | 108,572 |
| Origination Date: | 06/05/17 |
| Maturity Date: | 07/06/20 |
| Interest Rate: Cash | 10.00% |
| Interest Rate: PIK | 1.00% |
| Interest Rate: Default | 0.00% |
| Interest Rate: Total | 11.00% |

| | |
|---|---|
| Interest Methodology - Month | 30 |
| Interest Methodology - Year | 360 |
| Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 |
| 1st Interest Payment Date | 09/15/17 |
| Compounding | Quarterly |

| Date | | Days in Period | Interest Rate | | | | Accruals | | | Payments | | Outstanding Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Start | End | | Total | Cash | PIK | Default | Cash Interest | PIK Principal | Default Interest | Cash Interest | PIK Principal | |
| | | | | | | | | | | | | $  108,572.00 |
| 06/05/17 | 06/05/17 | 0 | 11.00% | 10.00% | 1.00% | 0.00% | - | - | - | - | - | 108,572.00 |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 176-186, 230-237; NECO - Accrual at 2017.06.05 (CH7TRUSTEE_0139691).

**Exhibit 4**

**Falcon Strategic Partners IV, LP**

**Senior Unsecured PIK Notes - Damages Schedule Summary**

| Purchase Agreement | Exhibit | Sr. Unsecured PIK Notes |
|---|---|---|
| Original | 4-1 | $ 8,753,911.37 |
| First Amendment | 4-2 | 2,600,883.06 |
| Second Amendment | 4-3 | 4,246,991.36 |
| Third Amendment | 4-4 | 1,680,219.11 |
| Total | | $ 17,282,004.90 |

Exhibit 4-1
**Falcon Strategic Partners IV, LP**
**Senior Unsecured PIK Notes - Damages Schedule**
**Original Purchase Agreement**

| | |
|---|---|
| Face Value: | $ 7,500,000 |
| Purchase Price %: | 98.5% |
| Purchase Price: | 7,387,500 |
| Origination Date: | 07/06/15 |
| Maturity Date: | 07/06/22 |
| Interest Rate: Cash | 0.00% |
| Interest Rate: PIK | 8.00% |
| Interest Rate: Default | 0.00% |
| Interest Rate: Total | 8.00% |

| | |
|---|---|
| Interest Methodology - Month | 30 |
| Interest Methodology - Year | 360 |
| Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 |
| 1st Interest Payment Date | 09/15/15 |
| Compounding | Quarterly |

| Date | | Days | Interest Rate | | | | Accrual | | Accrued |
|---|---|---|---|---|---|---|---|---|---|
| Start | End | in Period | Total | Cash | PIK | Default | PIK | Default | Balance |
| | | | | | | | | | $ 7,500,000.00 |
| 07/06/15 | 09/15/15 | 69 | 8.00% | 0.00% | 8.00% | 0.00% | 115,000.00 | - | 7,615,000.00 |
| 09/16/15 | 12/15/15 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 152,300.00 | - | 7,767,300.00 |
| 12/16/15 | 03/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 155,346.00 | - | 7,922,646.00 |
| 03/16/16 | 06/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 158,452.92 | - | 8,081,098.92 |
| 06/16/16 | 09/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 161,621.98 | - | 8,242,720.90 |
| 09/16/16 | 12/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 164,854.42 | - | 8,407,575.32 |
| 12/16/16 | 03/15/17 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 168,151.51 | - | 8,575,726.82 |
| 03/16/17 | 04/11/17 | 26 | 8.00% | 0.00% | 8.00% | 0.00% | 49,548.64 | | 8,625,275.47 |
| 04/12/17 | 06/05/17 | 54 | 10.00% | 0.00% | 8.00% | 2.00% | 102,908.72 | 25,727.18 | 8,753,911.37 |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 12-127, 332-339; NECO - Accrual at 2017.06.05
(CH7TRUSTEE_0139691).

Note: Using Actual Days between 07/06/15 and 09/15/15 results in immaterial difference in accrued interest.

Exhibit 4-2

## Falcon Strategic Partners IV, LP
## Senior Unsecured PIK Notes - Damages Schedule
## First Amendment to the Purchase Agreement

| Face Value: | 2,250,000 | Interest Methodology - Month | 30 |
| Purchase Price %: | 98.5% | Interest Methodology - Year | 360 |
| Purchase Price: | 2,216,250 | Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 |
| Origination Date: | 08/20/15 | 1st Interest Payment Date | 09/15/15 |
| Maturity Date: | 07/06/22 | Compounding | Quarterly |
| Interest Rate: Cash | 0.00% | | |
| Interest Rate: PIK | 8.00% | | |
| Interest Rate: Default | 0.00% | | |
| Interest Rate: Total | 8.00% | | |

| Date | | Days | Interest Rate | | | | Accrual | | Accrued |
| Start | End | in Period | Total | Cash | PIK | Default | PIK | Default | Balance |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | $  2,250,000.00 |
| 08/20/15 | 09/15/15 | 25 | 8.00% | 0.00% | 8.00% | 0.00% | 12,500.00 | - | 2,262,500.00 |
| 09/16/15 | 12/15/15 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 45,250.00 | - | 2,307,750.00 |
| 12/16/15 | 03/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 46,155.00 | - | 2,353,905.00 |
| 03/16/16 | 06/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 47,078.10 | - | 2,400,983.10 |
| 06/16/16 | 09/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 48,019.66 | - | 2,449,002.76 |
| 09/16/16 | 12/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 48,980.06 | - | 2,497,982.82 |
| 12/16/16 | 03/15/17 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 49,959.66 | - | 2,547,942.47 |
| 03/16/17 | 04/11/17 | 26 | 8.00% | 0.00% | 8.00% | 0.00% | 14,721.45 | - | 2,562,663.92 |
| 04/12/17 | 06/05/17 | 54 | 10.00% | 0.00% | 8.00% | 2.00% | 30,575.31 | 7,643.83 | 2,600,883.06 |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 129-143, 340-347; NECO - Accrual at 2017.06.05
(CH7TRUSTEE_0139691).

Note:   Using Actual Days between 08/20/15 and 09/15/15 results in immaterial difference in accrued interest.

**Exhibit 4-3**
## Falcon Strategic Partners IV, LP
## Senior Unsecured PIK Notes - Damages Schedule
## Second Amendment to Purchase Agreement

| | | | |
|---|---|---|---|
| Face Value: | 3,750,000 | Interest Methodology - Month | 30 |
| Purchase Price %: | 98.5% | Interest Methodology - Year | 360 |
| Purchase Price: | 3,693,750 | Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 |
| Origination Date: | 11/23/15 | 1st Interest Payment Date | 12/15/15 |
| Maturity Date: | 07/06/22 | Compounding | Quarterly |
| Interest Rate: Cash: | 0.00% | | |
| Interest Rate: PIK: | 8.00% | | |
| Interest Rate: Default: | 0.00% | | |
| Interest Rate: Total: | 8.00% | | |

| Date | | Days | Interest Rate | | | | Accrual | | Accrued |
| Start | End | in Period | Total | Cash | PIK | Default | PIK | Default | Balance |
|---|---|---|---|---|---|---|---|---|---|
| 11/23/15 | 12/15/15 | 22 | 8.00% | 0.00% | 8.00% | 0.00% | 18,333.33 | - | $ 3,750,000.00 |
| 12/16/15 | 03/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 75,366.67 | - | 3,768,333.33 |
| 03/16/16 | 06/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 76,874.00 | - | 3,843,700.00 |
| 06/16/16 | 09/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 78,411.48 | - | 3,920,574.00 |
| 09/16/16 | 12/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 79,979.71 | - | 3,998,985.48 |
| 12/16/16 | 03/15/17 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 81,579.30 | - | 4,078,965.19 |
| 03/16/17 | 04/11/17 | 26 | 8.00% | 0.00% | 8.00% | 0.00% | 24,038.70 | - | 4,160,544.49 |
| 04/12/17 | 06/05/17 | 54 | 10.00% | 0.00% | 8.00% | 2.00% | 49,926.53 | 12,481.63 | 4,184,583.19 |
| | | | | | | | | | 4,246,991.36 |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 144-154, 353-360; NECO - Accrual at 2017.06.05 (CH7TRUSTEE_0139691).

**Exhibit 4-4**
# Falcon Strategic Partners IV, LP
## Senior Unsecured PIK Notes - Damages Schedule
## Third Amendment to Purchase Agreement

| Face Value: | 1,500,000 | Interest Methodology - Month | 30 |
|---|---|---|---|
| Purchase Price %: | 98.5% | Interest Methodology - Year | 360 |
| Purchase Price: | 1,477,500 | Interest Payment Dates | 3/15, 6/15, 9/15, 12/15 |
| Origination Date: | 01/13/16 | 1st Interest Payment Date | 03/15/16 |
| Maturity Date: | 07/06/22 | Compounding | Quarterly |
| Interest Rate: Cash | 0.00% | | |
| Interest Rate: PIK | 8.00% | | |
| Interest Rate: Default | 0.00% | | |
| Interest Rate: Total | 8.00% | | |

| Date | | Days | Interest Rate | | | | Accrual | | Accrued |
|---|---|---|---|---|---|---|---|---|---|
| Start | End | in Period | Total | Cash | PIK | Default | PIK | Default | Balance |
| | | | | | | | | | $ 1,500,000.00 |
| 01/13/16 | 03/15/16 | 62 | 8.00% | 0.00% | 8.00% | 0.00% | 20,666.67 | - | 1,520,666.67 |
| 03/16/16 | 06/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 30,413.33 | - | 1,551,080.00 |
| 06/16/16 | 09/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 31,021.60 | - | 1,582,101.60 |
| 09/16/16 | 12/15/16 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 31,642.03 | - | 1,613,743.63 |
| 12/16/16 | 03/15/17 | 90 | 8.00% | 0.00% | 8.00% | 0.00% | 32,274.87 | - | 1,646,018.50 |
| 03/16/17 | 04/11/17 | 26 | 8.00% | 0.00% | 8.00% | 0.00% | 9,510.33 | - | 1,655,528.83 |
| 04/12/17 | 06/05/17 | 54 | 10.00% | 0.00% | 8.00% | 2.00% | 19,752.22 | 4,938.06 | 1,680,219.11 |

Sources: National Events Intermediate, LLC - Claim No. 6-1 pp. 155-163, 366-373; NECO - Accrual at 2017.06.05
(CH7TRUSTEE_0139691).

**Exhibit 5**
# Taly USA Holdings Inc. and SLL USA Holdings, LLC
## Promissory Notes

| No. | Date | Promissory Note Entities | Principal Amount | Bates | Advanced Amount |
|---|---|---|---|---|---|
| 100 | 06/02/16 | NEA Inc. to Taly USA Holdings Inc. | $ 750,000 | Taly-0000441 | $ 750,000 |
| 101 | 06/16/16 | NEA Inc. to Taly USA Holdings Inc. | 600,000 | Taly-0000443 | 600,000 |
| 102 | 06/29/16 | NEA Inc. to Taly USA Holdings Inc. | 1,000,000 | Taly-0000448 | 1,000,000 |
| 103 | 07/07/16 | NEA Inc. to Taly USA Holdings Inc. | 900,000 | Taly-0000450 | 900,000 |
| 104 | 07/28/16 | NEA Inc. to Taly USA Holdings Inc. | 1,584,000 | Taly-0000452 | 1,584,000 |
| 105 | 08/09/16 | NEA Inc. to Taly USA Holdings Inc. | 765,000 | Taly-0000457 | 765,000 |
| 106 | 08/26/16 | NEA Inc. to Taly USA Holdings Inc. | 1,265,000 | Taly-0000462 | 1,265,000 |
| 107 | 08/31/16 | NEA Inc. to Taly USA Holdings Inc. | 675,000 | Taly-0000467 | 675,000 |
| 108 | 09/13/16 | NEA Inc. to Taly USA Holdings Inc. | 1,120,000 | Taly-0000470 | 1,120,000 |
| 109 | 10/05/16 | NEA Inc. to Taly USA Holdings Inc. | 1,921,750 | Taly-0000476 | 1,921,750 |
| 111 | 10/19/16 | NEA Inc. to Taly USA Holdings Inc. | 634,000 | Taly-0000478 | - |
| 110 | 10/20/16 | NEA Inc. to Taly USA Holdings Inc. | 350,000 | Taly-0000483 | 350,000 |
| 113 | 10/24/16 | NEA Inc. to Taly USA Holdings Inc. | 505,000 | Taly-0000488 | 505,000 |
| 112 | 10/26/16 | NEA Inc. to Taly USA Holdings Inc. | 850,000 | Taly-0000493 | 200,000 |
| 114 | 11/10/16 | NEA Inc. to Taly USA Holdings Inc. | 1,800,000 | Taly-0000498 | 1,200,000 |
| 115 | 11/22/16 | NEA Inc. to Taly USA Holdings Inc. | 1,900,000 | Taly-0000503 | 1,188,721 |
| 116 | 11/28/16 | NEA Inc. to Taly USA Holdings Inc. | 2,600,000 | Taly-0007701 | 1,551,200 |
| 117 | 12/12/16 | NEA Inc. to Taly USA Holdings Inc. | 3,700,000 | Taly-0000505 | - |
|  | 12/13/16 | NEA Inc. to Taly USA Holdings Inc. | - | CBNA00058224 at 00058299 | 445,000 |
| 118 | 12/27/16 | NEA Inc. to Taly USA Holdings Inc. | 3,200,000 | Taly-0000510 | 3,200,000 |
| 119 | 12/29/16 | NEA Inc. to Taly USA Holdings Inc. | 1,900,000 | Taly-0000515 | 1,000,000 |
| 120 | 12/30/16 | NEA Inc. to Taly USA Holdings Inc. | 1,354,000 | Taly-0000520 | 1,300,000 |
| 121 | 01/10/17 | NEA Inc. to Taly USA Holdings Inc. | 2,378,000 | Taly-0000525 | 2,278,000 |
| 122 | 01/18/17 | Jason Nissen to Taly USA Holdings Inc. | 2,242,500 | Taly-0000549 | 2,242,500 |
| 123 | 01/24/17 | NEA Inc. to Taly USA Holdings Inc. | 1,565,500 | Taly-0000559 | 1,565,500 |
| 124 | 01/27/17 | NEA Inc. to Taly USA Holdings Inc. | 1,437,250 | Taly-0000436 | 1,437,250 |
|  | 02/24/17 | NEA Inc. to Taly USA Holdings Inc. | - | CBNA00058224 at 00058316 | 525,000 |
| 125 | 03/01/17 | NEA Inc. to Taly USA Holdings Inc. | 10,000,000 | Taly-0000527 | - |

**Exhibit 5**

# Taly USA Holdings Inc. and SLL USA Holdings, LLC
## Promissory Notes

| No. | Date | Promissory Note Entities | Principal Amount | Bates | Advanced Amount |
|---|---|---|---|---|---|
| 126 | 03/01/17 | NEA Inc. to Taly USA Holdings Inc. | 8,000,000 | Taly-0000532 | - |
| 129 | 03/01/17 | NEA Inc. to SLL USA Holdings LLC | 810,000 | Taly-0000537 | 810,000 |
| 127 | 03/13/17 | NEA Inc. to Taly USA Holdings Inc. | 1,400,000 | Taly-0000539 | 800,000 |
| 128 | 03/13/17 | NEA Inc. to Taly USA Holdings Inc. | 1,180,000 | Taly-0000544 | 950,000 |
| | Total | | | | $ 32,128,921 |

Sources:

Taly-0000441-Taly-0000442;
Taly-0000443-Taly-0000447;
Taly-0000448-Taly-0000449;
Taly-0000450-Taly-0000451;
Taly-0000452-Taly-0000456;
Taly-0000457-Taly-0000461;
Taly-0000462-Taly-0000466;
Taly-0000467-Taly-0000469;
Taly-0000470-Taly-0000475;
Taly-0000476-Taly-0000477;
Taly-0000478-Taly-0000482;
Taly-0000483-Taly-0000487;
Taly-0000488-Taly-0000492;
Taly-0000493-Taly-0000497;
Taly-0000498-Taly-0000502;
Taly-0000503-Taly-0000504;
Taly-0007701-Taly-0007705;
Taly-0000505-Taly-0000509;
Taly-0000510-Taly-0000514;
Taly-0000515-Taly-0000519;

Taly-0000520-Taly-0000524;
Taly-0000525-Taly-0000526;
Taly-0000549-Taly-0000551;
Taly-0000559-Taly-0000563;
Taly-0000436-Taly-0000440;
Taly-0000527-Taly-0000531;
Taly-0000532-Taly-0000536;
Taly-0000537-Taly-0000538;
Taly-0000539-Taly-0000543;
Taly-0000544-Taly-0000548;
Book 4 - Statements for National Event Company II, LLC
(NECO II), Account ████ 8419 (CBNA00058490);
Book 6 - Statements for National Events of America, Inc.
(INEA), Account ████ 8376 (CBNA00058224);
Book 7 - Statements for New World Events Group Inc.
(New WEG), Account ████ 8421 (CBNA00058692); and
Taly Note Numbers based on information provided by Taly.

Exhibit 6
**Taly USA Holdings Inc. and SLL USA Holdings, LLC**
**Damages Schedule**

| Note No. | Date | Note Principal | Use of Proceeds | Advance | Minimum Return | Repayments Advance | Repayments Return | Outstanding Advance | Outstanding Return | Cash Transaction Confirmation |
|---|---|---|---|---|---|---|---|---|---|---|
| 100 | 06/02/16 | $ 750,000 | MLB All Star Events | $ 750,000 | $ 75,000 | | | $ 750,000 | $ 75,000 | CBNA00058224 at 00058262 |
| | 08/08/16 | | | | | 750,000 | | 750,000 | 75,000 | CBNA00058224 at 00058275 |
| | 08/24/16 | | | | | | 77,586.97 | - | - | CBNA00058224 at 00058279 |
| 101 | 06/16/16 | 600,000 | 2016 U.S. Open | 600,000 | 72,000 | | | 600,000 | 72,000 | CBNA00058058 at 00058267 |
| | 09/28/16 | | | | | 100,000 | | 500,000 | 72,000 | CBNA00058058 at 00058161 |
| | 09/28/16 | | | | | 250,000 | | 250,000 | 72,000 | CBNA00058058 at 00058161 |
| | 09/29/16 | | | | | 225,000 | | 25,000 | 72,000 | CBNA00058058 at 00058161 |
| | 09/30/16 | | | | | 25,000 | | - | 72,000 | CBNA00058058 at 00058161 |
| | 09/30/16 | | | | | | 72,000.00 | - | - | CBNA00058058 at 00058286 |
| 102 | 06/29/16 | 1,000,000 | Hamilton in Chicago | 1,000,000 | 60,000 (a) | | | 1,000,000 | 60,000 | CBNA00058224 at 00058268 |
| | 07/19/16 | | | | | | 30,000.00 | 1,000,000 | 30,000 | CBNA00058224 at 00058273 |
| | 07/28/16 | | | | | | 30,000.00 | 1,000,000 | - | CBNA00058224 at 00058274 |
| | 09/30/16 | | | | | 1,000,000 | | - | - | CBNA00058224 at 00058286 |
| 103 | 07/08/16 | 900,000 | 2016 U.S. Open Booth | 900,000 | 75,000 | | | 900,000 | 75,000 | CBNA00058224 at 00058268 |
| | 07/22/16 | | | | | 900,000 | 75,000.00 | - | - | CBNA00058224 at 00058274 |
| 104 | 07/28/16 | 1,584,000 | Adele 2016 World Tour | 1,584,000 | 316,800 | | | 1,584,000 | 316,800 | CBNA00058224 at 00058274 |
| | 11/04/16 | | Rollover to Note 112 | | | 450,000 | | 1,134,000 | 316,800 | CBNA00058224 at 00058292 |
| | | | Rollover to Note 114 | | | 650,000 | | 484,000 | 316,800 | |
| | | | Rollover to Note 116 | | | 484,000 | | - | 316,800 | |
| | | | | | | | 316,800.00 | - | - | |
| 105 | 08/09/16 | 765,000 | Adele II | 765,000 | 153,000 | | | 765,000 | 153,000 | CBNA00058224 at 00058275 |
| | 11/17/16 | | Rollover to Note 114 | | | 70,000 | | 695,000 | 153,000 | CBNA00058224 at 00058295 |
| | | | Rollover to Note 116 | | | 116,000 | | 579,000 | 153,000 | |
| | | | | | | 579,000 | | - | 153,000 | |
| | | | | | | | 153,000.00 | - | - | |
| 106 | 08/26/16 | 1,265,000 | Dodgers/Giants/Cubs/Nats | 1,265,000 | 227,700 | | | 1,265,000 | 227,700 | CBNA00058224 at 00058279 |
| | 01/06/17 | | | | | 250,000 | | 1,015,000 | 227,700 | CBNA00058058 at 00058183 |
| | 01/09/17 | | Rollover to Note 119 | | | 115,000 | 35,000 | 900,000 | 192,700 | CBNA00058224 at 00058309 |
| | 01/11/17 | | Rollover to Note 121 | | | | 123,102.00 | 900,000 | 69,598 | CBNA00058224 at 00058306 |
| | | | | | | 900,000 | 100,000.00 | - | 69,598 | |
| | | | | | | | | - | - | |
| 107 | 08/31/16 | 675,000 | Mets I | 675,000 | 36,279 (b) | | | 675,000 | 36,279 | CBNA00058224 at 00058280 |
| | | | Rollover to Note 115 | | | 675,000 | 36,279 | - | - | |
| 108 | 09/13/16 | 1,120,000 | Mets II | 1,120,000 | 78,400 | | | 1,120,000 | 78,400 | CBNA00058224 at 00058281 |
| | 10/28/16 | | | | | 156,000 | | 964,000 | 78,400 | CBNA00058224 at 00058291 |
| | 11/17/16 | | | | | 330,000 | | 634,000 | 78,400 | CBNA00058224 at 00058295 |
| | 11/21/16 | | Rollover to Note 111 | | | 634,000 | 78,400.00 | - | - | CBNA00058224 at 00058296 |

Exhibit 6
**Taly USA Holdings Inc. and SLL USA Holdings, LLC**
**Damages Schedule**

| Note No. | Date | Note Principal | Use of Proceeds | Advance | Minimum Return | Repayments Advance | Repayments Return | Outstanding Advance | Outstanding Return | Cash Transaction Confirmation |
|---|---|---|---|---|---|---|---|---|---|---|
| 109 | 10/06/16 | 1,921,750 | UFC 205 | 1,921,750 | 345,915 | | | 1,921,750 | 345,915 | CBNA00058224 at 00058286 |
| | 12/15/16 | | | | | 122,163 | 377,837.00 | 1,799,587 | - | CBNA00058224 at 00058301 |
| | 12/15/16 | | | | | 49,587 | 120,000 | 1,799,587 | - | CBNA00058224 at 00058301 |
| | 12/15/16 | | Rollover to Note 117 | | | 1,750,000 | | 1,750,000 | - | CBNA00058224 at 00058301 |
| 110 | 10/20/16 | 350,000 | Super Bowl | 350,000 | 70,000 | | | 350,000 | 70,000 | CBNA00058224 at 00058289 |
| 111 | 10/20/16 | 634,000 | World Series | - | 95,100 | | | - | 95,100 | |
| | 12/07/16 | | Rollover from 108 | 634,000 | | | | 634,000 | 95,100 | CBNA00058224 at 00058298 |
| | 12/07/16 | | | - | | 634,000 | 130,753.00 | - | - | CBNA00058224 at 00058298 |
| 112 | 10/21/16 | 850,000 | Super Bowl | 200,000 | 170,000 | | | 200,000 | 170,000 | CBNA00058224 at 00058290 |
| | | | Note 104 Rollover | 650,000 | | | | 850,000 | 170,000 | CBNA00058224 at 00058289 / CBNA00058224 at 00058298 |
| 113 | 10/24/16 | 505,000 | World Series | 505,000 | 75,750 | | | 505,000 | 75,750 | CBNA00058224 at 00058289 |
| | 12/05/16 | | | | | 505,000 | 117,188.50 | | - | CBNA00058224 at 00058298 |
| 114 | 11/10/16 | 1,800,000 | Super Bowl Suites | 1,200,000 | 150,000 | | | 1,200,000 | 150,000 | CBNA00058224 at 00058292 |
| | | | Note 104 Rollover | 484,000 | | | | 1,684,000 | 150,000 | |
| | | | Note 105 Rollover | 116,000 | | | | 1,800,000 | 150,000 | |
| | | | Rollover to Note 117 | | | 1,800,000 | | - | - | |
| | | | Rollover to Note 117 | | | | 150,000 | - | | |
| 115 | 11/22/16 | 1,900,000 | Super Bowl | 1,188,721 | 380,000 | | | 1,188,721 | 380,000 | CBNA00058224 at 00058295 |
| | | | Note 107 Rollover | 675,000 | | | | 1,863,721 | 380,000 | |
| | | | Note 107 Rollover Profit | 36,279 | | | | 1,900,000 | 380,000 | |
| 116 | 11/28/16 | 2,600,000 | College Football Playoffs | 1,500,000 | 200,000 | | | 1,500,000 | 200,000 | CBNA00058224 at 00058296 |
| 116 | 11/30/16 | | College Football Playoffs Profit | 51,200 | | | | 1,551,200 | 200,000 | CBNA00058224 at 00058296 |
| | | | Note 104 Rollover Profit | 316,800 | | | | 1,868,000 | 200,000 | |
| | | | Note 105 Rollover | 579,000 | | | | 2,447,000 | 200,000 | |
| | | | Note 105 Rollover Profit | 153,000 | | | | 2,600,000 | 200,000 | |
| | 12/21/16 | | | | | 950,000 | | 1,650,000 | 200,000 | CBNA00058224 at 00058302 |
| | 12/23/16 | | | | | 475,000 | | 1,175,000 | 200,000 | CBNA00058224 at 00058302 |
| | 12/27/16 | | | | | 465,000 | | 710,000 | 200,000 | CBNA00058224 at 00058303 |
| | 12/27/16 | | | | | 460,000 | | 250,000 | 200,000 | CBNA00058224 at 00058303 |
| | 12/27/16 | | | | | 250,000 | | - | 200,000 | CBNA00058224 at 00058303 |
| | 12/27/16 | | | | | | 175,000.00 | - | 25,000 | CBNA00058224 at 00058303 |
| | 12/28/16 | | | | | | 25,000.00 | | - | CBNA00058224 at 00058304 |

**Exhibit 6**

**Taly USA Holdings Inc. and SLL USA Holdings, LLC**

**Damages Schedule**

| Note No. | Date | Note Principal | Use of Proceeds | Advance | Minimum Return | Repayments Advance | Repayments Return | Outstanding Advance | Outstanding Return | Cash Transaction Confirmation |
|---|---|---|---|---|---|---|---|---|---|---|
| 117 | 12/13/16 | 3,700,000 | Super Bowl | - | 740,000 | | | - | 740,000 | |
| | | | Rollover Note 109 | 1,750,000 | | | | 1,750,000 | 740,000 | CBNA00058224 at 00058299 |
| | | | Rollover Note 117 | 1,800,000 | | | | 3,550,000 | 740,000 | CBNA00058224 at 00058301 |
| | | | Rollover Note 117 Profit | 150,000 | | | | 3,700,000 | 740,000 | |
| N/A | 12/13/16 | | No Promissory Note | 445,000 | - | | | 445,000 | - | CBNA00058224 at 00058303 |
| | 12/15/16 | | | | | 445,000 | | - | - | |
| 118 | 12/27/16 | 3,200,000 | Super Bowl | 3,200,000 | 640,000 | | | 3,200,000 | 640,000 | CBNA00058224 at 00058303 |
| 119 | 12/29/16 | 1,900,000 | Super Bowl | 1,000,000 | 380,000 | | | 1,000,000 | 380,000 | CBNA00058490 at 00058629 |
| | | | Note 106 Rollover | 900,000 | | | | 1,900,000 | 380,000 | |
| 120 | 12/30/16 | 1,354,000 | Super Bowl | 1,300,000 | 260,000 (c) | | | 1,300,000 | 260,000 | CBNA00058224 at 00058304 |
| 121 | 01/09/17 | 2,378,000 | Super Bowl | 2,278,000 | 475,600 | | | 2,278,000 | 475,600 | CBNA00058224 at 00058305 |
| | | Note 106 Rollover Profit | | 100,000 | | | | 2,378,000 | 475,600 | |
| 122 | 01/18/17 | 2,242,500 | Not Available | 2,242,500 | 448,500 (d) | | | 2,242,500 | 448,500 | CBNA00058224 at 00058309 |
| 123 | 01/23/17 | 1,565,500 | Super Bowl | 780,000 | 313,100 | | | 780,000 | 313,100 | CBNA00058224 at 00058309 |
| 123 | 01/24/17 | | Super Bowl | 785,500 | | | | 1,565,500 | 313,100 | CBNA00058224 at 00058309 |
| 124 | 01/27/17 | 1,437,250 | Super Bowl | 1,437,250 | 287,450 | | | 1,437,250 | 287,450 | CBNA00058224 at 00058310 |
| N/A | 02/24/17 | | No Promissory Note | 525,000 | - | | | 525,000 | - | CBNA00058224 at 00058315 |
| | 03/01/17 | | | | | 525,000 | | - | - | CBNA00058224 at 00058316 |
| 125 | 03/01/17 | 10,000,000 | March Madness | - | 1,800,000 (e) | | | - | - | |
| 126 | 03/01/17 | 8,000,000 | March Madness | - | 1,440,000 (e) | | | - | - | |
| 127 | 03/3/17 | 1,400,000 | March Madness | 800,000 | 85,714 (c) | | | 800,000 | 85,714 | CBNA00058692 at 00058749 |
| 128 | 03/15/17 | 1,180,000 | March Madness | 950,000 | 171,000 (c) | | | 950,000 | 171,000 | CBNA00058224 at 00058321 |
| 129 | 03/01/17 | 810,000 | March Madness | 670,000 | 145,800 | | | 670,000 | 145,800 | CBNA00058224 at 00058316 |
| 129 | 03/03/17 | | March Madness | 140,000 | | | | 810,000 | 145,800 | CBNA00058224 at 00058317 |
| | | | Total (Excluding Rollovers) $ | 32,128,921 | | $ 9,501,750.00 | $ 1,466,867.47 | $ 23,383,250 | $ 4,567,164 | |
| | | | Total Outstanding Balance | | | | | | | |

**Exhibit 6**
**Taly USA Holdings Inc. and SLL USA Holdings, LLC**
**Damages Schedule**

| Note No. | Date | Note Principal | Use of Proceeds | Advance | Minimum Return | Repayments Advance | Repayments Return | Outstanding Advance | Outstanding Return | Cash Transaction Confirmation |
|---|---|---|---|---|---|---|---|---|---|---|
| | 03/24/17 | | | | | 700,000 | | | | CBNA00058692 at 00058751 |
| | 03/31/17 | | | | | 850,000 | | | | CBNA00058224 at 00058323 |
| | 04/06/17 | | | | | 1,200,000.00 | | | | CBNA00058058 at 000581199 |
| | 04/11/17 | | | | | 1,450,000.00 | | | | CBNA00058058 at 000581199 |
| | 04/21/17 | | | | | 700,000.00 | | | | CBNA00058058 at 00058200 |
| | 04/28/17 | | | | | 450,000.00 | | | | CBNA00058058 at 00058201 |
| | 05/05/17 | | | | | 375,000.00 | | | | CBNA00058058 at 00058206 |
| | | | | | (f) | 5,725,000.00 | | | | |
| | | | | | | $ 16,693,617.47 | | (5,725,000) | | |

Balance $ | Advance 17,658,250 | Return $ | Total Outstanding Advance $ | Return 4,567,164 | $ | Total 22,225,414

Note:

(a) The Promissory Note stated a minimum return of $250,000, but according to Guy Tanne it was modified to be $60,000.
(b) Per Guy Tanne, the Guaranteed Minimum Return was modified to $36,279. This amount was rolled over to Note 115.
(c) Per Guy Tanne, the Guaranteed Minimum Return was adjusted on a prorated basis to the amount advanced.
(d) The Promissory Note did not indicate a Guaranteed Minimum Return. Per Guy Tanne, the minimum return was 20%.
(e) Guaranteed Minimum Return was adjusted on a prorated basis to the amount advanced for Notes 125 and 126.
(f) Payments received following March 24, 2017 were not applied to any specific loan. They were applied to the Total Outstanding Principal Balance.

Sources:

Taly-0000441-Taly-0000442;
Taly-0000443-Taly-0000447;
Taly-0000448-Taly-0000449;
Taly-0000450-Taly-0000451;
Taly-0000452-Taly-0000456;
Taly-0000457-Taly-0000461;
Taly-0000462-Taly-0000466;
Taly-0000467-Taly-0000469;
Taly-0000470-Taly-0000475;
Taly-0000476-Taly-0000477;
Taly-0000478-Taly-0000482;
Taly-0000483-Taly-0000487;
Taly-0000488-Taly-0000492;
Taly-0000493-Taly-0000497;
Taly-0000498-Taly-0000502;
Taly-0000503-Taly-0000504;
Taly-0007701-Taly-0007705;
Taly-0000505-Taly-0000509;

Taly-0000510-Taly-0000514;
Taly-0000515-Taly-0000519;
Taly-0000520-Taly-0000524;
Taly-0000525-Taly-0000526;
Taly-0000549-Taly-0000551;
Taly-0000569-Taly-0000563;
Taly-0000438-Taly-0000440;
Taly-0000527-Taly-0000531;
Taly-0000532-Taly-0000536;
Taly-0000537-Taly-0000538;
Taly-0000539-Taly-0000543;
Taly-0000544-Taly-0000548;
Book 2 - Statements for Nissen, Account ███ 7834 (CBNA00058058);
Book 4 - Statements for National Event Company II, LLC (NECO II), Account ███ 8419 (CBNA00058490);
Book 6 - Statements for National Events of America, Inc. (INEAI), Account ███ 8376 (CBNA00058224);
Book 7 - Statements for New World Events Group Inc. (New WEG), Account ███ 8421 (CBNA00058692); and
Taly Note Numbers based on information provided by Taly.